File Date: _12 - 5 - 0 7_____

Case No: _07cv 6861_____

ATTACHMENT # _____1_____

EXHIBIT _4 (continued)_____

TAB (DESCRIPTION) _____

1  information when it became aware that the information provided to it was incorrect,

2  incomplete, or otherwise unsatisfactory.

3      g.    By failing to inform the appropriate level of Fund management (a level above

4  Berkman, i.e., advisory committee and members) regarding the material errors, or fraud, or

5  illegal acts that had come to its attention.

6      h.    By failing to be free of conflicts of interest in relation to the services it

7  performed for the Funds.

8      i.    By agreeing with Berkman in 1999 and 2000 to not perform the audits of

9  Funds I and II that bcIMC had requested.

10      j.    By failing to reissue previously released reports to all known users once

11  Arthur Andersen and Hawkins became aware the prior reports contained material

12  misstatements.

13      k.    By failing to consult the use of a specialist in connection with their

14  engagement involving the Funds.

15      l.    By failing to adequately train and require professional competency for all

16  professionals involved in the engagements.

17      m.    By failing to adequately plan and supervise the work.

18      n.    By failing to exercise professional skepticism in the performance of their

19  engagement.

20      o.    By failing to make disclosures to the Funds and/or its members of accounting

21  errors, misstatements and/or misrepresentations made by Berkman to the Funds and/or its

22  members which Andersen was aware of through services provided to Fund portfolio

23  companies, including Cascade Ventures, SuperTracks, GeoTrust, APN, WellPartner, EVI,

24  PuriPonics, Oxibio and Preview Systems.

25      191.

26      Arthur Andersen's and Hawkins's breach of duty provided substantial assistance to

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 Berkman's tortious conduct in a number of ways, including:

2     a.    By issuing a year-end 1998 report that misclassified money that had been
3 transferred from Fund I to CB&A as "Cash or Cash Equivalents" on the balance sheet of
4 Fund I. Arthur Andersen and Hawkins did this at a time when they knew that Berkman had
5 significant debt obligations. Arthur Andersen's false compilation report concealed
6 Berkman's improper transfer of money to CB&A.

7     b.    By preparing a year-end 1999 compilation report and financial statement for
8 Fund III that misrepresented that investments were made in Preview Systems when Arthur
9 Andersen knew that the money had instead been transferred to CB&A.

10     c.    By agreeing with Berkman in 1999 and 2000 not to perform audits of Funds I
11 and II that beIMC had requested.

12     d.    By routing its compilation reports and financial statements through Berkman
13 rather than providing them directly to the Funds' members.

14     e.    By falsely reporting in June 2000 that Fund II had a "Short Term Note
15 Receivable" when in fact Arthur Andersen knew that Berkman had taken the money from
16 Fund II and previously falsely reported it to be an investment in Preview Systems.

17     f.    By falsely reporting in its year-end 2000 compilation report and financial
18 statements that Berkman had taken a "loan" from Fund II when Arthur Andersen knew that
19 he had misappropriated money belonging to Fund II.

20     g.    By failing to report Berkman's misconduct to the Funds' members in order to
21 continue working for, and earning fees from, other entities Berkman controlled.

22            192.

23    Because Arthur Andersen and Hawkins provided substantial assistance to Berkman's
24 tortious conduct by breach of independent duties owed to the Funds and their members, they
25 are jointly liable for all damages caused by Berkman's tortious conduct for which they
26 provided substantial assistance.

Page 64– THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

# ELEVENTH CLAIM FOR RELIEF

### (Restatement (Second) of Torts Sec. 876—bcIMC v. Arthur Andersen and Richard Hawkins)

193.

bcIMC realleges the preceding allegations.

194.

As alleged above, Berkman, SVM I, SVM II and CB&A committed various tortious acts against bcIMC. These tortious acts included, among other things:

a.    Misrepresentations to bcIMC, and acts of concealment from bcIMC, concerning the financial condition of Funds I and II and the true nature of various transactions in which those funds were involved; and

b.    Breaches of fiduciary duties owed to bcIMC by acting in Berkman's interests rather than bcIMC's interests, and by failing to make full and fair disclosure to bcIMC about various inappropriate transactions involving the Funds, and by failing to act with due care.

195.

Arthur Andersen and Hawkins knew that Berkman was engaged in tortious conduct during the time they provided professional services to the Funds. As alleged above, Arthur Andersen and Hawkins were aware that Berkman had breached fiduciary duties of loyalty and full disclosure by using the Funds' money for his own interests as opposed to the Funds', by converting the Funds' money, by depriving the Funds of the liquidity necessary to make follow-on investments to protect existing investments against dilution, and by investing in companies from which Berkman received improper personal benefits.

196.

Arthur Andersen and Hawkins provided substantial assistance to Berkman's tortious conduct against bcIMC, or acted in concert or with or pursuant to a common design with Berkman, in a number of ways, including:

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1        a.       By issuing a year-end 1998 compilation report to bcIMC knowing that it

2 misclassified money that had been transferred from Fund I to CB&A as "Cash or Cash

3 Equivalents" on the balance sheet of Fund I and thereby concealed Berkman's improper

4 transfer of at least $1,862,300 to CB&A as of December 31, 1998.

5        b.      By drafting or helping to draft a letter that was sent to the Office of the

6 Auditor General of British Columbia on or about April 26, 2000 that contained material

7 misstatements about the nature and extent of Fund I's interest in Preview Systems, concealed

8 Berkman's improper transfer of money from Fund I to CB&A, and concealed Berkman's

9 obligation to provide audited financial statements to bcIMC.

10       c.       By drafting or helping to draft a letter that was sent to the Office of the

11 Auditor General of British Columbia on or about April 26, 2000 that contained material

12 misstatements about the nature and extent of Fund I's interest in Preview Systems and

13 concealed Berkman's improper transfer of money from Fund I to CB&A.

14       d.       By falsely reporting in June 2000 that Fund II had a "Short Term Note

15 Receivable" when in fact Arthur Andersen knew that Berkman had taken money from Fund

16 II and had previously falsely reported it to be an investment in Preview Systems.

17       e.       By falsely reporting to bcIMC in the year-end 2000 compilation report and

18 financial statements that Berkman had taken a loan from Fund II when Arthur Andersen and

19 Hawkins knew that Berkman had misappropriated money belonging to Fund II.

20       f.       By concealing from bcIMC material transactions between Fund I and Fund III.

21       g.       By concealing from bcIMC Berkman's issuance of membership units in the

22 Funds without consideration and in purported satisfaction of Berkman's personal debts.

23       h.       By agreeing with Berkman not to perform audits of Funds I and II as required,

24 and by submitting misleading communications to bcIMC's representative that made it appear

25 that an audit had been conducted.

26       i.       By routing compilation reports and financial statements intended for the

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503 228.6351
Facsimile: 503.295.0915

1 | benefit and use of bcIMC through Berkman rather than providing them directly to bcIMC.

2 |       j.      By failing to report Berkman's misconduct to bcIMC in order to continue

3 | working for, and earning fees from, various entities that Berkman controlled.

4 |       k.      By failing to reissue or correct compilation reports and financial statements

5 | sent to bcIMC where Arthur Andersen knew the reports sent to bcIMC contained material

6 | misstatements.

7 | 197.

8 |       As alleged above, Arthur Andersen and Hawkins owed bcIMC, as a member of Funds

9 | I and II, various duties under applicable public accounting standards.  Pursuant to these

10 | duties, and as alleged above, Arthur Andersen and Hawkins should have taken various

11 | corrective actions, and refrained from assisting Berkman in perpetrating wrongs against

12 | bcIMC, by (among other things) disclosing known materials errors, or fraud, or illegal acts to

13 | the appropriate level of Fund management (i.e., a level above Berkman).

14 | 198.

15 |       Under the circumstances of this case, Arthur Andersen and Hawkins should have

16 | disclosed known wrongs to at least bcIMC.  Arthur Andersen and Hawkins knew that bcIMC

17 | was the majority investor in Funds I and II.  Arthur Andersen and Hawkins also knew that

18 | bcIMC should have been serving on Advisory Committees constituted for the purpose of

19 | enabling bcIMC to provide input on conflict issues relating to the management of Funds I

20 | and II.  Arthur Andersen and Hawkins also knew that bcIMC was actively monitoring its

21 | investments in Funds I and II, that bcIMC was relying on compilation reports and financial

22 | statements prepared by Arthur Andersen and Hawkins, that Berkman's  various improper

23 | acts would cause concern to bcIMC upon discovery, and that bcIMC would likely take

24 | remedial action if informed of the known improper acts.

25 | 199.

26 |       At no time did Arthur Andersen or Hawkins communicate to bcIMC that Berkman

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  had engaged, or may have engaged, in any wrongful conduct with respect to Funds I or II.
2  The failure of Arthur Andersen or Hawkins to disclose known wrongs provided further
3  substantial assistance to Berkman in concealing and accomplishing tortious conduct against
4  bcIMC.

5                                            200.

6       Arthur Andersen and Hawkins are jointly and severally liable with Berkman for all
7  damages arising out of his tortious conduct against bcIMC because, as alleged above, Arthur
8  Andersen and Hawkins:  (a) acted in concert or pursuant to a common design with Berkman;
9  (b) knowingly provided substantial assistance to Berkman's tortious conduct; or (c) provided
10  substantial assistance to Berkman while breaching an independent duty to disclose known
11  wrongs owed directly to bcIMC.

12                                           201.

13      None of the acts or omissions set forth in the preceding paragraphs were known by
14  bcIMC, nor could reasonably have been discovered, before 2006.

15                                           202.

16      bcIMC sustained damages as shown below.

17                         **TWELFTH CLAIM FOR RELIEF**

18             **(Breach of Contract—The Funds v. Arthur Andersen)**

19                                           203.

20      The Funds reallege the preceding allegations.

21                                           204.

22      Arthur Andersen contracted with the Funds to provide independent professional
23  accounting services, including the preparation of compilation reports and other accounting
24  services (such as bookkeeping and tax services) during some or all of the 1999 through 2001
25  time period.

26

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

| | 205. |
|---|---|

In particular, through an engagement letter prepared by Arthur Andersen dated June 8, 1999, and addressed to Berkman in his capacity as Fund I's "president," Arthur Andersen outlined its understanding of "certain accounting and financial consulting services" it would provide Fund I. These services were provided to each of the Funds between 1999 and 2001. As outlined in the engagement letter, Arthur Andersen agreed to:

a. Provide assistance in compiling monthly or quarterly financial statements;

b. Prepare and submit monthly or quarterly compiled statements of income;

c. Prepare and submit monthly or quarterly compiled statements of assets, liabilities, and member's equity;

d. Prepare and submit a monthly general ledger;

e. Issue compilation reports on the Funds' financial statements;

f. Prepare and submit on a monthly or quarterly basis various other reports as requested;

g. Inquire about certain accounting procedures and office routines, understand operations, and offer suggestions to improve reporting and financial and tax planning;

h. Provide information regarding errors, irregularities, or illegal acts, including fraud or defalcation that had come to Arthur Andersen's attention;

i. Be and remain independent with respect to the Funds;

j. Not issue a report if, for any reason, Arthur Andersen was unable to complete the compilation of financial statements;

k. Be available to assist with monthly closing tasks or miscellaneous other accounting issues; and

l. Communicate opportunities for improvement and to have Richard Callahan (and Andersen partner) provide overall quality assurance with regard to the services performed by personnel from the Andersen Contract Finance Accounting Services Group.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

206.

The June 8, 1999, contract was signed by Richard Callahan on behalf of Arthur Andersen and by Berkman on behalf of Fund I.

207.

Arthur Andersen contracted with Funds II and III to provide professional services under the same terms that were substantially similar in nature and scope as to those set forth in the June 8, 1999, engagement letter with Fund I.

208.

The Funds performed all obligations they owed under the contracts, including paying Arthur Andersen for services it provided.

209.

Arthur Andersen failed to perform as it was required under the contracts and materially breached those contracts in the following ways:

a.    Arthur Andersen failed to provide appropriate assistance to the Funds in connection with compiling monthly and/or quarterly financial statements;

b.    Arthur Andersen failed to properly prepare and submit accurate, truthful, and correct compilation reports on the Funds' financial statements, including compiled statements of income, compiled statements of assets, liabilities, and member's equity and monthly general ledgers;

c.    Arthur Andersen failed to provide suggestions to improve financial reporting;

d.    Arthur Andersen failed to inform the Funds of errors, or irregularities, or illegal acts (including fraud and defalcations) that came to its attention during the course of its engagement;

e.    Arthur Andersen issued compilation reports on the Funds' financial statements when it was unable to complete the compilation of financial statements due to improper conduct of the Fund manager;

Page 70– THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1       f.      Arthur Andersen failed to properly assist with monthly closing tasks and other

2 accounting issues;

3       g.      Arthur Andersen failed to advise the Funds of opportunities for improvement;

4       h.      Arthur Andersen failed to be and/or remain independent to the Funds;

5       i.      Richard Callahan failed to properly provide overall quality assurance

6 regarding the accounting services provided;

7       j.      Arthur Andersen failed to report and/or concealed its knowledge of Berkman's

8 misconduct;

9       k.      Arthur Andersen assisted Berkman in concealing the Funds' true financial

10 condition; and

11       l.      Arthur Andersen failed to properly and accurately keep the Funds' books and

12 records.

13                                     210.

14       Further, on April 25, 2000, by letter agreement, Arthur Andersen undertook a

15 contractual obligation with regard to the Funds in connection with inquiries regarding a

16 number of "open items" related to the December 31, 1999, compilation reports. By letter

17 agreement, Arthur Andersen agreed to continue to follow up on the items until they were

18 resolved. These items included the undocumented purchase of in excess of $5 million of

19 Preview Systems stock (money Arthur Andersen knew the Funds had paid to CB&A) and

20 indicates that "notes need to be written for cash transfers between [the Funds] and [CB&A]."

21 This agreement was signed on behalf of Arthur Andersen and by Berkman on the Funds'

22 behalf.

23                                     211.

24       Arthur Andersen breached its agreement to follow up on the open items listed in its

25 April 25, 2000, letter by failing to follow up on the open items, failing to resolve the open

26 items, and by failing to report its findings regarding the open items to the Funds and

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  members as they were evidence of Berkman's errors, or fraud, or illegal acts.

2                                 212.

3       As a result of Arthur Andersen's material breaches of agreements with the Funds, the

4  Funds suffered damages as shown below.

5                    **THIRTEENTH CLAIM FOR RELIEF**

6              **(Breach of Third Party Beneficiary Contract—The**
                **members v. Arthur Andersen)**
7
                                 213.
8
9       Under the terms of the Operating Agreements, the Funds owed duties to their

   members to, among other things, maintain records and accounts of the operations and
10
   expenditures of the Funds..
11
                                 214.
12
13      The Funds hired Arthur Andersen to assist in fulfilling obligations owed to the Funds'

14  members. When the Funds and Arthur Andersen entered into a contract for professional

   services, they were aware of the existence of the Funds' members and were aware that the
15
   contract was being entered into to benefit the Funds' members.
16
                                 215.
17
18      Arthur Andersen's breaches—described in the preceding claim for relief—caused the

   Funds' members damages as described below.
19
                    **FOURTEENTH CLAIM FOR RELIEF**
20
              **(Professional Negligence/Accounting Malpractice—The**
21            **Funds and members v. Arthur Andersen and Hawkins)**

22                               216.

23      The Funds and members reallege the preceding allegations.

24                               217.

