IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMICO MUTUAL INSURANCE COMPANY, ) <br> a California corporation, individually and as ) <br> subrogee of Richard L. Hawkins and RICHARD ) <br> L. HAWKINS, individually, ) <br>         Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ARTHUR ANDERSEN, LLP, an Illinois limited ) <br> liability partnership, ) <br>         Defendant. ) | Civil Action, <br> File No. 07 C 6861 <br><br><br><br><br> Hon. Ronald A. Guzman |

## MOTION OF ARTHUR ANDERSEN LLP TO COMPEL ARBITRATION AND FOR STAY OF ACTION PENDING ARBITRATION

Defendant, Arthur Andersen LLP ("Andersen"), respectfully moves this Court for an order compelling arbitration of this dispute and staying the proceeding until the arbitration has been concluded.[1]

This motion is made upon the following grounds:

1.   On December 5, 2007, plaintiffs Richard Hawkins (hereinafter "Hawkins") and Camico Mutual Insurance Company (hereinafter "Camico") commenced this action by filing their Complaint for Declaratory and Other Relief (hereinafter "Pls.' Compl.").

2.   In the complaint, Hawkins asserts that he was a partner of Andersen until 2001. Pls.' Compl. 10, 13.

3.   Hawkins alleges that when he left Andersen in 2001, he entered into two agreements with Andersen. The first agreement was embodied in a letter dated July 26, 2001, see Exhibit 1 to Pls.' Compl., and the second agreement (actually signed by Hawkins) was a

---

[1] Arbitration would be appropriate under either the Federal Arbitration Act or the Illinois Arbitration Act.

Determination Statement, see Exhibit 2 to Pls.' Compl. Hawkins collectively calls these two agreements the Termination Agreements. See Pls.' Compl. ¶ 13-14.[2]

4.  The Determination specifically states that Hawkins is retiring as a partner of Andersen and that the determination of his interest in Andersen is correctly set forth in the Determination. See Exhibit 2 to Pls.' Compl. The Determination also provides "that Arthur Andersen LLP will defend any claim against [Hawkins] involving [his] activities while a Partner on its behalf undertaken in accordance with [Hawkins'] fiduciary responsibilities thereto." *Id.* As part and parcel of the Determination agreement, Hawkins agreed to "comply with continuing obligations under Arthur Andersen LLP's organizational document(s), as presently in effect, binding on former Partners and Directors…." *Id.*

5.  Camico alleges that, through subrogation, it has succeeded to Hawkins' rights to enforce the terms and conditions of the Termination Agreements. Pls.' Complaint ¶ 37.

6.  Plaintiffs' complaint raises five claims for relief: First, plaintiffs jointly seek a declaratory judgment that, under the Termination Agreements, Andersen is obligated to defend and indemnify Hawkins against allegations of professional negligence allegedly committed while he was a partner at Arthur Andersen. Pls.' Compl. ¶ 38-43. Second, plaintiffs claim Andersen has breached its contractual obligation to defend Hawkins under the Termination Agreements. Pls.' Compl. ¶ 44-51. Third, Camico claims that it is subrogated to Hawkins' rights against Andersen under the Termination Agreements and seeks reimbursement for amounts that it has paid. Pls.' Compl. ¶ 52-59. Fourth, Camico seeks reimbursement based on subrogation to Hawkins' claims under the Termination Agreements. Pls.' Compl. ¶ 60-66. Finally, Camico individually seeks equitable contribution to Hawkins' defense costs based on its claim that

---

[2] The July 26 letter references the Determination and describes what the Determination provides.

Andersen has a duty to defend Hawkins due to the Termination Agreements. Pls.' Compl. ¶ 67-73.

7. All of plaintiffs' claims for relief are based upon the obligation to indemnify for legal costs that Andersen allegedly undertook for the benefit of Hawkins at the time that Hawkins left Andersen as a partner.