25      Arthur Andersen and Hawkins were engaged to provide professional accounting

26  services to the Funds between 1997 and 2000. Arthur Andersen's services to the Funds and

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 | members included preparation of compiled financial statements and tax returns for the years
2 | 1998, 1999, and 2000.

3 | 218.

4 | Due to their longstanding relationship with Berkman and several of his companies
5 | before the formation of the Funds, Arthur Andersen and Hawkins had actual knowledge that
6 | as early as 1995 that certain of Berkman's EVI business associates had alleged that Berkman
7 | was personally borrowing money from individuals and pledging EVI stock that he did not
8 | own as security and misrepresenting his financial status.

9 | 219.

10 | Before the formation of the Funds, Arthur Andersen and Hawkins had actual
11 | knowledge of allegations that Berkman personally owed approximately $3.76 million on
12 | convertible promissory notes and that since the early 1980s he used convertible promissory
13 | notes to personally borrow money from others.

14 | 220.

15 | Based on the knowledge they possessed by virtue of work they had performed for
16 | Berkman and his affiliated entities, Arthur Andersen and Hawkins also knew or should have
17 | known that Berkman did not have the financial ability to repay these debts.

18 | 221.

19 | As a result of the knowledge they obtained before their association with the Funds,
20 | Arthur Andersen and Hawkins knew or should have known that they could not reasonably
21 | rely on representations or assertions made by Berkman in connection with the preparation of
22 | compiled financial statement services it provided to the Funds, without obtaining additional
23 | information and performing additional procedures. This triggered a duty upon Arthur
24 | Andersen and Hawkins to investigate for additional evidence of potential fraud, or illegal
25 | acts, or inappropriate transactions involving Berkman.

26 |

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue. Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1                                    222.

2        Had Arthur Andersen and Hawkins fulfilled their duty to investigate, they would have

3   confirmed that Berkman was engaging in fraud, or potentially illegal acts, or other

4   inappropriate transactions.

5                                    223.

6        During the course of Arthur Andersen's engagement with the Funds, Arthur Andersen

7   and Hawkins knew or should have known of a variety of other related party transactions

8   which should have led them to suspect that Berkman and his entities were engaging in fraud,

9   or potential illegal acts, or other inappropriate transactions and activities.

10                                   224.

11       Arthur Andersen and Hawkins knew or should have known that in 1998, Berkman

12  had transferred $1.8 million from Fund I to CB&A for Berkman's personal use and benefit.

13                                   225.

14       Arthur Andersen and Hawkins knew or should have known that in early 1999,

15  Berkman transferred $1.8 million from Fund III to CB&A that CB&A used to repay money it

16  had taken from Fund I.

17                                   226.

18       Arthur Andersen and Hawkins knew or should have known by year-end 1999

19  Berkman had transferred $5.7 million from Fund III to CB&A and had used much of that

20  money for Berkman's personal use and benefit.

21                                   227.

22       Arthur Andersen and Hawkins knew or should have known that Berkman was

23  misrepresenting the true nature of the transactions and that he used Fund assets for his own

24  benefit.

25                                   228.

26       On April 25, 2000, Arthur Andersen wrote to Berkman listing a number of open items

Bullivant|Houser|Bailey PC

888 S. W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  including unsupported transfers of $5.7 million to CB&A, purportedly for the purchase of
2  Preview Systems stock.  Arthur Andersen undertook and assumed the duty to follow up on
3  the Preview Systems investments until the issue was resolved.  Arthur Andersen failed to do
4  so.

5                                              229.

6        On March 10, 2001, Arthur Andersen received correspondence from Berkman's
7  office indicating that money CB&A had received from the Funds for the purpose of
8  purchasing shares of Preview Systems stock had, in fact, not been used for that purpose.  As
9  a result of this, Arthur Andersen and Hawkins participated in reclassifying and/or learned
10  that the transaction was being reclassified in the Funds' accounting records from a purchase
11  of Preview Systems stock to a "loan" to CB&A in the amount of approximately $3.9 million.
12  Accordingly, by March 2001, Arthur Andersen and Hawkins had actual, confirmed
13  knowledge that Berkman was engaging in the types of inappropriate misconduct that Arthur
14  Andersen and Hawkins should have suspected and investigated at the outset of the
15  engagements.

16                                             230.

17        Arthur Andersen also received correspondence from Berkman's office dated April 2,
18  2001, indicating that CB&A had "repaid" $1.375 million of Berkman's personal loans by
19  issuing Fund membership units to the personal creditors of Berkman.

20                                             231.

21        Arthur Andersen and Hawkins never told any Advisory Committee or member of
22  these inappropriate activities and material misstatements in the financial statements.

23                                             232.

24        As required by the applicable standard of care, when a certified public accountant is
25  aware of information that is incorrect, incomplete, or otherwise unsatisfactory, the CPA owes
26  a duty to the client to obtain additional or revised information.  Further, the CPA is required

Page 75–  THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 | to inform the appropriate level of management at a level above those involved (i.e., a level
2 | above Berkman, which would have been either the Advisory Committee or the members) of
3 | any material errors, or fraud, or illegal acts that come to the attention of the CPA.

4 | 233.

5 | None of the acts or omissions set forth in the preceding paragraphs were known by
6 | the Funds or members until mid-2005. Due to the active concealment by Berkman, Arthur
7 | Andersen, and Hawkins of their respective misconduct, and the misconduct of the entities
8 | they were acting through and/or on behalf of, the Funds and members could not have
9 | discovered claims prior to mid-2005.

10 | 234.

11 | As discussed above, Arthur Andersen and Hawkins were in a special relationship with
12 | the Funds and members, and had the responsibility to exercise independent judgment to act
13 | in the economic interests of Funds and members. The Funds and members had a right to rely
14 | on Arthur Andersen and Hawkins, and did rely on Arthur Andersen and Hawkins to exercise
15 | independent judgment in furtherance of their economic interests.

16 | 235.

17 | Arthur Andersen and Hawkins knew or should have known that the members were to
18 | be recipients, users, and beneficiaries of the financial documents it prepared, since a number
19 | of their reports were addressed to them, and since the Funds had engaged AA to perform
20 | duties and fulfill obligations they owed to the members.

21 | 236.

22 | Arthur Andersen and Hawkins failed to exercise the care, skill, diligence, and
23 | independence required of accountants in the same or similar situation, in the following ways:

24 | a. By failing to maintain total independence of professional judgment;

25 | b. By failing to maintain public trust and obligation;

26 | c. By failing to comply with appropriate accounting principles or meet

Page 76- THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1   professional standards in preparation and reporting on financial statements and in its actions

2   during the time frame it rendered its services, in that the financial statements did not fairly

3   represent the Funds' financial position or results of operations and by failing to disclose in its

4   reports the inconsistencies contained in the Funds' compiled financial statements with those

5   required under applicable professional standards;

6         d.    By failing to investigate when they suspected or should have suspected that

7   potentially illegal acts, or inappropriate transactions, or other activities constituting fraud

8   were occurring;

9         e.    By issuing reports on compiled financial statements which omitted

10   substantially all disclosures, when it knew or should have known such steps were undertaken

11   to mislead those who might reasonably be expected to use such financial statements;

12         f.    By issuing reports on compiled financial statements using an "other

13   comprehensive basis of accounting" ("OCBOA") as opposed to "generally accepted

14   accounting practices" ("GAAP") when OCBOA was inappropriate and misleading;

15         g.    By failing to make additional inquiries and obtain additional or revised

16   information when they became aware that the information provided to it was incorrect,

17   incomplete, or otherwise unsatisfactory;

18         h.    By failing to inform the appropriate level of Fund management (a level above

19   Berkman, i.e., the Advisory Committees and/or members) regarding the material errors, or

20   fraud, or illegal acts that had come to their attention;

21         i.    By failing to be free of conflicts of interest in relation to the services they

22   performed for the Funds;

23         j.    By failing to properly review and understand the terms of the Fund operating

24   agreements and the nature of Berkman's rights, obligations, and duties under those

25   agreements;

26         k.    By agreeing not to perform 1999 and 2000 year-end audits of Funds I and II;

Page 77–  THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  l.  By assisting Berkman in misrepresenting the financial condition of the Fund;

2  m.  By concealing their own and Berkman's misconduct;

3  n.  By failing to review portfolio company records for whom they provided
4  accounting services to verify Berkman's representations;

5  o.  By failing to follow-up on and resolve open items identified in its April 25,
6  2000, letter; and

7  p.  By failing to reissue previous reports and notify all known users after
8  becoming aware that the prior reports contained material misstatements.

9  q.  By failing to make disclosures to the Funds and/or its members of accounting
10  errors, misstatements and/or misrepresentations made by Berkman to the Funds and/or its
11  members which Andersen was aware of through services provided to various companies,
12  including Cascade Ventures, SuperTracks, GeoTrust, APN, WellPartner, EVI, PuriPonics,
13  Oxibio and Preview Systems.

14  237.

15  Had Arthur Andersen and Hawkins complied with the standards of care, the Funds
16  and its members would have taken steps to reduce and/or eliminate damages.

17  238.

18  As direct result of Arthur Andersen and Hawkins's failure to meet the required
19  standards of care, the Funds and members sustained damages as stated below.

20
21  **FIFTEENTH CLAIM FOR RELIEF**

22  (Negligent Misrepresentation—The Funds and members v.
    Arthur Andersen and Richard Hawkins)

23  239.

24  The Funds and members reallege the preceding allegations.

25  240.

26  As alleged, the Funds hired Arthur Andersen and Hawkins to prepare financial

Page 78– THIRD AMENDED COMPLAINT

Bollivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 │ statements, compilation reports, and perform other professional accounting services for the

2 │ Funds and members.

3 │ 241.

4 │     Arthur Andersen and Hawkins also agreed to prepare tax returns and forms for the

5 │ Funds and members for years 1998, 1999, and 2000; prepare financial statements and

6 │ compilation reports for 1999 and 2000; and perform other accounting services for, at least,

7 │ 1998 and 1999. Arthur Andersen addressed reports to the members with the intent that the

8 │ members would receive and rely on those reports. In light of Arthur Andersen's general

9 │ reputation around the world at the time as a top tier public accounting firm, and Hawkins's

10 │ status as partner of Arthur Andersen and a certified public accountant, the members relied on

11 │ the fact that Arthur Andersen and Hawkins would alert them of any misconduct.

12 │ 242.

13 │     Based on standards set forth in AICPA Statements on Accounting and Review

14 │ Services, the AICPA Code of Professional Conduct, the AICPA Bylaws, and the AICPA

15 │ Statements on Quality Control Standards (and other accounting standards), Arthur Andersen

16 │ and Hawkins undertook an obligation to exercise independent judgment in the following

17 │ ways:

18 │     a.    To determine the proper classification of assets;

19 │     b.    Decide if further investigation was necessary under the circumstances;

20 │     c.    Decide whether sufficient corroborating evidence was provided by Berkman;

21 │     d.    Decide whether errors, or fraud, or illegal acts had occurred;

22 │     e.    Determine whether the financial statements fairly stated the Funds' financial

23 │ condition;

24 │     f.    Decide whether disclosures to the financial statements were required;

25 │     g.    Decide whether to inform a level of management above Berkman regarding

26 │ the errors, or fraud, or illegal acts;

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

h.     Determine whether the manager was in compliance with the organizational documents;

i.     Determine whether the manager was a reliable source of information regarding the classification of and nature of the transactions;

j.     Determine whether OCBOA or GAAP were appropriate under the circumstances; and

k.     Determine whether omitted disclosures were designed to mislead the user of the financial statement.

243.

By undertaking the responsibilities outlined in the preceding paragraph, Arthur Andersen and Hawkins undertook an obligation to disclose misconduct they discovered, including Berkman's tortious conduct, to the Funds and members.

244.

The accounting services and preparation of compilation reports and financial statements by Arthur Andersen and Hawkins furthered the Funds and members' economic interests in the following ways:

a.     They described fund operations and the Funds' financial condition; and

b.     They provided critical information to the members about the Funds' operations and management.

245.

Arthur Andersen and Hawkins entered into a special relationship with the Funds and members wherein they undertook an obligation to exercise independent judgment in furtherance of the Funds and members' economic interests. Arthur Andersen and Hawkins knew or should have known that the Funds and members were intended beneficiaries of their professional services and that they would rely upon their professional services in connection with the compilation engagements.

Page 80– THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

246.

Arthur Andersen and Hawkins acted negligently and misrepresented to the Funds and members the true state of the Funds' financial affairs as alleged above. They also failed to disclose Berkman's tortious conduct, even though Arthur Andersen and Hawkins knew of that tortious conduct.

247.

Had Arthur Andersen and Hawkins acted in a non-negligent manner, the Funds and members would have taken steps to reduce and/or eliminate damages caused by Berkman's improper activities, including replacing Berkman as the manager and/or liquidating investments.

248.

As a direct result of the actions of Arthur Andersen and Hawkins, the Funds and members sustained the damages as stated below.

## SIXTEENTH CLAIM FOR RELIEF

### (Common Law Fraud—The Funds and members v. Arthur Andersen and Hawkins)

249.

The Funds and members reallege the preceding allegations.

250.

Based on standards set forth in AICPA Statements on Accounting and Review Services, the AICPA Code of Professional Conduct, the AICPA Bylaws, and the AICPA Statements on Quality Control Standards (and other accounting standards), Arthur Andersen and Hawkins undertook an obligation to disclose misconduct they discovered, including Berkman's tortious conduct, to the Funds and members.

251.

Despite their obligation to disclose misconduct they discovered, Arthur Andersen and

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  Hawkins hid information that would have revealed the true nature of how the Funds' money

2  was being utilized and the Funds' true financial condition—as described more fully in the

3  preceding claims for relief. Arthur Andersen and Hawkins knew that the information they

4  kept hidden would have revealed Berkman's misconduct and their role in hiding that

5  misconduct.

6  252.

7  Arthur Andersen and Hawkins knew that the Funds and members were relying on

8  them to disclose misconduct they discovered, including Berkman's tortious conduct. Arthur

9  Andersen and Hawkins intended for the Funds and members to rely on them to disclose

10  misconduct, and knew that the Funds and members would suffer damage if Arthur Andersen

11  and Hawkins did not reveal Berkman's tortious conduct.

12  253.

13  In light of Arthur Andersen's general reputation and status as a public accounting

14  firm, and Hawkins's status as partner of Arthur Andersen and a certified public accountant,

15  the Funds and members had a right to rely on, and did rely on, the fact that Arthur Andersen

16  and Hawkins would fulfill their obligation to disclose misconduct they discovered.

17  254.

18  But Arthur Andersen and Hawkins did not disclose Berkman's misconduct. Instead,

19  they actively concealed that misconduct—such as by issuing compilation reports to the

20  Funds and their members that contained false financial information—as well as their role in

21  hiding it. The Funds and members did not know that Arthur Andersen and Hawkins were

22  hiding Berkman's misconduct. If they had known, they would have taken steps to reduce

23  and/or eliminate damages caused by Berkman's misconduct, including replacing Berkman as

24  the Funds' manager and/or liquidating investments.

25  255.

26  As a direct result of the acts of Arthur Andersen and Hawkins, the Funds and

Page 82– THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 | members sustained damages as stated below.

## SEVENTEENTH CLAIM FOR RELIEF

### (Common Law Fraud—bcIMC v. Arthur Andersen and Richard Hawkins)

256.

bcIMC realleges the preceding allegations.

257.