8. As an Andersen partner, Hawkins was a party to the Andersen partnership agreement. The partnership agreement is a confidential document and governs how Andersen is organized and governs its management structure. It lays out rules governing the relationships among partners to the agreement. The partnership agreement also lays out the terms of a partner's retirement or departure from the firm in a number of provisions.

9. Article 39 of the Andersen Partnership Agreement is entitled "Arbitration". Article 39 provides:

> **Any and all disputes which cannot be settled amicably, including any ancillary claims of any partner, arising out of or in connection with this agreement (including the validity, scope and enforceability of this arbitration provision) shall be finally settled by arbitration, conducted by a single arbitrator in Chicago, Illinois. The proceedings shall be conducted pursuant to the then-existing Commercial Arbitration Rules of the American Arbitration Association. If the parties to the dispute fail to agree on the selection of an arbitrator within thirty (30) days of the request for arbitration, any party may apply to the American Arbitration Association to make the appointment. The parties hereby express their wish that the decision of the arbitrator be rendered as promptly as possible.**
>
> **Each partner (or other person entitled to payments under Article 19) specifically agrees to renounce all recourse to litigation to the extent not inconsistent with applicable law.**

10. The Arbitration provision of the Andersen Partnership Agreement is exceedingly broad. It specifically provides that any dispute regarding whether the arbitration clause requires a specific matter to be arbitrated is an issue for the arbitrator, and not for the Court. See

Arbitration Clause ¶ 6 *supra* (any issues regarding the "validity, scope and enforceability of this arbitration provision) shall be finally settled by arbitration"). The arbitration clause requires arbitration of all disputes relating to a person's status as partner, including any ancillary claims. When there is a broad arbitration clause such as this clause, all issues about the validity, scope, and enforceability of the clause are for the arbitrator to decide. *See Viets v. Arthur Andersen LLP*, 2003 WL 21525062 (S.D.Ind. 2003), *citing Air Line Pilots Ass'n v. Midwest Express Airlines, Inc.*, 279 F.3d 553, 555-56 (7th Cir. 2002) (interpreting this same arbitration clause).

11.   There can be no legitimate dispute regarding the fact that Hawkins was a partner of Andersen and as such agreed to the arbitration of all disputes that arose out of his status as partner or the termination of that status. Nor can there be any legitimate dispute as to the fact that when Hawkins left Andersen, he specifically acknowledged his "continuing obligations under Arthur Andersen LLP's organizational documents . . ." which obviously included the agreement to arbitrate any disputes with the firm. Given these facts, there is no doubt that Hawkins' claims should be ordered to arbitration. *See Viets*, 2003 WL 21525062 (holding that a former partner of Andersen was required to arbitrate a dispute, *inter alia*, about retirement benefits because he had signed partnership agreement and had agreed to abide by continuing obligations).

12.   As a subrogee to Hawkins' rights, Camico stands in the shoes of Hawkins. If, as shown above, Hawkins must arbitrate this dispute, then so must Camico. *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (holding subrogee stands in shoes of subroger and must arbitrate pursuant to agreement signed by subroger); *see also Westchester Fire Ins. Co. v. General Star Indem. Co.*, 183 F.3d 578, 583 (7th Cir. 1999) (holding subrogee stands in shoes of subrogor and is bound by subrogor's agreement).

13. As all five claims raised in Plaintiffs' Complaint are based on rights arising from Hawkins' former partnership with Andersen, then all of Hawkins' claims and Camico's claims are subject to the arbitration clause.

This Court should order arbitration of this dispute and stay the action pending the arbitration.

Dated March 5, 2008.                    Respectfully submitted,


                                        s/ Stanley J. Parzen
                                        Stanley J. Parzen
                                        Mayer Brown LLP
                                        71 South Wacker Drive
                                        Chicago, Illinois 60606-8747
                                        (312) 701-7326
                                        Attorney for Arthur Andersen, LLP