Based on standards set forth in AICPA Statements on Accounting and Review Services, the AICPA Code of Professional Conduct, the AICPA Bylaws, and the AICPA Statements on Quality Control Standards (and other accounting standards), Arthur Andersen and Hawkins undertook an obligation to disclose misconduct they discovered, including Berkman's tortious conduct, to bcIMC, who Arthur Andersen and Hawkins were advised was a member of the Advisory Committee and who Arthur Andersen and Hawkins knew was specially entitled to audited financial statements for Funds I and II.

258.

Despite their obligation to disclose misconduct they discovered, Arthur Andersen and Hawkins hid information from bcIMC that would have revealed the true nature of how the Funds' money was being utilized and the Funds' true financial condition—as described more fully in the preceding claims for relief. Arthur Andersen and Hawkins knew that the information they kept hidden would have revealed Berkman's misconduct and their role in hiding that misconduct.

259.

Arthur Andersen and Hawkins intentionally made misrepresentations and omissions, and committed other schemes to defraud bcIMC, in the following particulars:

a.      By issuing a year-end 1998 compilation report to bcIMC knowing that it misclassified money that had been transferred from Fund I to CB&A and thereby concealed

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 | Berkman's improper transfer of monies to CB&A in 1998.

2 |       b.     By drafting or helping to draft a letter that was sent to the Office of the

3 | Auditor General of British Columbia on or about April 26, 2000, that contained material

4 | misstatements about the nature and extent of Fund I's interest in Preview Systems, concealed

5 | Berkman's improper transfer of money from Fund I to CB&A, and concealed Berkman's

6 | obligation to provide audited financial statements to bcIMC.

7 |       c.     By falsely reporting in June 2000 that Fund II had a "Short Term Note

8 | Receivable" when in fact Arthur Andersen knew that Berkman had taken money from Fund

9 | II and falsely reported it to be an investment in Preview Systems.

10 |       d.     By falsely reporting to bcIMC in the year-end 2000 compilation report and

11 | financial statements that Berkman had taken a loan from Fund II when Arthur Andersen and

12 | Hawkins knew that he had misappropriated money belonging to Fund II.

13 |       e.     By concealing from bcIMC material transactions between Fund I and Fund III.

14 |       f.     By concealing from bcIMC Berkman's issuance of membership units in the

15 | Funds without consideration and in purported satisfaction of his personal debts.

16 |       g.     By agreeing with Berkman not to perform audits of Funds I and II as required.

17 |       h.     By routing compilation reports and financial statements intended for the

18 | benefit and use of bcIMC through Berkman rather than providing them directly to bcIMC.

19 |                          260.

20 |      Arthur Andersen and Hawkins knew that bcIMC was relying on them to disclose

21 | misconduct they discovered, including Berkman's tortious conduct. Arthur Andersen and

22 | Hawkins intended for bcIMC to rely on them to disclose misconduct, and knew that bcIMC

23 | would suffer damage if Arthur Andersen and Hawkins did not reveal Berkman's tortious

24 | conduct.

25 |                          261.

26 |      In light of Arthur Andersen's general reputation in the Pacific Northwest and its

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  status as a public accounting firm, and Hawkins's status as partner of Arthur Andersen and a

2  certified public accountant, bcIMC had a right to rely on, and did rely on, the fact that Arthur

3  Andersen and Hawkins would fulfill their obligation to disclose misconduct they discovered.

4                                            262.

5       But Arthur Andersen and Hawkins did not disclose Berkman's misconduct.  Instead,

6  they actively concealed that misconduct—such as by issuing compilation reports and

7  correspondence to bcIMC that contained false financial information—as well as their role in

8  hiding it.  bcIMC did not know, and could not reasonably have discovered, that Arthur

9  Andersen and Hawkins were hiding Berkman's misconduct until 2005.  If it had known, it

10  would have taken steps to reduce and/or eliminate damages caused by Berkman's

11  misconduct, including replacing Berkman as the Funds' manager and/or liquidating

12  investments.

13                                            263.

14       None of the acts or omissions set forth in the preceding paragraphs were known by

15  bcIMC, nor could reasonably have been discovered, before 2005.

16                                            264.

17       As a direct result of the acts of Arthur Andersen and Hawkins, bcIMC sustained

18  damages as stated below.

19                        **EIGHTEENTH CLAIM FOR RELIEF**

20  **(Restatement (Second) of Torts Sec. 876—The Funds and members v. Geffen Mesher
      and Richard Hawkins)**

21

22                                            265.

23       The Funds and members reallege the preceding allegations.

24                                            266.

25       Hawkins left Arthur Andersen and became a shareholder with Geffen Mesher in

26  2001, and continued his work for Berkman, certain portfolio companies, and the Funds and

Page 85–  THIRD AMENDED COMPLAINT

1  their members. (Arthur Andersen provided Hawkins a copy of the Funds' file materials just

2  after he began work at Geffen Mesher.) Geffen Mesher prepared and issued financial

3  statements and compilation reports and prepared the tax returns for the Funds for the year

4  ending 2001.

5                                                    267.

6         Prior to accepting the compilation engagements, Geffen Mesher and Hawkins,

7  through Hawkins's knowledge, knew:

8         a.      That Berkman owed millions of dollars to holders of convertible promissory

9  notes, and that he lacked the financial ability to repay those obligations;

10        b.      That certain of Berkman's former business associates had alleged that he had

11 pledged stock he did not own as security for those notes;

12        c.      That Berkman had provided membership units in the Funds in exchange for

13 satisfaction of personal debts;

14        d.      That Berkman had taken money from the Funds for the purported purpose of

15 purchasing stock, but that they had not used the money for that purpose;

16        e.      That Berkman was "loaning" money between the Funds, himself, and other

17 entities he controlled and was canceling debts between the Funds via "in-kind" transfers of

18 securities of unknown value;

19        f.      That Berkman had taken in excess of $5 million from the Funds for his own

20 use; and

21        g.      That Berkman had misrepresented to the Funds and members about what had

22 actually been done with money transferred from the Funds to CB&A.

23                                                    268.

24        As a result of Hawkins's knowledge, he and Geffen Mesher knew or should have

25 known that they could not rely on Berkman's representations for purposes of preparing

26 compiled financial statements for the Funds without first obtaining additional information

Page 86–  THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 and performing additional investigation. Under applicable public accounting standards,
2 Hawkins and Geffen Mesher's awareness of Berkman's potential improper acts created a
3 duty for Geffen Mesher and Hawkins to conduct further investigation into potential fraud, or
4 illegal acts, or inappropriate transactions involving Berkman in the course of preparing
5 compiled financial statements for the Funds.

6                                          269.

7        Had Geffen Mesher and Hawkins performed their duty to investigate in the course of
8 the 2002 compilation engagement, they would have confirmed that Berkman was engaging
9 in fraud, or illegal acts, or other inappropriate transactions at a time when they had full
10 access to all of the Funds' financial records and documents and when they were reporting to
11 the Funds and members on their financial condition.

12                                          270.

13       On April 18, 2002, Geffen Mesher issued a compilation report and financial
14 statements for year-end 2001 for the Funds. The reports were addressed and issued to the
15 Funds and members, but were provided to Berkman for distribution.

16                                          271.

17       One version of the Geffen Mesher year-end 2001 compilation report for Fund II
18 reported a $3,924,855 "Short-Term Notes Receivable Due from Craig Berkman
19 &Associates." Another version of the Geffen Mesher year-end 2001 compilation report,
20 which was received by certain Fund II members in 2002 differed from the report discovered
21 in 2005 in that it reported a $3,924,855 "Short-Term Notes Receivable due from
22 Montgomery Street Asset Management."

23                                          272.

24       On June 8, 2002, the majority investor of Funds I and II (bcIMC) requested an audit
25 of the Funds. On June 8, 2002, Berkman represented to bcIMC, that he requested Geffen
26 Mesher to perform an audit for those two Funds from their inception dates and that the

Page 87– THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 | auditors expected to complete their work in a few weeks. Berkman stated that the copies of
2 | the audited financial statements would be forwarded to bcIMC.

3 | 273.

4 | On October 24, 2002, Berkman told bcIMC, "In talking with the auditors, I learned
5 | that a key member of the audit team was taken away from the office for three weeks due to a
6 | family emergency, therefore the audit has been delayed. The individual in question has
7 | returned and I expect the audit to be completed shortly. When it is completed, it will be
8 | transmitted to you."

9 | 274.

10 | On December 5, 2002, Berkman told bcIMC that he was encouraging the auditors to
11 | complete their work as soon as possible.

12 | 275.

13 | Concurrent with Berkman's statements, bcIMC received similar assurances from
14 | Geffen Mesher and Hawkins. On November 22, 2002, Hawkins wrote to bcIMC that the
15 | audits of the Funds' financial statements were progressing. In that communication, Hawkins
16 | said that he understood that bcIMC was the primary user of the Funds' financial statements
17 | and suggested the audit be deferred to year-end. bcIMC rejected Hawkins's suggestion that
18 | the audit be delayed and reiterated that the audit should be through October 31, 2002, and
19 | that the audited financial statements should be provided to bcIMC at the earliest opportunity.
20 | bcIMC explained that a later audit could cover the last three months of 2002.

21 | 276.

22 | On December 6, 2002, Geffen Mesher sent a formal audit engagement letter to the
23 | Funds, through Berkman, notwithstanding representations by Berkman, Geffen Mesher, and
24 | Hawkins that the engagement had been underway for at least six months.

25 | 277.

26 | On December 18, 2002, having heard nothing from Geffen Mesher since November

Page 88– THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  22, bcIMC asked Hawkins for a progress report and expectations as to completion. bcIMC

2  also requested a draft of the audited financial statements. Hawkins responded six days later

3  stating that Geffen Mesher was currently working on the audit and planned to finish the audit

4  in the second half of January 2003.

5                278.

6      On February 10, 2003, bcIMC asked Hawkins for a progress report on the audit.

7  Hawkins responded on February 12, 2003, stating that Geffen Mesher planned to have a draft

8  copy of the audited financial statements completed no later than March 15, 2003. On March

9  14, 2003, Hawkins told bcIMC that the audit would not be completed by March 15, 2003,

10  and he did not provide a new estimated completion date or any other information about the

11  audit.

12                279.

13      On April 8, 2003, bcIMC asked Hawkins for progress, results, or a draft of the audit

14  report. On April 17, 2003, Berkman sent Hawkins an e-mail asking Hawkins to draft a

15  proposed communication for Berkman to send to bcIMC. Geffen Mesher drafted an e-mail

16  for Berkman the next day, April 18, 2003. The letter suggested that Berkman was working

17  with Geffen Mesher to resolve and finalize the following issues: "Certain audit test

18  procedures regarding various investment transactions that occurred during the period under

19  audit; . . .Final reconciliations and documentation of investments held by each entity;

20  Preparation and review of the financial statements and footnotes for the funds." The e-mail

21  also suggested telling bcIMC that a draft was anticipated by May 19, 2003.

22                280.

23      In fact, Geffen Mesher's March 28, 2003, audit notes showed that it was questioning

24  security transfers without payment, questioning the valuation of certain assets, raising issues

25  with respect to satisfaction of debts owed by Berkman, noting that the financial statements

26  improperly showed payment of Berkman-related debt with securities from one of the Funds,

Page 89– THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 | raising issues with respect to the worthlessness of items and justification of payment of
2 | Berkman-related debt with "worthless securities," and raising the need to address the legal
3 | aspects of securities transfers represented as payment of Berkman-related debt.

281.

5 | Geffen Mesher and Hawkins concealed their findings from bcIMC, the Advisory
6 | Committee, and the Funds' members (in fact, they didn't reveal this information until 2005).
7 | Instead, Hawkins drafted a letter to Berkman, dated April 4, 2003, which specifically raised
8 | concerns about a loan in the amount of $3,628,000 from Funds I and II to CB&A that was
9 | subsequently loaned personally to Berkman by CB&A. The letter then said: "In our
10 | procedures, we have observed transactions which we believe are not appropriate to reduce
11 | the amount owed." The letter included a "not necessarily all-inclusive" list of inappropriate
12 | transactions. Geffen Mesher, Hawkins, and Berkman concealed and failed to disclose this
13 | information and this letter to the Funds and their members until 2005.

282.

15 | The April 4, 2003, letter next referred to conflicts of interest between CB&A, the
16 | managing member and the Funds with regard to "numerous transfers of investments and
17 | investors between funds." The letter requested an opinion of legal counsel regarding whether
18 | the transactions were allowed under any private placement memorandum and the operating
19 | agreements.

283.

21 | The April 4, 2003, letter stated that Geffen Mesher had requested but not received
22 | evidence that the Advisory Committee exists, that it was active, and had approved the related
23 | party transactions described in the letter. Geffen Mesher's letter also stated there were
24 | several audit issues requiring special attention and cooperation from Berkman.

284.

26 | Geffen Mesher failed to disclose any of the information from the March 28, 2003,

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  audit notes or the April 4, 2003, letter to bcIMC, the Advisory Committees, or Fund

2  members—even though bcIMC repeatedly asked for a report, including a request on April 8,

3  2003. None of that information was in the letter Geffen Mesher drafted and provided on

4  April 18, 2003, to Berkman for the purpose of sending to bcIMC. Rather, Hawkins and

5  another shareholder of Geffen Mesher met with Berkman on April 4, 2003, at the Heathman

6  Restaurant in Portland, Oregon. A note on the letter indicates the contents of the April 4,

7  2003, letter were discussed at that meeting.

8                                        285.

9         Time records indicate that Hawkins spent two-and-a-half hours on March 27, 2003,

10 and March 28, 2003, discussing issues relating to the audit. On April 7, 2003, Hawkins's

11 time entry for an hour-and-a-half states, "Meet with Craig one-on-one and discuss the audit."

12 Hawkins spent an additional hour on April 8, 2003, and another hour on April 9, 2003,

13 regarding audit issues including a telephone conversation with Berkman regarding the audit.

14 Those six hours appear on the bill as a write-off.

15                                       286.

16        On April 29, 2003, Hawkins sent Berkman a letter referencing the April 7, 2003,

17 meeting stating his "understanding that [Berkman] would provide [Geffen Mesher] with: a

18 letter describing specific items discussed and setting dates [Berkman] would provide the

19 information; unpaid fees would be brought current on or near April 16, 2003." The letter

20 goes on to say "we cannot continue to provide services to meet the Fund's needs." A

21 handwritten note by Hawkins on the copy of the letter states that Geffen Mesher and

22 Berkman "mutually agreed to part ways with respect to the audit."

23                                       287.

24        The April 29, 2003, letter was not provided to bcIMC, the Advisory Committees or

25 any of the Fund members. Rather, with no communication after bcIMC's April 8, 2003,

26 inquiry, Hawkins wrote bcIMC on May 12, 2003, stating: "I know it has been some time

Page 91~ THIRD AMENDED COMPLAINT

1  since your inquiry with respect to the status of the audit of [the Funds] for which I apologize.
2  This is to inform you that we are no longer engaged to perform the audit. Please direct any
3  inquiries to Craig. Best regards, Rick." Hawkins and Geffen Mesher failed to communicate
4  any information about the audit to any other Fund I or II member, or any member of Fund
5  III.

6  288.

7      All of the work done by Geffen Mesher as outlined in the preceding paragraphs was
8  billed to the Funds and not to Berkman personally. Berkman failed to pay bills submitted to
9  the Funds by Geffen Mesher. Geffen Mesher refused to reveal any of this information to the
10 Funds in response to requests on the pretense that it was owed money.

11  289.

12     Berkman sent bcIMC a letter, dated May 9, 2003, which stated in part: "After
13 working with Geffen Mesher for more than five months, we became convinced that they
14 were not committed to our deadlines or sensitive to their billing fees. During the elapsed
15 time a number of unforeseen developments regarding the availability of their personnel,
16 extremely high fees, and their unsupported approach with respect to the form of the audit
17 report, have led us to conclude that another well-qualified firm should complete the audit."
18 Berkman also stated: "The completion of these audits is a very high priority for the Funds
19 and continues to receive our undivided attention." The letter estimates the audits will be
20 concluded "on or before June 30, 2003." Berkman concealed and failed to disclose any of
21 the information that led to this change in accountants. Berkman failed to disclose any
22 information, including the end of the Geffen Mesher engagement, to any other Fund I or II
23 member, or any member of Fund III.

24  290.

25     On May 27, 2003, Hawkins made the following statements to a representative of
26 bcIMC regarding the termination of the audit: (a) Berkman had decided to have his tax

Page 92– THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  accountants perform the audit; and (b) the audit was terminated because Berkman asked for a
2  qualified opinion, Geffen felt it was too late in the process to issue a qualified opinion and
3  Geffen wanted to issue an unqualified opinion. Hawkins's statements on behalf of Geffen
4  Mesher concealed and failed to disclose the information they knew.

5                                                      291.

6         As discussed above, from the time Geffen Mesher was first retained by the Funds, and
7  prior to the audit engagements, Geffen Mesher and Hawkins knew or should have known of
8  a number of suspicious transactions involving Berkman and the Funds. During the audit
9  process itself, Geffen Mesher and Hawkins became aware of a number of improper or
10 potentially fraudulent or illegal acts, including in-kind security transfers between Funds
11 without appropriate valuations, reclassification of transactions, satisfaction of debt of one
12 Fund to another Fund with worthless securities, suspicious satisfactions of CB&A debts with
13 transfers of worthless securities between the Funds and CB&A, suspicious transactions
14 between Berkman and the Funds, and unsupported journal entries.

15                                                     292.

16        At no time did Geffen Mesher or Hawkins notify the Advisory Committees, any fund
17 member or anyone else besides Berkman regarding any of the inappropriate transactions they
18 had discovered involving his use of Fund money.

19                                            **First Count**

20      **(Restatement Section 876(a)—Acting in Concert or Pursuant to a Common Design)**

21                                                     293.

22        The Funds and members reallege the preceding allegations.

23                                                     294.

24        Geffen Mesher and Hawkins are jointly and severally liable with Berkman for all
25 damages arising out of his tortious conduct because Geffen Mesher and Hawkins acted in
26 concert or pursuant to a common design to accomplish a tortious result with Berkman.

Page 93 · THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1                                      295.

2        Geffen Mesher and Hawkins assisted Berkman in misrepresenting to members the

3 true financial condition of the Funds and the true nature of Berkman's activities in

4 connection with the management and operations of the Funds.

5                                      296.

6        In particular, Geffen Mesher and Hawkins acted in concert in connection with

7 Berkman or pursuant to a common design:

8        a.      By issuing misleading year-end 2001 compilation reports that misclassified

9 assets and liabilities and otherwise misstated the financial condition of the Funds.

10       b.      By agreeing with Berkman not to perform audits of Funds I and II requested

11 by bcIMC in 2002.

12       c.      By actively stalling, delaying, and postponing the completion of the Fund I

13 and II audits for 11 months—from June 2002 until May 2003 to conceal Berkman's

14 misconduct.

15       d.      By making material misrepresentations to the major investor in Funds I and II

16 regarding the status, findings, and reasons for termination of its audit.

17       e.      By providing Berkman suggested language to use in his communications with

18 investors regarding the status and findings of Geffen Mesher's audit.

19       f.      By meeting with Berkman on a number of occasions to discuss how to avoid

20 disclosure of his improper conduct to members.

21       g.      By failing to report Berkman's misconduct to members in order to continue

22 working for, and earning fees from, other entities he controlled.

23       h.      By failing to disclose to the Funds and members information they learned

24 while performing the Fund I and II audits (including failing to withdraw its prior compilation

25 reports and notify all known users, i.e., members).

26       i.      By failing to investigate when it knew that Berkman was engaged in illegal

Page 94– THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1   acts, or inappropriate transactions, or other activities constituting fraud.

2       j.      By reporting on compiled financial statements which omitted substantially all

3   disclosures, when they knew or should have known that such steps were undertaken to

4   mislead those who might reasonably be expected to use such statements.

5       k.      By reporting on compiled financial statements using an "other comprehensive

6   basis of accounting" ("OCBOA") as opposed to "generally accepted accounting practices"

7   ("GAAP") when OCBOA was inappropriate and misleading.

8       l.      By failing to make additional inquiries and obtain additional or revised

9   information when they became aware that the information provided to it was incorrect,

10  incomplete, or otherwise unsatisfactory.

11      m.      By failing to inform the appropriate level of Fund management (a level above

12  Berkman, i.e., advisory committee and members) regarding the material errors, or fraud, or

13  illegal acts that had come to its attention.

14      n.      By concealing known improper conduct of Berkman.

15      o.      By providing compilation reports addressed to the members to Berkman for

16  distribution.

17      p.      By failing to reissue its 2001 compilation reports to all known users after

18  becoming aware of material misstatements contained therein.

19      q.      By failing to consult the use of a specialist in connection with their

20  engagement involving the Funds.

21      r.      By failing to adequately train and require professional competency for all

22  professionals involved in the engagements.

23      s.      By failing to adequately plan and supervise the work.

24      t.      By failing to exercise professional skepticism in the performance of their

25  engagement.

26      u.      By failing to make required disclosures to the Funds and/or Fund members

Page 95~ THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  regarding accounting errors, misstatements and/or misrepresentations Berkman made to the

2  Funds and/or members which Geffen Mesher and/or Hawkins were aware of in connection

3  with professional services they provided to Berkman, EVI, WellPartner, Fund IV, Fund V

4  and/or CB&A.

5                                        297.

6        By working with Berkman to conceal his misconduct, Geffen Mesher and Hawkins

7  took active steps in furtherance of its agreement to participate in his misconduct.  Geffen

8  Mesher and Hawkins are therefore jointly liable for all damages caused by Berkman's

9  tortious conduct.

10                                  **Second Count**

11      **(Restatement Section 876(b)—Knowingly Providing Substantial Assistance)**

12                                        298.

13       The Funds and members reallege the preceding allegations.

14                                        299.

15       Geffen Mesher and Hawkins are jointly and severally liable with Berkman for all

16  damages arising out of his tortious conduct because they knowingly provided substantial

17  assistance to Berkman's tortious conduct.

18                                        300.

19       During the time Geffen Mesher and Hawkins were providing professional services for

20  the Funds, they were aware that Berkman was engaged in tortious conduct.  Geffen Mesher

21  and Hawkins's knowledge is demonstrated by the following facts learned during that time

22  they provided professional services and/or during the time Hawkins worked for Arthur

23  Andersen:

24       a.      Hawkins and Geffen Mesher knew that Berkman had significant personal debt

25  at the time the Funds were formed.  They also knew that Berkman had represented to the

26  Funds' members that their money would be invested in legitimate companies at the venture

Page 96–  THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  capital stage. Hawkins and Geffen Mesher knew that these representations were false as

2  Berkman used money invested in the Funds to repay debt he owed.

3       b.     Hawkins and Geffen Mesher knew that Berkman had misrepresented to the

4  Funds' members that he had borrowed money from the Funds when, in fact, the money had

5  been converted; that Berkman had breached his fiduciary duties of loyalty and full disclosure

6  to the Funds by using the Funds' money for his own interests as opposed to the Funds', by

7  converting the Funds' money, by depriving the Funds of the liquidity necessary to make

8  follow-on investments to protect existing investments against dilution, and by investing in

9  companies from which he received an improper personal benefit; and that Berkman had

10  breached fiduciary duties to the members by failing to make disclosures about the true nature

11  of transactions, including the $1,862,300 taken from Fund I as of year-end 1998, the failure

12  to make the Preview Systems investments in Fund III as of year-end 1999, the

13  misappropriation of $5,130,194 taken from Fund II as of year-end 2000, and the failure to

14  disclose to investor members that Berkman had used membership units in the Funds to repay

15  $1.375 million in debt.

16       c.     During the audit, Geffen Mesher and Hawkins learned that Berkman

17  improperly paid his debt with securities from one of the Funds, that there were issues with

18  respect to the worthlessness of items on the financial statements and justification of payment

19  of Berkman-related debt with "worthless securities," and that there was a need to address

20  certain aspects of securities transfers represented as payment of Berkman-related debt.

21       d.     No later than April 4, 2003, Geffen Mesher and Hawkins knew that

22  $3,628,000 was transferred from Funds I and II to CB&A and that the money was

23  subsequently transferred to Berkman by CB&A. They were also aware of conflicts of

24  interest between Berkman and the Funds with regard to "numerous transfers of investments

25  and investors between funds."

26

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0815

1 | 301.

2 |   Thus, during the time they provided professional services for the Funds, Geffen

3 | Mesher and Hawkins were aware that Berkman used the Funds' money for his own interest,

4 | converted the Funds' money, deprived the Funds of the liquidity necessary to make follow-

5 | on investments to protect existing investments against dilution, and invested in companies

6 | from which he received an improper personal benefit.  Geffen Mesher also knew that the

7 | Funds were demanding an audit, and that Berkman's tortious conduct would be revealed if

8 | the audit was completed.  Then, during the time they helped Berkman stall the audit process,

9 | Geffen Mesher learned of other occasions in which Berkman loaned the Funds' money to

10 | himself.  Geffen Mesher, therefore, had actual knowledge of his tortious conduct during the

11 | time they provided professional services for the Funds and members.

12 | 302.

13 |   Geffen Mesher and Hawkins provided substantial assistance to Berkman's tortious

14 | conduct in a number of ways, including:

15 |   a.  By issuing misleading year-end 2001 compilation reports that misclassified

16 | assets and liabilities and otherwise misstated the financial condition of the Funds.

17 |   b.  By agreeing with Berkman not to perform audits of Funds I and II requested

18 | by bcIMC in 2002.

19 |   c.  By actively stalling, delaying, and postponing the completion of the Fund I

20 | and II audits for 11 months—from June 2002 until May 2003 to conceal Berkman's

21 | misconduct.

22 |   d.  By making material misrepresentations to the major investor in Funds I and II

23 | regarding the status, findings, and reasons for termination of its audit.

24 |   e.  By providing Berkman suggested language to use in his communications with

25 | investors regarding the status and findings of Geffen Mesher's audit.

26 |   f.  By meeting with Berkman on a number of occasions to discuss how to avoid

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  disclosure of his improper conduct to members.

2      g.    By failing to report Berkman's misconduct to members in order to continue
3  working for, and earning fees from, other entities he controlled.

4      h.    By failing to disclose to the Funds and members information they learned
5  while performing the Fund I and II audits (including failing to withdraw its prior compilation
6  reports and notify all known users, i.e., members).

7      i.    By failing to investigate when they knew that Berkman was engaged in illegal
8  acts, or inappropriate transactions, or other activities constituting fraud.

9      j.    By reporting on compiled financial statements which omitted substantially all
10  disclosures, when they knew or should have known that such steps were undertaken to
11  mislead those who might reasonably be expected to use such statements.

12      k.    By reporting on compiled financial statements using an "other comprehensive
13  basis of accounting" ("OCBOA") as opposed to "generally accepted accounting practices"
14  ("GAAP") when OCBOA was inappropriate and misleading.

15      l.    By failing to make additional inquiries and obtain additional or revised
16  information when they became aware that the information provided to it was incorrect,
17  incomplete, or otherwise unsatisfactory.

18      m.    By failing to inform the appropriate level of Fund management (a level above
19  Berkman, i.e., advisory committee and members) regarding the material errors, or fraud, or
20  illegal acts that had come to its attention.

21      n.    By concealing known improper conduct of Berkman.

22      o.    By providing compilation reports addressed to the members to Berkman for
23  distribution.

24      p.    By failing to reissue its 2001 compilation reports to all known users after
25  becoming aware of material misstatements contained therein.

26      q.    By failing to make required disclosures to the Funds and/or Fund members

Page 99– THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 | regarding accounting errors, misstatements and/or misrepresentations Berkman made to the
2 | Funds and/or members which Geffen Mesher and/or Hawkins were aware of in connection
3 | with professional services they provided to Berkman, EVI, WellPartner, Fund IV, Fund V
4 | and/or CB&A.

303.

6 | Because Geffen Mesher and Hawkins provided substantial assistance to Berkman's
7 | tortious conduct (as described above), Geffen Mesher and Hawkins are jointly liable for all
8 | damages caused by his tortious conduct for which Geffen Mesher and Hawkins provided
9 | substantial assistance.

**Third Count**

**(Restatement Section 876(c)—Substantial Assistance/Breach of Duty)**

304.

The Funds and members reallege the preceding allegations.

305.

Geffen Mesher is jointly and severally liable with Berkman for all damages arising
out of his tortious conduct because Geffen Mesher provided substantial assistance to that
tortious conduct while breaching duties Geffen Mesher owed the Funds and members.

306.

Geffen Mesher breached duties it owed to the Funds and members by failing to
comply with obligation it undertook through its engagement letters, by failing to act in
accordance with applicable accounting principles, and/or by failing to meet professional
standards in preparing and reporting on the Funds' financial statements. In so doing, Geffen
Mesher failed to meet standards set forth in the AICPA Statements on Accounting and
Review Services; Generally Accepted Accounting and/or Auditing Standards; the AICPA
Code of Professional Conduct; the AICPA Bylaws; and the AICPA Statements on Quality
Control Standards. Geffen Mesher breached these and other professional standards in a

Page 100–THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1    number of ways, including:

2         a.    By failing to consult the use of a specialist in connection with their
3    engagement involving the Funds.

4         b.    By failing to adequately train and require professional competency for all
5    professionals involved in the engagements.

6         c.    By failing to adequately plan and supervise the work.

7         d.    By failing to exercise professional skepticism in the performance of their
8    engagement.

9         e.    By failing to maintain total independence of professional judgment.

10        f.    By failing to comply with appropriate accounting principles or meet
11    professional standards in preparation and reporting compiled financial statements and in its
12    actions during the time frame it rendered services, in that the compiled financial statements
13    did not fairly represent the Funds' financial position or results of operations and by failing to
14    disclose in its reports the inconsistencies contained in the Funds' compiled financial
15    statements with those required under applicable professional standards.

16        g.    By failing to investigate when they knew that Berkman was engaged in illegal
17    acts, or inappropriate transactions, or other activities constituting fraud.

18        h.    By failing to make additional inquiries and obtain additional or revised
19    information when it became aware that the information provided to it was incorrect,
20    incomplete, or otherwise unsatisfactory.

21        i.    By failing to inform the appropriate level of Fund management (a level above
22    Berkman, i.e., advisory committee and members) regarding the material errors, or fraud, or
23    illegal acts that had come to its attention.

24        j.    By failing to be free of conflicts of interest in relation to the services it
25    performed for the Funds.

26        k.    By failing to perform audit steps in accordance with the applicable standard of

Page 101– THIRD AMENDED COMPLAINT

1 | care.

2 |       l.      By failing to make communications required by the applicable standard of
3 | care.

4 |       m.     By actively assisting management in misrepresenting the financial condition of
5 | a company (constituting a violation of standards applicable to both audit and compilation
6 | engagements).

7 |       n.      By misleading known users of audits regarding the status findings and reasons
8 | for termination.

9 |       o.      By failing to make required disclosures to the Funds and/or Fund members
10 | regarding accounting errors, misstatements and/or misrepresentations Berkman made to the
11 | Funds and/or members which Geffen Mesher and/or Hawkins were aware of in connection
12 | with professional services they provided to Berkman, EVI, WellPartner, Fund IV, Fund V
13 | and/or CB&A.

14 |                                     307.

15 |       Geffen Mesher provided substantial assistance to Berkman's tortious conduct in a
16 | number of ways, including:

17 |       a.      By issuing misleading year-end 2001 compilation reports that misclassified
18 | assets and liabilities and otherwise misstated the financial condition of the Funds.

19 |       b.      By agreeing with Berkman not to perform audits of Funds I and II requested
20 | by bcIMC in 2002.

21 |       c.      By actively stalling, delaying, and postponing the completion of the Fund I
22 | and II audits for 11 months—from June 2002 until May 2003 to conceal Berkman's
23 | misconduct.

24 |       d.      By making material misrepresentations to the major investor in Funds I and II
25 | regarding the status, findings, and reasons for termination of its audit.

26 |       e.      By providing Berkman suggested language to use in his communications with

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  investors regarding the status and findings of Geffen Mesher's audit.

2     f.    By meeting with Berkman on a number of occasions to discuss how to avoid
3  disclosure of his improper conduct to members.

4     g.    By failing to report Berkman's misconduct to members in order to continue
5  working for, and earning fees from, other entities he controlled.

6     h.    By failing to disclose to the Funds and members information it learned while
7  performing the Fund I and II audits (including failing to withdraw its prior compilation
8  reports and notify all known users, i.e., members).

9     i.    By failing to investigate when it knew that Berkman was engaged in illegal
10  acts, or inappropriate transactions, or other activities constituting fraud.

11     j.    By reporting on compiled financial statements which omitted substantially all
12  disclosures, when it knew or should have known that such steps were undertaken to mislead
13  those who might reasonably be expected to use such statements.

14     k.    By reporting on compiled financial statements using an "other comprehensive
15  basis of accounting" ("OCBOA") as opposed to "generally accepted accounting practices"
16  ("GAAP") when OCBOA was inappropriate and misleading.

17     l.    By failing to make additional inquiries and obtain additional or revised
18  information when it became aware that the information provided to it was incorrect,
19  incomplete, or otherwise unsatisfactory.

20     m.    By failing to inform the appropriate level of Fund management (a level above
21  Berkman, i.e., advisory committee and members) regarding the material errors, or fraud, or
22  illegal acts that had come to its attention.

23     n.    By concealing known improper conduct of Berkman.

24     o.    By providing compilation reports addressed to the members to Berkman for
25  distribution.

26     p.    By failing to reissue its 2001 compilation reports to all known users after

Page 103–THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 | becoming aware of material misstatements contained therein.

2 | 308.

3 | Because Geffen Mesher and Hawkins provided substantial assistance to Berkman's

4 | tortious conduct (as described above), they are jointly liable for all damages caused by

5 | Berkman's tortious conduct for which they provided substantial assistance.

6 | ### NINETEENTH CLAIM FOR RELIEF

7 | **(Restatement (Second) of Torts Sec. 876—bcIMC v. Geffen Mesher
and Richard Hawkins)**

8 |

9 | 309.

10 | bcIMC realleges the preceding allegations.

11 | 310.

12 | As alleged above, Berkman committed various tortious acts against bcIMC in

13 | connection with their management and control of Funds I and II.

14 | 311.

15 | As alleged above, at the time Geffen Mesher and Hawkins were providing

16 | professional services to the Funds for the benefit of bcIMC and making misrepresentations to

17 | bcIMC about the nature of those services, Geffen Mesher and Hawkins were aware that

18 | Berkman had engaged, or was engaging in, tortious conduct.

19 | 312.

20 | Geffen Mesher and Hawkins are jointly and severally liable with Berkman for all

21 | damages arising out of his tortious conduct against bcIMC because Geffen Mesher and

22 | Hawkins: (a) acted in concert, or pursuant to a common design, with Berkman; (b)

23 | knowingly provided substantial assistance to Berkman's tortious conduct; and/or (c)

24 | provided substantial assistance to Berkman while breaching an independent duty owed

25 | directly to bcIMC to disclose known wrongs.

26 |

Page 104—THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

313.

In particular, Geffen Mesher and Hawkins provided assistance to Berkman's tortious conduct, or acted in concert with Berkman or pursuant to a common design with him, in the following particulars:

    a.    By issuing a misleading year-end 2001 compilation report that misclassified assets of Fund II and therefore materially misrepresented the financial condition of the Fund;

    b.    By agreeing not to perform the audits of Funds I and II requested by bcIMC in 2002;

    c.    By assisting Berkman to stall, delay, and postpone the Fund I and II audits for 11 months—from June 2002 until May 2003;

    d.    By failing to report Berkman's misconduct to bcIMC in order to continue working for, and earning fees from, other entities Berkman controlled;

    e.    By failing to investigate when they knew that Berkman was engaged in illegal acts, or inappropriate transactions, or other activities constituting fraud;

    f.    By failing to disclose to bcIMC information they learned while performing the Fund I and II audits, when the applicable professional standards of care required disclosure to bcIMC;

    g.    By reporting on compiled financial statements which omitted substantially all disclosures, when they knew or should have known that such steps were undertaken to mislead those who might reasonably be expected to use such statements;

    h.    By reporting on compiled financial statements using an "other comprehensive basis of accounting" ("OCBOA") as opposed to "generally accepted accounting practices" ("GAAP") when OCBOA was inappropriate and misleading;

    i.    By failing to make additional inquiries and obtain additional or revised information when they became aware that the information provided to it was incorrect, incomplete, or otherwise unsatisfactory;

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1    j.    By failing to comply with professional standards of care and inform bcIMC
2 regarding the material errors, or fraud, or illegal acts that had come to its attention, including,
3 but not limited to, improper transactions, or material errors, or fraud or illegal acts of
4 Berkman, knowing that bcIMC had specifically requested an audit for the purpose of
5 discovering any such information;

6    k.    By misrepresenting to bcIMC the status of the audit;

7    l.    By misrepresenting the findings of the audit to bcIMC;

8    m.    By writing a letter for Berkman to send to bcIMC which misrepresented the
9 status and findings of the audit;

10    n.    By misrepresenting to bcIMC the reason the audit was terminated in May
11 2003;

12    o.    By concealing known improper conduct of Berkman;

13    p.    By providing compilation reports addressed to the members to Berkman for
14 distribution;

15    q.    By failing to reissue their 2001 compilation reports to all known users after
16 becoming aware of material misstatements contained therein; and

17    r.    By agreeing to perform an "independent" audit for the benefit of bcIMC
18 knowing that Geffen Mesher and Hawkins were not independent of Berkman or any of his
19 affiliated companies.

20                                    314.

21    Geffen Mesher and Hawkins breached duties owed directly to bcIMC by:  (a) failing
22 to inform bcIMC regarding the material errors, or fraud and or illegal acts that had come to
23 their attention; (b) misrepresenting the status of the 2002 audit review and the reasons for its
24 termination; and (c) failing to notify bcIMC that the compiled financial statements previously
25 delivered to bcIMC contained material misstatements knowing that bcIMC had or would be
26 relying on those statements and knowing that they contained materials misstatements of fact.

Page 106–THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

315.

None of the acts or omissions set forth in the preceding paragraphs were known by bcIMC, nor could reasonably have been discovered, more than two years before Geffen Mesher and Hawkins signed an agreement tolling the statute of limitations in September 2005.

316.

None of the acts or omissions set forth in the preceding paragraphs were known by bcIMC, nor could reasonably have been discovered, before 2006.

317.

As a direct cause of the acts and/or failures of Geffen Mesher and Hawkins, bcIMC sustained damages as a result of Berkman's continued misuse and misappropriation of Fund assets subsequent to the date Geffen Mesher and Hawkins had an obligation to disclose their findings to bcIMC.

## TWENTIETH CLAIM FOR RELIEF

### (Breach of Contract—The Funds v. Geffen Mesher)

318.

Geffen Mesher entered into a contract to provide independent professional accounting services to the Funds during the time period between 2001 and 2003. These services included compilation, audit, tax, and other accounting services.

319.

The Funds performed all obligations owed under the agreements, including paying Geffen Mesher for services rendered.

320.

In an engagement letter dated February 5, 2002, Geffen Mesher agreed to act as independent accountants and to provide the following services to the Funds:

    a.    Compile statements of assets, liabilities, and member equity for the Funds;

Page 107 – THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1     b.     Issue a year-end Independent Accountants' compilation report on the financial
2  statements for each of the Funds;

3     c.     Inform the appropriate level of management of any material error, or fraud, or
4  illegal acts that came to its attention;

5     d.     Provide a list of schedules and analysis which it requires from the Funds'
6  accounting personnel in order to provide professional services;

7     e.     Advise the Funds of difficulties or delays in completing the engagement; and

8     f.     Provide advice on business matters and provide consulting on business
9  planning.

10                 321.

11     Hawkins signed the engagement letter on behalf of Geffen Mesher and Berkman
12  accepted it on behalf of the Funds'.

13                 322.

14     Geffen Mesher materially breached its obligations under the February 5, 2002,
15  agreement by:

16     a.     Failing to be and remain independent;

17     b.     Failing to properly compile the Funds' financial statements;

18     c.     Failing to inform the appropriate level of management of material errors, or
19  fraud, or illegal acts that came to its attention during the course of the engagement (or that it
20  was aware of prior to the engagement through the information and knowledge possessed by
21  its shareholder, Hawkins);

22     d.     Failing to advise the Funds of difficulties and delays in completing the
23  engagement;

24     e.     Failing to report and/or concealing its knowledge of Berkman's misconduct;

25     f.     Assisting Berkman in concealing the Funds' financial condition;

26     g.     Failing to issue Independent Accountants' Compilation Reports on the Funds'

Page 108–THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 financial statements that accurately reflected the Funds' financial conditions; and

2    h.    Issuing Independent Accountants' Compilation Reports on the Funds'

3 financial statement when the issuance of such a report was improper.

4                                    323.

5    Geffen Mesher entered into two subsequent contracts with Funds I and II—on

6 December 6, 2002, and January 20, 2003—and agreed to provide independent accountant

7 services by auditing the Funds' financial statements. The agreements are identical in form

8 except for the date of the audit. The earlier agreement is for an audit as of November 30,

9 2002, and the later agreement is for an audit as of December 31, 2002.

10                                   324.

11    Hawkins and another Geffen Mesher partner entered into the agreements on behalf of

12 Geffen Mesher. They were accepted by Funds I and II.

13                                   325.

14    Under the agreements to provide audit services, Geffen Mesher was contractually

15 obligated to provide the following services to the Funds:

16    a.    Audit the balance sheets and related statements of operations, member's

17 equity, and cash flows for the Funds from January 9, 1998 (the inception of Fund I according

18 to the agreement) and December 8, 1998 (the inception of Fund II according to the

19 agreement) through December 31, 2002;

20    b.    To perform an audit in accordance with auditing standards generally accepted

21 in the United States;

22    c.    To obtain reasonable assurance that the financial statements are free from

23 material misstatement, whether caused by error or fraud;

24    d.    To examine on a test basis evidence supporting the amounts and disclosures in

25 the financial statements;

26    e.    To evaluate the overall financial statement presentation;

Page 109– THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1    f.    To design an audit to provide reasonable assurance of detecting misstatements;

2    g.    To issue a qualified audit opinion on the Funds' financial statements since the

3  Funds record investments at cost;

4    h.    To provide advice regarding establishing and maintaining a sound system of

5  internal controls to prevent and/or detect errors, fraudulent financial reporting, and/or

6  misappropriation of assets;

7    i.    To provide a list of schedules and analysis it requires from the Funds'

8  accounting personnel in order to prepare the audit;

9    j.    To remain independent of Funds I and II and related entities; and

10    k.    To be available to respond to inquiries regarding business matters and to

11  provide consultation on business planning issues.

12                              326.

13    Geffen Mesher materially breached its audit agreements with the Funds by:

14    a.    Failing to properly audit the Funds' financial statements;

15    b.    Failing to issue the appropriate reports in light of its knowledge of Berkman's

16  misconduct in connection with the management of the Funds;

17    c.    Failing to obtain reasonable assurance that the financial statements were free

18  of material misstatement whether caused by error or fraud;

19    d.    Failing to appropriately examine on a test basis evidence supporting the

20  amounts and disclosures in the financial statements;

21    e.    Failing to properly evaluate the overall financial statement presentation;

22    f.    Failing to design the audit in a way to provide reasonable assurance of

23  detecting misstatements;

24    g.    Failing to provide the appropriate advice in connection with establishing and

25  maintaining a system of internal controls designed to prevent or detect errors, fraudulent

26  financial reporting and misappropriation of assets;

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.795.0915

1      h.      Failing to provide an accurate and complete list of schedules and analysis

2 required by Fund accounting personnel;

3      i.      Failing to appropriately provide business planning advice;

4      j.      Failing to report and/or concealing its knowledge of Berkman's misconduct;

5      k.      Assisting Berkman in concealing the true financial conditions of the Funds;

6 and

7      l.      Failing to advise the Fund members of Berkman's misconduct.

8                   327.

9      Under the terms of each Geffen Mesher engagement, the Funds are entitled to the

10 award of all expenses incurred after the commencement of litigation, through final judgment,

11 including reasonable attorney fees.

12                   328.

13      As set forth in the preceding paragraphs, Geffen Mesher materially breached its

14 contractual agreements with the Funds causing the Funds to sustain damages as described

15 below.

16               **TWENTY-FIRST CLAIM FOR RELIEF**

17        **(Breach of Third Party Beneficiary Contract—bcIMC v. Geffen Mesher)**

18                   329.

19      bcIMC realleges the preceding allegations.

20                   330.

21      Subsequent to entering the February 2, 2002 accounting services contract with the

22 Funds, Geffen Mesher entered into two contracts with Funds I and II—on December 6, 2002,

23 and January 20, 2003—and agreed to provide independent accounting services by auditing

24 those funds. The agreements are identical in form except for the date of the audit. The

25 earlier agreement is for an audit as of November 30, 2002, and the later agreement is for an

26 audit as of December 31, 2002. The audit engagement agreements were prepared and agreed

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 | to subsequent to Geffen Mesher's commencement of its actual work on the audits, which
2 | started in or before August 2002.

3 | 331.

4 | Hawkins and David Bruhns entered into the agreements on behalf of Geffen Mesher.
5 | They were accepted by Funds I and II.

6 | 332.

7 | The Funds retained Geffen Mesher to perform the audits in direct response to requests
8 | by bcIMC that such audits be performed and to satisfy and discharge the special obligation to
9 | bcIMC to perform the audits. When Geffen Mesher entered into the audit engagements, it
10 | was aware that the engagements were being undertaken at the request of bcIMC.

11 | 333.

12 | Geffen Mesher knew at the outset of the audit engagements that any reports resulting
13 | from the audit retentions would be relied upon by bcIMC and that bcIMC would be the
14 | primary user of any such reports. Over the course of the audit review, Geffen Mesher
15 | interacted directly with bcIMC. On or about November 1, 2002, Hawkins discussed the
16 | nature and scope of the audit with bcIMC. Hawkins also conferred with bcIMC about
17 | bcIMC's preferences with respect to the format and layout of the forthcoming audit reports.
18 | As Hawkins told bcIMC on November 22, 2002: "Since [bcIMC] is the primary financial
19 | statement user, we would like to consider your requested format prior to drafting a financial
20 | statement."

21 | 334.

22 | Under the terms of the audit engagements, Geffen Mesher was contractually obligated
23 | to audit the balance sheets and related statements of operations, member's equity, and cash
24 | flows for the Funds from January 9, 1998 (the inception of Fund I according to the
25 | agreement) and December 8, 1998 (the inception of Fund II according to the agreement)
26 | through December 31, 2002. Under the audit agreements, Geffen Mesher also undertook

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 | various other duties, as alleged in the preceding claim.

2 | 335.

3 | Geffen Mesher materially breached the audit engagement agreements, as alleged in

4 | the preceding claim. Among other things, Geffen Mesher breached the agreements by failing

5 | to report to bcIMC, and actively concealing from bcIMC, its knowledge of Berkman's

6 | misconduct.

7 | 336.

8 | None of the acts or omissions set forth in the preceding paragraphs were known by

9 | bcIMC, nor could reasonably have been discovered, before 2006.

10 | 337.

11 | As a direct result of Geffen Mesher's material breaches the audit engagement

12 | agreements, bcIMC sustained damages as described below. bcIMC is entitled to assert this

13 | claim directly as a third-party beneficiary because bcIMC was the primary intended

14 | beneficiary of the subject audits, which were commissioned by the Funds to satisfy the

15 | obligation to provide the audits to bcIMC.

16 | 338.

17 | bcIMC should be awarded all expenses incurred after the commencement of

18 | litigation, through final judgment, including reasonable attorney fees, pursuant to the terms

19 | of each Geffen Mesher engagement.

20 |

21 |

22 |

23 |

24 |

25 |

26 |

Page 113—THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

## TWENTY-SECOND CLAIM FOR RELIEF

### (Professional Negligence/Accounting Malpractice—The Funds and Members v. Geffen Mesher and Richard Hawkins)

### First Count

### (Accounting Negligence Related to Compilation Engagements)

339.

The Funds and members reallege the preceding allegations.

340.

By virtue of the longstanding professional relationship between Berkman and Hawkins, when Hawkins left Arthur Andersen and joined Geffen Mesher in 2001, Hawkins knew the following information:

a.    That Berkman owed millions of dollars to holders of notes;

b.    That certain of Berkman's former business associates and note-holders had alleged that he pledged stock he did not own as security for those notes and had made misrepresentations to investors about the nature of the investment and his financial status;

c.    That Berkman had taken the first approximately $2.1 million of money invested in the Funds and transferred it to CB&A for his use;

d.    That Berkman had caused the Funds to transfer over $4 million to CB&A for his use;

e.    That the transfers had been reclassified after the fact to be "loans to CB&A";

f.    That Berkman had taken money from the Funds and had misrepresented to the accountants at Arthur Andersen about what he did with the money;

g.    That Berkman was improperly transferring money between the Funds and was cancelling debts between the Funds via "in-kind" transfers of stock that had no known value; and

Page 114–THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1      h.     That Berkman had provided membership units in the Funds in exchange for

2 satisfaction of his debts.

3                             341.

4        As a result of the knowledge it obtained before its formal association with the Funds,

5 Geffen Mesher and Hawkins should have been aware that they could not rely on

6 representations or assertions made by Berkman in connection with the preparation of

7 compiled financial statement services it provided to the Funds, without obtaining additional

8 information and performing additional procedures. This knowledge that Berkman was not a

9 reliable source of financial information created a duty upon Geffen Mesher and Hawkins to

10 investigate for evidence of potential fraud, or illegal acts, or inappropriate transactions

11 involving Berkman.

12                           342.

13        Had Geffen Mesher and Hawkins fulfilled their duty to investigate, they would have

14 confirmed no later than February 2002 that Berkman was engaging in fraud, or potentially

15 illegal acts, or other inappropriate transactions.

16                           343.

17        Geffen Mesher and Hawkins were aware of information received from Berkman or

18 the Funds' manager that was incorrect, incomplete, or otherwise unsatisfactory. They owed

19 a duty to the Funds to obtain additional or revised information. Further, they owed a duty to

20 the Funds' members to inform them, as a level of management above Berkman, of any

21 material errors, or fraud, or illegal acts that came to their attention.

22                           344.

23        Geffen Mesher and Hawkins were in a special relationship with the Funds, and had

24 the responsibility to exercise independent judgment to act in the Funds and the members'

25 economic interests. The Funds and the members had a right to rely on Geffen Mesher and

26 Hawkins, and did rely on them to exercise independent judgment in furtherance of their

Page 115– THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  economic interests.

2                                    345.

3        Geffen Mesher and Hawkins knew or should have known that the members were to
4  be recipients and users of the financial documents they prepared. Geffen Mesher and
5  Hawkins prepared tax returns for the Funds and provided K-1 forms to each Fund member.
6  Geffen Mesher addressed their compilation reports to the Fund manager and to Fund
7  members. Some or all Fund members received the Geffen Mesher Compilation report.
8  Geffen Mesher, as an independent public accountant, cloaked the Funds with legitimacy by
9  issuing independent certified public accountant's Compilation reports for the Funds when it
10 knew or should have known the statements were inaccurate and materially misstated the
11 Funds' financial condition.

12                                   346.

13       It was reasonably foreseeable to Geffen Mesher and Hawkins that if they failed to
14 perform accounting services in a reasonable manner, the Funds and members would suffer
15 harm.

16                                   347.

17       Geffen Mesher and Hawkins failed to comply with the applicable standard of care and
18 failed to exercise the care, skill, diligence, and independence required of accountants with
19 respect to the compilation engagements in the following ways:

20       a.      By failing to maintain total independence of professional judgment;

21       b.      By failing to maintain public trust;

22       c.      By failing to comply with appropriate accounting principles or meet
23 professional standards in preparation and reporting on financial statements and in its actions
24 during the time it rendered its services, in that the financial statements did not fairly represent
25 the Funds' financial position or results of operations, and by failing to disclose in its reports
26 the inconsistencies contained in the Funds' compiled financial statements in a manner

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  consistent with professional standards;

2      d.     By failing to investigate further when they suspected or should have suspected
3  that potentially illegal acts, or inappropriate transactions, or other activities constituting fraud
4  were occurring;

5      e.     By reporting on compiled financial statements which omitted substantially all
6  disclosures, when they knew or should have known such steps were undertaken to mislead
7  those who might reasonably be expected to use such financial statements;

8      f.     By reporting on compiled financial statements using an "other comprehensive
9  basis of accounting" ("OCBOA") as opposed to GAAP when OCBOA was inappropriate and
10  misleading;

11      g.     By preparing financial statements that failed to include appropriate schedules
12  of investments, statements of changes in net assets, schedules of financial highlights, and
13  losses from related party transactions, and by misclassifying uncollectable long-term related-
14  party loans;

15      h.     By failing to make additional inquiries and obtain additional or revised
16  information when they became aware that the information provided to it was incorrect,
17  incomplete, or otherwise unsatisfactory;

18      i.     By failing to withdraw and reissue their reports and notify all known users of
19  their financial statements, including members, that the prior statements contained material
20  misstatements and/or errors;

21      j.     By failing to inform the appropriate level of Fund management (a level above
22  Berkman i.e. the Advisory Committees and/or members) regarding the material errors, or
23  fraud, or illegal acts that had come to their attention; and

24      k.     By failing to be free of conflicts of interest in relation to the services it
25  performed for the Funds.

26      l.     By failing to make required disclosures to the Funds and/or Fund members

Page 117–THIRD AMENDED COMPLAINT

1  regarding accounting errors, misstatements and/or misrepresentations Berkman made to the
2  Funds and/or members which Geffen Mesher and/or Hawkins were aware of in connection
3  with professional services they provided to Berkman, EVI, WellPartner, Fund IV, Fund V
4  and/or CB&A.

5                                        348.

6         As a direct, substantial and proximate result of the actions of Geffen Mesher and
7  Hawkins, the Funds have sustained the damages as stated below.

8                                        349.

9         Hawkins is personally liable for negligent or wrongful acts or omissions or
10  misconduct committed by himself or by persons under his direct supervision or control,
11  pursuant to ORS 58.185.

12                                **Second Count**

13         **(Accounting Negligence Related to Audits of Funds I and II)**

14                                        350.

15        The Funds reallege the preceding allegations.

16                                        351.

17        In August 2002, beIMC, the majority investor in Funds I and II, requested that
18  Berkman secure an audit of Funds I and II by an independent CPA.  In December 2002,
19  Geffen Mesher accepted audit engagements for Funds I and II.

20                                        352.

21        Based on information learned through Hawkins's work for Berkman while at Arthur
22  Andersen, and based on information Geffen Mesher knew or should have discovered during
23  the course of the compilation reports it prepared for each of the Funds, Geffen Mesher knew
24  or should have known at the outset of the audit engagements that they could not provide
25  reasonable assurances that the financial statements for Funds I and II would be free from
26  material misstatements.

Page 118–THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1                                    353.

2          No later than March 2003, Geffen Mesher knew or should have known that Berkman

3   had misused and/or misappropriated Fund assets, had misrepresented financial information

4   and transactions of the Funds, had failed to disclose material information about the Funds'

5   operations to the members, and had violated Oregon LLC law and/or the Funds' operating

6   agreements.

7                                    354.

8          Hawkins and Geffen Mesher wrote to Berkman in April 2003, pointed out concerns

9   about inappropriate transactions, and requested a legal opinion as to the authority for such

10  transactions.

11                                   355.

12         Hawkins and another shareholder of Geffen Mesher also met personally with

13  Berkman to discuss these inappropriate transactions in April 2003.

14                                   356.

15         As alleged above in preceding claims and allegations (incorporated by reference),

16  Geffen Mesher had numerous communications with the majority investor in Funds I and II

17  and made material misstatements regarding the status, findings, and reason for termination of

18  the audit.

19                                   357.

20         At no time did Hawkins, or anyone on behalf of Geffen Mesher, take reasonable steps

21  to inform bcIMC, any Advisory Committee member, or any other member of Funds I and II

22  about any material errors, or fraud, or illegal acts that had come to their attention.

23                                   358.

24         Geffen Mesher and Hawkins were in a special relationship with the Funds, and had

25  the responsibility to exercise independent judgment to act in the economic interests of Funds.

26  The Funds had a right to rely on Geffen Mesher and Hawkins, and did rely on them to

Page 119–THIRD AMENDED COMPLAINT                                    Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 | exercise independent judgment in furtherance of their economic interests.

2 | 359.

3 | Geffen Mesher and Hawkins knew or should have known that the Funds and their
4 | members would receive, review, and rely upon their communications and reports.

5 | 360.

6 | It was reasonably foreseeable to Geffen Mesher and Hawkins that if they failed to
7 | perform accounting services in a reasonable manner, the Funds would suffer harm.

8 | 361.

9 | Geffen Mesher and Hawkins failed to comply with applicable standard of care and
10 | failed to exercise the care, skill, diligence, and independence required of accountants with
11 | respect to the audit engagements in the following ways:

12 |     a.    By failing to appropriately investigate and report the findings of their
13 | investigation to a level above Berkman (i.e. Advisory Committees and/or members), when
14 | they: suspected Berkman was engaging in improper transactions, or illegal acts, or fraud;
15 | discovered errors in the financial statements; and became aware of internal control
16 | deficiencies;

17 |     b.    By failing to refer Funds I and II, bcIMC, and the other members to legal
18 | counsel when they: suspected that Berkman was engaging in improper transactions, or
19 | illegal acts, or fraud; discovered errors in the financial statements; and became aware of
20 | internal control deficiencies;

21 |     c.    By failing to re-issue corrected compiled financial statements after they:
22 | suspected that Berkman was engaging in improper transactions, or illegal acts, or fraud;
23 | discovered errors in the financial statements; and became aware of internal control
24 | deficiencies;

25 |     d.    By failing to notify all known users of the financial statements, including all
26 | members of the Funds, that the compiled financial statements should not be relied upon; and

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1      e.      By failing to inform a level of management other than Berkman of the true

2 reasons they withdrew from the audit engagements.

3      f.      By failing to maintain total independence of professional judgment.

4      g.     By failing to be free of conflicts of interest in relation to the services it

5 performed for the Funds.

6      h.     By failing to make communications required by the applicable standard of

7 care.

8      i.      By actively assisting management in misrepresenting the financial condition of

9 a company (constituting a violation of standards applicable to both audit and compilation

10 engagements).

11      j.      By misleading known users of audits regarding the status findings and reasons

12 for termination.

13      k.     By failing to make required disclosures to the Funds and/or Fund members

14 regarding accounting errors, misstatements and/or misrepresentations Berkman made to the

15 Funds and/or members which Geffen Mesher and/or Hawkins were aware of in connection

16 with professional services they provided to Berkman, EVI, WellPartner, Fund IV, Fund V

17 and/or CB&A.

18                     362.

19      As a direct result of Geffen Mesher's and Hawkins's acts and failures, the Funds

20 sustained damages as set forth below.

21                     363.

22      Hawkins is personally liable for negligent or wrongful acts or omissions or

23 misconduct committed by himself or by persons under his direct supervision or control,

24 pursuant to ORS 58.185.

25

26

Page 121–THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-3089
Telephone: 503.228.6351
Facsimile: 503.295.0915

## TWENTY-THIRD CLAIM FOR RELIEF

### (Professional Negligence/Accounting Malpractice—bcIMC v. Geffen Mesher and Richard Hawkins)

364.

bcIMC realleges the preceding allegations.

365.

As alleged above, Berkman agreed to cause Funds I and II to provide bcIMC with annual audited financial statements for Funds I and II within ninety (90) days of the end of each fund's fiscal year. This special obligation or duty, owed only to bcIMC (i.e., this duty was not owed to other members of Funds I and II), commenced in the year ending December 31, 1999, and continued each year thereafter. Prior to August 6, 2002, bcIMC demanded that the promised audit be performed.

366.

On or before August 6, 2002, the Funds hired Geffen Mesher and Hawkins to perform the promised audit and to satisfy and discharge the special obligation to bcIMC to perform an audit of Funds I and II.

367.

Through a memorandum sent to bcIMC on or about August 6, 2002, Berkman informed bcIMC that he had "requested a [GAAP] audit from the inception dates to the present for [Funds I and II]" and that "[t]he auditors expect to complete their work in a few weeks."

368.

Although Geffen Mesher and Hawkins began working on the audit in or around August 2002, Geffen Mesher did not prepare formal audit engagements with Funds I and II until December 2002. Pursuant to the terms of the audit engagements, Geffen Mesher agreed (among other things) to audit "related statements of operations, members' equity and cash

Page 122–THIRD AMENDED COMPLAINT

1 flows" for Funds I and II from each fund's inception through December 31, 2002.

2                                         369.

3       When Geffen Mesher and Hawkins were retained to perform the audit, they had

4 delivered to Berkman the compiled financial statements they prepared for Funds I and II for

5 the year ending December 31, 2001. Those compiled financial statements were dated April

6 18, 2002, and had been given to Berkman by Geffen Mesher and Hawkins for distribution to

7 bcIMC and other fund members.

8                                         370.

9       Based on information learned through Hawkins's work for Berkman while at Arthur

10 Andersen (as alleged above), and based on information Geffen Mesher knew or should have

11 discovered during the course of the compilation reports it prepared for each of the Funds (as

12 alleged above), Geffen Mesher and Hawkins knew or should have known at the outset of the

13 audit engagements that they could not provide reasonable assurances that the financial

14 statements for Funds I and II would be free from material misstatements.

15                                        371.

16      No later than March 2003, Geffen Mesher and Hawkins knew or should have known

17 that Berkman had misused and/or misappropriated assets of Funds I and II, had

18 misrepresented financial information and transactions of those funds, had failed to disclose

19 material information about those funds' operations to their members, and had violated

20 Oregon LLC law and/or the Funds' operating agreements. As alleged above, Geffen

21 Mesher's March 28, 2003, audit notes show that Geffen Mesher and Hawkins were

22 questioning the propriety of numerous transactions relating to Funds I and II. On April 4,

23 2003, Hawkins and Geffen Mesher wrote to Berkman and pointed out various concerns about

24 inappropriate transactions they had discovered.

25                                        372.

26      Geffen Mesher and Hawkins failed to disclose any of the information from its March

Page 123– THIRD AMENDED COMPLAINT

1  28, 2003, audit notes or the April 4 letter to bcIMC, the Advisory Committees, or any other

2  member of Funds I or II, even though bcIMC asked Geffen Mesher and Hawkins for a report

3  on April 8, 2003. Instead, Hawkins and another Geffen Mesher shareholder met privately

4  with Berkman on April 4, 2003, at the Heathman Restaurant in Portland, Oregon. A note on

5  the letter indicates that the letter's contents were discussed.

6  373.

7     On April 29, 2003, Geffen Mesher and Hawkins wrote to Berkman and stated that

8  they were terminating their work on the audits.

9  374.

10  On May 12, 2003, Hawkins wrote bcIMC an e-mail containing the following

11  statements: "I know it has been some time since your inquiry with respect to the status of the

12  audit of [the Funds] for which I apologize. This is to inform you that we are no longer

13  engaged to perform the audit. Please direct any inquiries to Craig. Best regards, Rick."

14  375.

15  Following Hawkins's May 12, 2003, e-mail, on May 27, 2003, a bcIMC

16  representative spoke by telephone with Hawkins. During that phone call, Hawkins made the

17  following statements to bcIMC regarding the reasons for the audit termination: (a) that

18  Berkman had decided to have his tax accountants, rather than Geffen Mesher, perform the

19  audit; and (b) that the audit was terminated because Berkman asked for a qualified opinion,

20  but Geffen Mesher felt it was too late in the process to issue a qualified opinion and wanted

21  to issue an unqualified opinion. These statements were false.

22  376.

23  Hawkins's May 27, 2003, false statements to bcIMC on behalf of Geffen Mesher

24  concealed the information that Hawkins and Geffen Mesher knew about numerous suspect

25  transactions relating to Funds I and II.

26

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

377.

At no time did Hawkins—or anyone else on behalf of Geffen Mesher—take reasonable steps to inform bcIMC about any material errors, or fraud, or illegal acts that had come to their attention. Nor did Hawkins, or anyone on behalf of Geffen Mesher, take reasonable steps to inform bcIMC that the compilation reports that Geffen Mesher prepared for Funds I and II for the period ending December 31, 2001, dated April 18, 2002, and received by bcIMC on or about May 6, 2002, may contain material errors or misstatements.

378.

Geffen Mesher and Hawkins knew or should have known that bcIMC would receive, review, and rely upon financial documents they prepared.

379.

It was reasonably foreseeable to Geffen Mesher and Hawkins that if they failed to perform accounting services in a reasonable manner, bcIMC would suffer harm.

380.

Geffen Mesher and Hawkins failed to exercise the care, skill, diligence, and independence required of accountants with respect to the audit engagements in the following ways:

a. By failing to appropriately investigate and report the findings of their investigation to bcIMC, when they: suspected Berkman was engaging in improper transactions, or illegal acts, or fraud; knew or discovered errors in the financial statements; and knew or became aware of internal control deficiencies;

b. By failing to refer bcIMC to legal counsel when they: suspected that Berkman was engaging in improper transactions, or illegal acts, or fraud; knew or discovered errors in the financial statements; and knew or became aware of internal control deficiencies;

c. By failing to notify bcIMC that the compiled financial statements prepared by Geffen Mesher, addressed to the members and delivered to Berkman for distribution, should

Page 125- THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 not be relied upon;

2     d.    By failing to notify bcIMC that the compiled financial statements prepared by

3 Arthur Andersen while Hawkins was a partner at Arthur Andersen, addressed to the members

4 and delivered to Berkman for distribution, should not be relied upon;

5     e.    By failing to re-issue corrected compiled financial statements to bcIMC after

6 they: suspected that Berkman was engaging in improper transactions, or illegal acts, or

7 fraud; knew or discovered errors in the financial statements; and knew or became aware of

8 internal control deficiencies; and

9     f.    By misrepresenting and failing to inform bcIMC of the true reasons they

10 withdrew from the audit engagements.

11             381.

12 Because of Geffen Mesher and Hawkins's acts and failures, bcIMC sustained

13 damages as shown below.

14             382.

15 Geffen Mesher and Hawkins actively concealed their acts, failures and omissions

16 from bcIMC. None of the acts, failures and omissions set forth in this claim were known by

17 bcIMC, nor could reasonably have been discovered, more than two years before Geffen

18 Mesher signed an agreement tolling the statute of limitations in September 2005.

19             383.

20 Geffen Mesher is directly liable and vicariously liable for the acts, errors, and

21 omissions of Hawkins in connection with the accounting services rendered to bcIMC as

22 third-party beneficiary to the audit engagements between Geffen Mesher and Funds I and II.

23             384.

24 Hawkins is personally liable for negligent or wrongful acts or omissions or

25 misconduct committed by himself or by persons under his direct supervision or control,

26 pursuant to ORS 58.185.

Page 126--THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

## TWENTY-FOURTH CLAIM FOR RELIEF

### (Negligent Misrepresentation—The Funds and Members v. Geffen Mesher and Richard Hawkins)

385.

The Funds and members reallege the preceding allegations.

386.

Geffen Mesher entered into agreements to perform professional accounting and tax services for the benefit of the Funds and members. Geffen Mesher prepared tax returns for the Funds for the year ending 2001, which included providing members with K-1 forms. Geffen Mesher also prepared compilation reports for each of the Funds for the year ending 2001 that were addressed to the Funds' manager and members. Hawkins was directly involved in these services or directly supervised Geffen Mesher personnel performing those services. Geffen Mesher and Hawkins also agreed to perform an audit of Funds I and II in December 2002.

387.

Geffen Mesher and Hawkins were retained by the Funds to prepare financial statements, compilation reports, audits for Funds I and II, and perform other accounting services. Geffen Mesher and Hawkins had an obligation to exercise independent judgment or discretion in performing their work to further the Funds' economic interests.

388.

Based on standards set forth in AICPA Statements on Accounting and Review Services, the AICPA Code of Professional Conduct, the AICPA Bylaws, and the AICPA Statements on Quality Control Standards (and other accounting standards), Geffen Mesher and/or Hawkins undertook an obligation to exercise independent judgment in the following ways:

    a.    Classify assets appropriately.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1        b.    Decide if further investigation is necessary.

2        c.    Decide whether they were given sufficient corroborating evidence.

3        d.    Decide whether errors, fraud, or illegal acts had occurred.

4        e.    Determine whether the financial statements fairly stated the Funds' financial
5  condition.

6        f.    Decide whether disclosures to the financial statements were required.

7        g.    Decide whether to inform a level of management above Berkman regarding
8  the errors, fraud, or illegal acts.

9        h.    Determine whether the manager was in compliance with the organizational
10  documents.

11        i.    Determine whether the manager was a reliable source of information regarding
12  the classification of and nature of the transactions.

13        j.    Determine whether OCBOA or GAAP was appropriate.

14        l.    Determine whether omitting disclosures were designed to mislead the user of
15  the financial statement.

16        m.    Determine the adequacy of internal controls.

17        n.    Determine the nature and scope of audit test procedures to perform.

18                     389.

19     By undertaking the responsibilities outlined in the preceding paragraph, Geffen

20  Mesher and Hawkins undertook an obligation to disclose misconduct they discovered,

21  including Berkman's tortious conduct, to the Funds.

22                     390.

23     Preparation of compilation reports, financial statements, and audits by Geffen Mesher

24  and/or Hawkins furthered the economic interest of the Funds in the following ways:

25        a.    They were hired to describe the Fund operations and state the assets of the
26  Funds;

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1       b.     They were hired to provide critical information to the members about the

2  management of the Funds' assets; and

3       c.     They were hired to determine whether the financial statements contained any

4  material misstatements or omissions, and to actively search for evidence of misconduct

5  (including fraud).

6                   391.

7      Geffen Mesher and Hawkins entered into a special relationship with the Funds

8  wherein they had an obligation to exercise independent judgment in furtherance of the

9  economic interests of the Funds.  Geffen Mesher and Hawkins knew or should have known

10  that the Funds were intended beneficiaries of their professional services and that they would

11  be relying upon their professional services.

12                 392.

13      Geffen Mesher and Hawkins acted negligently and misrepresented to the Funds and

14  members the true state of the Funds' financial affairs as alleged above.  They also failed to

15  disclose Berkman's tortious conduct, even though Geffen Mesher and Hawkins knew of that

16  tortious conduct.

17                 393.

18      It was reasonably foreseeable to Geffen Mesher and Hawkins that if they failed to

19  represent the true condition of the Funds' financial affairs, the Funds and members would

20  suffer harm.

21                 394.

22      As a direct result of Geffen Mesher's and Hawkins's acts and failures, the Funds and

23  Individual Investors sustained the damages as stated below.

24                 395.

25      Hawkins is personally liable for negligent or wrongful acts or omissions or

26  misconduct committed by himself or by persons under his direct supervision or control,

Page 129– THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1    pursuant to ORS 58.185.

2                        **TWENTY-FIFTH CLAIM FOR RELIEF**

3                 (Negligent Misrepresentation—bcIMC v. Geffen Mesher
                                  and Richard Hawkins)
4

5                                          396.

6            bcIMC realleges the preceding allegations.

7                                          397.

8            As alleged above, on or before August 6, 2002, Geffen Mesher and Hawkins agreed

9    to perform an audit of Funds I and II.

10                                         398.

11           Prior to undertaking the audit review of Funds I and II, Geffen Mesher entered into

12   agreements to perform professional accounting and tax services for the benefit of the Funds

13   and the members (including bcIMC). Geffen Mesher prepared tax returns for the Funds for

     the year ending 2001, which included providing bcIMC with K-1 forms. Geffen Mesher also
14
     prepared compilation reports for each of the Funds for the year ending 2001 that were
15
     addressed to the Funds' manager and to the members. Hawkins was directly involved in
16
     these services or directly supervised Geffen Mesher personnel performing those services.
17
                                           399.
18
             Based on standards set forth in AICPA Statements on Accounting and Review
19
     Services, the AICPA Code of Professional Conduct, the AICPA Bylaws, and the AICPA
20
     Statements on Quality Control Standards (and other accounting standards), Geffen Mesher
21
     and/or Hawkins undertook an obligation to exercise independent judgment on behalf of
22
     bcIMC in the following ways:
23
             a.     Classify assets.
24
             b.     Decide if further investigation is necessary.
25
             c.     Decide whether they were given sufficient corroborating evidence.
26

Page 130–THIRD AMENDED COMPLAINT

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1     d.     Decide whether errors, fraud, or illegal acts had occurred.

2     e.     Determine whether the Funds' financial statements fairly stated the Funds'

3  financial condition.

4     f.     Decide whether to inform bcIMC regarding errors, fraud, or illegal acts.

5     g.     Decide whether to determine whether the manager was in compliance with the

6  organizational documents.

7     h.     Determine whether the manager was a reliable source of information regarding

8  the classification of and nature of the transactions.

9                                    400.

10     By undertaking the responsibilities to prepare compiled financial statements and

11  perform the audit promised to bcIMC, Geffen Mesher and Hawkins undertook an obligation

12  to disclose misconduct they discovered, including Berkman's tortious conduct, to bcIMC.

13                                   401.

14     Preparation of compilation reports, financial statements and audit reports by Geffen

15  Mesher and/or Hawkins furthered the economic interest of bcIMC by enabling bcIMC to

16  learn critical information about the management of bcIMC's investments in the Funds from a

17  supposedly independent party in a position to perform an appropriate investigation.

18

19                                   402.

20     With respect to the audit engagements, Geffen Mesher and Hawkins knew that

21  bcIMC was the primary intended beneficiary of their professional services and that bcIMC

22  would be relying upon their professionalism and independence from Berkman.

23                                   403.

24     Geffen Mesher and Hawkins acted negligently and misrepresented to bcIMC the true

25  state of the Funds' financial affairs in the following ways:

26     a.     By failing to appropriately investigate and report the findings of their

Page 131–THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  investigation to bcIMC, when they: suspected Berkman was engaging in improper

2  transactions, or illegal acts, or fraud; knew or discovered errors in the financial statements;

3  and knew or became aware of internal control deficiencies;

4      b.   By failing to refer bcIMC to legal counsel when they: suspected that Berkman

5  was engaging in improper transactions, or illegal acts, or fraud, or other tortious conduct;

6  knew or discovered errors in the financial statements; and knew or became aware of internal

7  control deficiencies;

8      c.   By failing to notify bcIMC that the compiled financial statements prepared by

9  Geffen Mesher and Arthur Andersen, addressed to the members and delivered to Berkman

10 for distribution, should not be relied upon;

11     d.   By failing to re-issue corrected compiled financial statements to bcIMC after

12 they: suspected that Berkman was engaging in improper transactions, or illegal acts, or

13 fraud; knew or discovered errors in the financial statements; and knew or became aware of

14 internal control deficiencies;

15     e.   By misrepresenting the reasons they withdrew from the audit engagement and

16 failing to inform bcIMC of the true reasons for the withdrawal; and

17     f.   By misrepresenting that Geffen Mesher and Hawkins were independent of

18 Berkman, and by failing to disclose that Geffen Mesher and Hawkins lacked any such

19 independence.

20                              404.

21     It was reasonably foreseeable to Geffen Mesher and Hawkins that if they failed to

22 represent the true condition of the Funds' financial affairs, bcIMC would suffer harm.

23                              405.

24     Had Geffen Mesher and Hawkins acted in a non-negligent manner bcIMC, acting

25 individually or through the Funds, would have taken steps to reduce and/or eliminate

26 damages caused by Berkman's improper activities, including replacing Berkman as the

Page 132–THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1  manager and/or liquidating investments.

2                                                406.

3       None of the acts, failures and omissions set forth in this claim were known by bcIMC,

4  nor could reasonably have been discovered, more than two years before Geffen Mesher

5  signed an agreement tolling the statute of limitations in September 2005.

6                                                407.

7       Because of Geffen Mesher and Hawkins's acts, bcIMC sustained damages as

8  described below.

9                                                408.

10      Geffen Mesher is directly liable and vicariously liable for the acts, errors and

11  omissions of Hawkins in connection with the accounting services rendered to bcIMC.

12                                               409.

13      Hawkins is personally liable for negligent or wrongful acts or omissions or

14  misconduct committed by himself or by persons under his direct supervision or control,

15  pursuant to ORS 58.185.

16                    **TWENTY-SIXTH CLAIM FOR RELIEF**

17            (Common Law Fraud—The Funds and members v. Geffen
18                            Mesher and Hawkins)

19                                               410.

20      The Funds and members reallege the preceding allegations.

21                                               411.

22      Based on standards set forth in AICPA Statements on Accounting and Review

23  Services, the AICPA Code of Professional Conduct, the AICPA Bylaws, and the AICPA

24  Statements on Quality Control Standards (and other accounting standards), Geffen Mesher

25  and Hawkins undertook an obligation to disclose misconduct they discovered, including

26  Berkman's tortious conduct, to the Funds and members.

Page 133--THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1

412.

2      Despite their obligation to disclose misconduct they discovered, Geffen Mesher and

3 Hawkins hid information that would have revealed the true nature of how the Funds' money

4 was being utilized and the Funds' true financial condition—as described more fully in the

5 preceding claims for relief. Geffen Mesher and Hawkins knew that the information they kept

6 hidden would have revealed Berkman's misconduct and their role in hiding that misconduct.

7

413.

8      Geffen Mesher and Hawkins knew that the Funds and members were relying on them

9 to disclose misconduct they discovered, including Berkman's tortious conduct. Geffen

10 Mesher and Hawkins intended for the Funds and members to rely on them to disclose

11 misconduct, and knew that the Funds and members would suffer damage if Geffen Mesher

12 and Hawkins did not reveal Berkman's tortious conduct.

13

414.

14      In light of Geffen Mesher's general reputation in the Pacific Northwest and its status

15 as a public accounting firm, and Hawkins's status as partner of Geffen Mesher and a CPA,

16 the Funds and members had a right to rely on, and did rely on, the fact that Geffen Mesher

17 and Hawkins would fulfill their obligation to disclose misconduct they discovered.

18

415.

19      But Geffen Mesher and Hawkins did not disclose Berkman's misconduct. Instead,

20 they actively concealed that misconduct as well as their role in hiding that misconduct. The

21 Funds and members did not know that Geffen Mesher and Hawkins were hiding Berkman's

22 misconduct.

23

416.

24      As a direct result of the acts of Geffen Mesher and Hawkins, the Funds and members

25 sustained the damages as stated below.

26

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

## TWENTY-SEVENTH CLAIM FOR RELIEF

### (Common Law Fraud—bcIMC v. Geffen Mesher and Richard Hawkins)

417.

bcIMC realleges the preceding allegations.

418.

On May 27, 2003, Hawkins and Geffen Mesher, through Hawkins, made the following statements by telephone to a bcIMC representative regarding the reasons for the audit termination: (a) that Berkman had decided to have his tax accountants perform the audit; and (b) that the audit was terminated because Berkman asked for a qualified opinion, but Geffen Mesher felt it was too late in the process to issue a qualified opinion and wanted to issue an unqualified opinion.

419.

The statements referenced above were false. Geffen Mesher and Hawkins did not resign because Berkman "decided to have his tax accountants perform the audit." Geffen Mesher and Hawkins *were* Berkman's tax accountants. Furthermore, it was not "too late" in the process for Geffen Mesher to issue a qualified opinion. Geffen Mesher's audit engagement letters specifically state that Geffen Mesher would be issuing a qualified, rather than unqualified, audit opinion to Funds I and II.

420.

In truth, Geffen Mesher, Hawkins, and Berkman terminated the audit review because they decided that they did not want to issue an audit opinion or otherwise expose the material errors, or fraud, or illegal acts of Berkman that had been discovered or confirmed during the audit review.

421.

Geffen Mesher and Hawkins made these statements to bcIMC intentionally with

Page 135–THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 | knowledge that they were false. By these statements, Geffen Mesher and Hawkins intended

2 | to deflect attention from the audit withdrawal and conceal the true circumstances surrounding

3 | the termination of the audit engagements.

4 | 422.

5 | Geffen Mesher and Hawkins's false statements were material because they concealed

6 | and delayed bcIMC's discovery of the material errors, or fraud, or illegal acts that should

7 | have been disclosed to bcIMC in connection with the audit.

8 | 423.

9 | In light of Geffen Mesher's general reputation in the Pacific Northwest and its status

10 | as a public accounting firm, and Hawkins's status as partner of Geffen Mesher and a certified

11 | public accountant, bcIMC had a right to rely on, and did rely on, all representations that

12 | Geffen Mesher and Hawkins made in connection with their dealings with the Funds.

13 | 424.

14 | But for the fraud and concealment by Geffen Mesher and Hawkins, bcIMC,

15 | individually or through the Funds, would have taken steps to reduce or eliminate the losses

16 | and misappropriations caused by Berkman and his affiliated companies by removing

17 | Berkman as manager of the Funds and taking other responsive action. bcIMC's suffered

18 | damage as discussed below.

19 | 425.

20 | None of the misrepresentations set forth in this claim were known by bcIMC, nor

21 | could reasonably have been discovered, more than two years before Geffen Mesher and

22 | Hawkins signed an agreement tolling the statute of limitations in September 2005.

23 | **DAMAGES AS TO ALL CLAIMS**

24 | 426.

25 | As a direct result of the acts, failures and omissions of the defendants alleged above,

26 | which are incorporated herein by reference, the Funds and members sustained damages as

Page 136 – THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

follows:

a.     Return of money Berkman improperly received from the Funds, including but not limited to the following:

     i.      Preview Systems investments—$8,954,779;

     ii.     Management fees paid to Berkman—$5,053,184;

     iii.    Membership units issued to repay Berkman/CB&A debt—$1,375,000

     iv.

     v.

b.     Damages caused by Arthur Andersen and/or Geffen Mesher's fault and/or joint and several liability, including but not limited to the following investments made in companies which were made to benefit Berkman rather than the Funds:

     i.      PuriPonics—$5,601,125;

     ii.     WellPartner—$14,029,192;

     iii.    EVI—$4,746,661;

     iv.    SuperTracks—$6,048,700;

     v.     APN—$1,443,462.

c.     Damages caused by malpractice of Arthur Andersen, Geffen Mesher, and/or Hawkins (CPAs) which are quantified by losses resulting from all improper actions of Berkman subsequent to the CPA's failure to make required disclosures of Berkman's improper conduct, which disclosures would have caused investors to take steps to limit Berkman's authority and/or to prevent Berkman to continue to use Fund assets for his own purpose rather than for Fund purposes. Had the CPAs complied with the standard of care, the Funds would have avoided some or all damages caused by Berkman's misconduct in an amount to be determined at trial.

d.     Damages caused by Berkman's reinvestment of Catheter distribution into investments in which Berkman received an improper personal benefit (WellPartner)—

Page 137–THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 | $3,782,757.

2     e.     Damages caused by the lost opportunity the Funds suffered as a result of the

3 | Funds not having sufficient funds to make follow on investments in GeoTrust to protect their

4 | position—at least $17,000,000;

5     f.     Administrative fees (including legal, accounting, and management

6 | professional services) in excess of ordinary and customary expenses that were a result of

7 | Berkman, Arthur Andersen, Geffen Mesher, and Hawkins's failure to properly keep books

8 | and records.

9     g.     For Fund assets transferred from the plaintiff Funds to Berkman controlled

10 | entities known as Fund IV and V in the approximate amount of $3,476,517;

11     h.     For lost profits on all amounts of principal the Funds could have and should

12 | have been able to earn by prudent investments and/or interest, from the dates of the

13 | imprudent investments until present in an amount to be determined at trial;

14     i.     For fees paid for Arthur Andersen's accounting services in the approximate

15 | amount of $83,892;

16     j.     For fees paid for Geffen Mesher's accounting services in the approximate

17 | amount of $20,656;

18     k.     Equitable relief in the form of a Constructive Trust over all assets Berkman

19 | owns or controls, including but not limited to bank accounts, securities, and any and all real

20 | property owned by Berkman to the extent that they were obtained with money belonging to

21 | plaintiffs;

22     l.     Because the amount of damages is readily quantifiable and ascertainable as of

23 | the time of the loss, the Funds and members are entitled to prejudgment interest at the rate of

24 | nine percent (9%) per annum;

25     m.     Reasonable attorney fees in connection with the Berkman and Geffen Mesher

26 | agreements.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for a judgment in their favor and against defendants jointly and severally as follows:

a.    Return of money Berkman improperly received from the Funds, including but not limited to the following:

      i.    Preview Systems investments—$8,954,779;

      ii.    Management fees paid to Berkman— $5,053,184;

      iii.    Membership units issued to repay Berkman/CB&A debt—$1,375,000.

b.    Damages caused by Arthur Andersen and/or Geffen Mesher's fault and/or joint and several liability, including but not limited to the following investments made in portfolio companies which were made to benefit Berkman rather than the Funds:

      i.    PuriPonics—$5,601,125;

      ii.    WellPartner—$14,029,192;

      iii.    EVI—$4,746,661;

      iv.    SuperTracks—$6,048,700;

      v.    APN—$1,443,462.

c.    Damages caused by malpractice of Arthur Andersen, Geffen Mesher, and/or Hawkins (CPAs) which are quantified by losses resulting from all improper actions of Berkman subsequent to the CPA's failure to make required disclosures of Berkman's improper conduct, which disclosures would have caused investors to take steps to limit Berkman's authority and/or to prevent Berkman to continue to use Fund assets for his own purpose rather than for Fund purposes. Had the CPAs complied with the standard of care, the Funds would have avoided some or all damages caused by Berkman's misconduct in an amount to be determined at trial.

d.    Damages caused by Berkman's reinvestment of Catheter distribution into investments in which Berkman received an improper personal benefit (WellPartner)—

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1 | $3,782,757.

2 |     e.      Damages caused by the lost opportunity the Funds suffered as a result of the
3 | Funds not having sufficient funds to make follow on investments in GeoTrust to protect their
4 | position—at least $17 million;

5 |     f.      Administrative fees (including legal, accounting, and management
6 | professional services) in excess of ordinary and customary expenses that were a result of
7 | Berkman, Arthur Andersen, Geffen Mesher, and Hawkins's failure to properly keep books
8 | and records.

9 |     g.      For Fund assets transferred from the plaintiff Funds to Berkman controlled
10 | entities known as Fund IV and V in the approximate amount of $3,476,517;

11 |     h.      For lost profits on all amounts of principal the Funds could have and should
12 | have been able to earn by prudent investments and/or interest, from the dates of the
13 | imprudent investments until present in an amount to be determined at trial;

14 |     i.      For fees paid for Arthur Andersen's accounting services in the approximate
15 | amount of $83,892;

16 |     j.      For fees paid for Geffen Mesher's accounting services in the approximate
17 | amount of $20,656;

18 |     k.      Equitable relief in the form of a Constructive Trust over all assets Berkman
19 | owns or controls, including but not limited to bank accounts, securities, and any and all real
20 | property owned by Berkman to the extent that they were obtained with money belonging to
21 | plaintiffs;

22 |     l.      Because the amount of damages is readily quantifiable and ascertainable as of
23 | the time of the loss, the Funds and members are entitled to prejudgment interest at the rate of
24 | nine percent (9%) per annum;

25 |     m.      Reasonable attorney fees in connection with the Berkman and Geffen Mesher
26 | agreements; and

Page 140–THIRD AMENDED COMPLAINT

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

1      n.     Such other and further relief as the Court deems just and equitable.

2         With respect to their claims for relief, plaintiffs presently seek recovery only for the

3 combined proportionate, active, and primary fault (whether several or joint and several) of

4 defendants named in this lawsuit.

5         DATED this __7th__ day of December, 2006.

6                                BULLIVANT HOUSER BAILEY PC

7

8                                By _____
                                   Stephen F. English, OSB #73084

9                                   E-mail: steve.english@bullivant.com
                                 Robert B. Miller, OSB #96006

10                               E-mail: bob.miller@bullivant.com
                               Thomas L. Hutchinson, OSB #99489

11                                E-mail: tom.hutchinson@bullivant.com

12                        Attorneys for Plaintiffs Synectic Ventures I, LLC,
                        Synectic Ventures II, LLC, Synectic Ventures III,

13                        LLC, and certain LLC members

14                      PERKINS COIE LLP

15                      

16                      By _____
                                  Paul Fortino, OSB #83201

17                                  E-mail: pfortino@perkinscoie.com
                                 Erick J. Haynie, OSB #98248

18                                E-mail: ehaynie@perkinscoie.com

19                      Attorneys for Plaintiffs British Columbia
                      Investment Management Corporation (bcIMC);

20 10290072.3           Levrick Limited; and 3536297 Canada, Inc.

21

22

23

24

25

26

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

## CERTIFICATE OF SERVICE

1

2     I, Stephen F. English, certify that on December 4, 2006, I served the foregoing THIRD
AMENDED COMPLAINT on the attorney(s) of record herein, by mailing to said attorney(s) a
3 true copy thereof, contained in a sealed envelope, with postage prepaid, addressed to said
attorney(s) last known address as shown below, and deposited in the post office at Portland,
4 Oregon.

5
Paul B. George                       Stan G. Roman
6 Foster Pepper Tooze LLP        Krieg, Keller, Sloan, Reilley & Roman
601 SW 2nd Ave., Ste. 1800      114 Sansome Street, 4th Fl.
7 Portland, OR 97204-3171        San Francisco, CA 94104

8 Attorneys for Defendants:        Barnes H. Ellis
Craig Berkman                     Stoel Rives LLP
9 Synectic Ventures Management I, Inc.    900 SW Fifth Ave., Ste. 2600
Synectic Ventures Management II, Inc.    Portland, OR 97204
10 Synectic Ventures Management III, Inc.
Synectic Asset Management, Inc.      Attorneys for Defendants:
11                                Arthur Andersen, LLP
12                                Arthur Andersen Does 1-5

13 Frank H. Lagesen            Paul T. Fortino
Cosgrave Vergeer Kester LLP     Perkins Coie LLP
14 805 SW Broadway, 8th Fl.       1120 NW Couch, 10th Fl.
Portland, OR 97205          Portland, OR 97209-4128
15
Stephen J. Tully             Attorneys for Plaintiffs:
16 Garrett & Tully, P.C.         British Columbia Investment Management
4165 East Thousand Oaks Blvd., Ste. 201    Corporation (bcIMC)
17 Westlake Village, CA 91362-3839   Levrick Limited
                               3536297 Canada, Inc.
18
Attorneys for Defendant:
19 Geffen Mesher & Company, P.C.

20 William F. Martson, Jr.
Tonkon Torp LLP
21 888 SW 5th Ave., Ste. 1600
Portland, OR 97204
22
Attorneys for Defendant:
23 Richard L. Hawkins

24 By /s/ Stephen F. English, OSB #73084   96006

25

26      Attorneys for Plaintiffs

Page 1–   CERTIFICATE OF SERVICE

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

DOC No. 319594

2353-21-544-710

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CAMICO MUTUAL INSURANCE COMPANY,<br>a California corporation, individually and<br>as subrogee of Richard L. Hawkins and<br>RICHARD L. HAWKINS, individually,<br><br>        Plaintiffs,<br><br>  v.<br><br>ARTHUR ANDERSEN, LLP, an Illinois limited<br>liability partnership,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)  Case No.:<br>)<br>)<br>)  **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>) |

## LOCAL RULE 3.2 NOTIFICATION OF AFFILIATES

Now comes Plaintiff, CAMICO Mutual Insurance Company ("CAMICO"), and pursuant

to L.R. 3.2, states as follows:

CAMICO has no publicly held affiliates.

Dated: December 5, 2007

                                  CAMICO Mutual Insurance Company and
                                  Richard L. Hawkins

                                  By: _____
                                    One of their Attorneys

D.J. Sartorio
Donald E. Elder
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Dr.
Sears Tower, 22nd Floor
Chicago, Illinois 60606
(312) 627-4000
www.tsmp.com