DOC No. 429262                                                    2353-21-544-710

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CAMICO MUTUAL INSURANCE COMPANY, | ) | |
| a California corporation, individually and | ) | |
| as subrogee of Richard L. Hawkins and | ) | |
| RICHARD L. HAWKINS, individually, | ) | |
| | ) | Case No.: 07 C 6861 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Hon. Ronald A. Guzman |
| | ) | |
| ARTHUR ANDERSEN, LLP, an Illinois limited | ) | |
| liability partnership, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**NOTICE OF FILING**

F I L E D

MAR 3 1 2008 JH
Mar 31 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

To:    Stanley J. Parzen -- sparzen@mayerbrownrowe.com
Mayer Brown, LLP
71 South Wacker Drive
Chicago, Illinois  60606-8747
(312) 701-7326

**PLEASE TAKE NOTICE** that on the **31st** day of **March 2008**, there was filed with the United States District Court for the Northern District of Illinois, Eastern Division, Chicago, Illinois: **Plaintiff's Brief in Opposition to Arthur Andersen's Motion to Compel Arbitration and for Stay of Action Pending Arbitration**, a copy of which is attached hereto and served upon you

Tressler, Soderstrom, Maloney & Priess, LLP

By: _____
One of the Attorneys for
National Casualty Company

D.J. Sartorio
Donald E. Elder
Anthony N. Balice
Tressler, Soderstrom, Maloney & Priess, LLP
233 South Wacker Dr.
Sears Tower, 22nd Floor
Chicago, Illinois 60606
(312) 627-4000

## PROOF OF SERVICE

The undersigned, being first duly sworn on oath, deposes and states that she served the foregoing Notice of Filing and the document(s) referred to therein by mailing a copy(ies) to the attorney(s) at their address(es) shown above and deposited the same in the U.S. Mail at 233 South Wacker Drive, Chicago, Illinois on this 31st day of March 2008.

SUBSCRIBED AND SWORN to before
me this 31st day of March 2008.

Notary Public

CHICAGO1-#429262-v1-not_fil.DOC

Official Seal
Debra A Thorne
Notary Public State of Illinois
My Commission Expires 04/09/2010

2

DOC No. 317225                                                              2353-21-544-710

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CAMICO MUTUAL INSURANCE COMPANY,  )
a California corporation, individually and       )
as subrogee of Richard L. Hawkins and          )
RICHARD L. HAWKINS, individually,              )
                                       )   Case No.: 07 C 6861
         Plaintiffs,                                 )
                                       )
        v.                                            )   Hon. Ronald A. Guzman
                                       )
ARTHUR ANDERSEN, LLP, an Illinois limited       )
liability partnership,                                 )
                                       )
         Defendant.                                   )

**PLAINTIFFS' BRIEF IN OPPOSITION TO ARTHUR ANDERSEN'S MOTION TO
COMPEL ARBITRATION AND FOR STAY OF ACTION PENDING ARBITRATION**

Plaintiffs, CAMICO Mutual Insurance Company ("CAMICO"), a California corporation, individually and as subrogee of Richard L. Hawkins, and Richard L. Hawkins ("Mr. Hawkins"), an individual, (CAMICO and Hawkins shall collectively be referred to herein as "Plaintiffs"), respond to Defendant Arthur Andersen, LLP's ("AA") Motion to Compel Arbitration and for Stay of Action Pending Arbitration as follows:

**I.      INTRODUCTION**

In seeking to compel Mr. Hawkins and CAMICO, a non-signatory to any agreement with AA, to arbitrate their claims, AA ignores one critical fact, namely the pending dispute centers on an agreement entirely distinct from AA's Partnership Agreement. At issue here are AA's duties to defend and indemnify Hawkins under a Termination Agreement, a separate contract which: was negotiated and executed at the time of Mr. Hawkins' departure from AA; delineates unique contractual obligations; and does not contain any requirement that the parties arbitrate their

disputes. In its attempt to deprive Plaintiffs of their chosen forum, AA overreaches in its characterization of Plaintiffs' claims and the scope and effect of the Partnership Agreement, arguing the that Partnership Agreement requires that "any dispute" arising from Hawkins' "former partnership" must be arbitrated. (See, AA's Motion, pg. 4). Nothing in either the Termination Agreement or the Partnership Agreement's arbitration clause (the only portion of the Partnership Agreement cited by AA) [1] supports AA's liberal construction. Indeed, while this Court need look no further than the Termination Agreement itself as clear evidence of the parties' intent not to arbitrate disputes, perhaps the most telling indicator of the parties' intent is the limited scope of the Partnership Agreement's arbitration provision, which expressly limits arbitration to matter arising out of the *Partnership Agreement*. As such, AA's attempt to "bootstrap" Mr. Hawkins into arbitrating a dispute undoubtedly arising out of the Termination Agreement should be denied.

AA additionally seeks the unprecedented relief of compelling CAMICO, a non-signatory to either agreement, to arbitrate its own claims against AA. Unlike AA, CAMICO has honored its contractual obligations to Mr. Hawkins, and has paid costs and expenses associated with Mr. Hawkins' defense of the Synectic Action. CAMICO now seeks a recovery in its own right from AA. "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986). Insofar as CAMICO is now pursuing claims in its own right and has not agreed to submit its claims against AA to arbitration, it should not be compelled to arbitrate under any circumstances.

---

[1] Despite its liberal construction of the Partnership Agreement, AA fails to attach a copy of the very document upon which its motion is entirely founded. Thus, in addition to failing on the merits, AA's motion should also be denied for failing to establish the proper evidentiary record. See, Section III (B), pg. 9.

The dispute pending before this Court relates solely to the Termination Agreement, an agreement which in no way hinders Mr. Hawkins or CAMICO from proceeding in this forum. AA's motion to compel arbitration and to stay action in this Court should be denied in its entirety and this matter should be permitted to proceed.

## II.   BACKGROUND

### A.   Hawkins Employment and Termination from AA

From 1991 until July, 2001, Arthur Andersen employed Hawkins. For all or a portion of his tenure with AA, Hawkins provided professional and accounting services to certain venture capital investment funds known as Synectic Ventures I, LLC, Synectic Ventures II, LLC and Synectic Ventures III, LLC (herein "Funds").

On or about July 31, 2001, Hawkins terminated his employment with AA. Upon leaving AA, Hawkins entered into the Termination Agreement now at issue and which is comprised of two separate agreements. (See, Compl., Exs. 1 & 2). Under the Termination Agreement AA agreed to defend and indemnify Mr. Hawkins in the event he was named in a lawsuit implicating his activities while a partner at AA. The Termination Agreement delineates rights and obligations independent from the Partnership Agreement and does not contain an arbitration provision. (See, Compl., Exs. 1 & 2). While disputing the extent of its obligations under the Termination Agreement, AA does not dispute that the Termination Agreement is a separate agreement, and that the duties and obligations under the Termination Agreement are independent from those defined under the Partnership Agreement. (See, AA's Motion, pg. 3, ¶¶ 3, 4 and 7).

### B.   The Synectic Action

On December 20, 2005, the Funds and seventy-one investors in the Funds filed an action against defendants Craig L. Berkman, Mr. Hawkins, AA and Geffen, Mesher & Company, P.C. styled Synectic Ventures, LLC, et al. v. Craig L. Berkman, et al., Case No. 0512-13245 (Circuit

3

Court of the State of Oregon, Multnomah County) ("Synectic Action"). (See, Ex. 4, Compl.). The plaintiffs in the Synectic Action alleges accounting malpractice and negligent misrepresentation claims against Mr. Hawkins arising out of professional services rendered to the Funds while Mr. Hawkins was employed at AA and continuing during his tenure with his new employer, Geffen Mesher & Company, P.C.

Mr. Hawkins' tendered the Synectic Action to AA seeking benefits under the Termination Agreement. AA declined Mr. Hawkins' tender under the Termination Agreement. In the face of AA's denial, Mr. Hawkins tendered the Synectic Action to CAMICO. CAMICO accepted Hawkins' tender, subject to a reservation of rights, and is currently defending Hawkins in the Synectic Action. To date, defense costs and litigation expenses for Hawkins in the Synectic Action exceed $494,000.

### C.   The Present Action

On December 5, 2007, Plaintiffs filed their Complaint for Declaratory and Other Relief. Plaintiffs' Complaint pleads five claims for relief, namely: Declaratory Judgment, Breach of Contract, Contractual Subrogation, Equitable Subrogation and Equitable Contribution. Mr. Hawkins seeks relief against AA in connection with the counts for Declaratory Judgment and Breach of Contract counts. CAMICO, in its own right, seeks a declaration of AA's obligations under the Termination Agreement and seeks reimbursement or contribution for amounts paid on behalf of Hawkins that are rightfully owed, in whole or in part, by AA.

### III.   ARGUMENT

#### A.   Mr. Hawkins' Claims Against AA Arise Solely Out of the Termination Agreement, and Thus, are Not Subject to the Arbitration of the Partnership Agreement.

Mr. Hawkins has filed suit against AA claiming that AA breached its duties and obligations under the Termination Agreement by failing to defend him in the Synectic Action.

4

The Termination Agreement is a free-standing contract which delineates rights and obligations independent of the Partnership Agreement.   As is evident from the plain language, the Termination Agreement neither contains an arbitration provision, nor incorporates such a provision. (See, Compl. Exs. 1 & 2).  AA does not dispute such, but rather seeks to compel arbitration by overstating the scope and effect of the Partnership Agreement.  Indeed, AA posits that merely because Mr. Hawkins was an AA partner any "rights arising from Hawkins' former partnership with Andersen" are subject to arbitration. (See, AA's Motion pg. 5). AA's position is untenable insofar as it flatly ignores not only the existence, but also the plain language of the Termination Agreement.  Indeed, one of the very reasons the parties entered into the Termination Agreement at the time of Mr. Hawkins' departure was because the Partnership Agreement did not provide for a former partner's defense and indemnity in the event of a lawsuit. Moreover, AA's position is further belied by the scope of the Partnership Agreement's arbitration provision, which expressly limits arbitrable claims to those arising out of the *Partnership Agreement*. (See, AA's Motion pg. 3, Article 39).   By all objective indicators, the parties never intended Termination Agreement disputes to be subject to arbitration.  It certainly would have been easy to otherwise provide.

In determining whether parties entered into an agreement to arbitrate is a threshold issue for the court to decide. Viets v. Arthur Andersen, LLP, 2003 WL 21525062 *3 (S.D. Ind. 2003) citing, Three Valleys Municipal Water Dist. V. E.F. Hutton & Co., 925 F.2d 1136, 1140-42 (9th Cir. 1991).  "[I]f the parties disagree as to whether they ever entered into any arbitration agreement at all, the court must resolve the dispute." Viets * 3 citing, National R.R. Passenger Corp. v. Boston and Maine Corp., 850 F.2d 756, 761 (D.C. Cir. 1988). Whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920 (1995).

"The parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in the language. An arbitration agreement will not be extended by construction or implication." Salitz v. Kreiss, 198 Ill.2d 1, 761 N.E.2d 724, 731 (Ill. 2000). Here, the parties did not agree to arbitrate disputes in connection with the Termination Agreement. AA's efforts to extend by "construction or implication" the requirement to arbitrate should not be countenanced by this Court.

Directly on point in rejecting AA's attempts to compel arbitration is the Seventh Circuit's decision in Rosenblum v. Travelbyus.com Ltd., et al., 299 F.3d 657 (7th Cir. 2002). There, the parties entered into two, free-standing contracts relating to the acquisition of plaintiff's business ("acquisition contract") and the plaintiff's continued employment after acquisition ("employment contract"). While both contracts were executed on the same day, only the employment contract contained an arbitration provision, which, like the language in the Partnership Agreement, required the parties to arbitrate "any matter in dispute under or relating to *this* Agreement." Rosenblum, 299 F.3d at 664. Plaintiff filed a suit for damages arising out of the breach of the acquisition contract. Defendants moved to compel arbitration under the terms of the employment contract. In addressing the threshold issue as to whether the parties had agreed to arbitrate disputes arising out of the acquisition contract, the Seventh Circuit concluded that the narrow scope of the arbitration provision in the employment contract "did not purport to cover the acquisition issues that form the basis of [plaintiff's] claims here" and was "not susceptible to an interpretation that includes [the present dispute]." Id. The Seventh Circuit also rejected the defendants' contention that the acquisition contract incorporated the arbitration provision of the employment agreement stating that, despite references to the employment contract, no expressed intention to incorporate the language of the employment contract existed. Id. Here, like in Rosenblum, the Termination Agreement neither contains an arbitration provision, nor

6

incorporates such a provision from another agreement. Moreover, the limited scope of the Partnership Agreement's arbitration clause cannot reasonably be read to cover issues unique to the Termination Agreement.

Similarly instructive is the matter of Salsitz v. Kreiss, 198 Ill.2d 2d 1, 761 N.E.2d 724 (Ill. 2001). There, the parties entered into "letters of understanding" and "stock option agreements" in connection with a business investment. Only the stock option agreements contained an arbitration provision, which required arbitration of "any claims or disputes between the parties hereto...." Salsitz, 198 Ill.2d at 4. When the plaintiff's filed suit to recoup certain expenses under the letters of understanding, the defendants move to compel arbitration based on the arbitration clause in the stock option agreements. The trial court granted the defendants' motion, arbitration ensued and the trial court affirmed the arbitration award. Upon review, the Illinois Supreme Court reversed, concluding that the dispute arose solely out of the letter of understanding and did not involve or implicate the stock option agreements. The Illinois Supreme Court reasoned that because the letter of understanding and the stock option agreements were separate agreements, and because only issues relating to the stock option agreements were subject to arbitration, the parties' dispute did not fall within the scope of the arbitration clause. Id. at 16.

In turning a blind eye toward the language of the Termination Agreement, AA argues "[t]here can be no legitimate dispute regarding the fact that Hawkins...agreed to the arbitration of all disputes that arose out of his status as partner or the termination of that status."[2] (See, AA's

---

[2] While AA has failed to characterize, let alone address, Hawkins' claims as "ancillary," the limited authority to address the meaning of "ancillary claims" reveals that Hawkins' claims under the Termination Agreement do not qualify as "ancillary." Ancillary claims are matters that are incidental or related to matters falling within the scope of an agreement. See, A.E. Staley Manufacturing Co. v. Roberston, 236 Ill.App.3d 295, 298, 299 (1st Dist. 1992) (holding that a claim for attorney's fees incurred by defendant in seeking to compel arbitration – to which he ultimately succeeded - were ancillary or related to the arbitrable issues. Thus a determination as to whether plaintiff must pay defendants' attorney's fees was also subject to arbitration).

7

Motion, pg. 4). Such sophistry is used in place of actual analysis, as the plain language of the Termination Agreement and the express limitation on the scope of arbitrability under the Partnership Agreement bring into question the "legitimacy" of AA's own position. AA persists in arguing that Hawkins' acknowledgement of his continuing obligations under the AA organization documents "obviously included the agreement to arbitrate any disputes." (See, AA's Motion, pg. 4). Notably, AA does not argue that the Termination Agreement incorporates the Partnership Agreement's arbitration provision. Rather, it contends that an affirmation to comply with continuing obligations under the Partnership Agreement somehow supercedes all separate terms and obligations of the Termination Agreement. Mr. Hawkins fully intends to comply with his "continuing obligations" under the Partnership Agreement, and should a dispute arise under that agreement Mr. Hawkins would honor his contractual obligation to arbitrate. Here, however, there is no dispute arising under the Partnership Agreement. The dispute arises singularly and wholly under the Termination Agreement, which does not require arbitration.

In support of its position AA relies on Viets v. Arthur Andersen, LLP, 2003 WL 21525062 (S.D. Ind. 2003) and Airline Pilots Associations Int'l, et al. v. Midwest Express Airlines, Inc., 279 F.3d 553 (7th Cir. 2002). AA's reliance on such is misplaced because in both matters the issue in dispute fell squarely within the contract subject to arbitration. Indeed, in Airline Pilots the plaintiffs sought to compel arbitration in connection with a wrongful termination grievance under a collectible bargaining agreement ("CBA"). In reversing the district court, the Seventh Circuit concluded that because the CBA required arbitration of grievances relating to the interpretation or application of the CBA and because plaintiffs' grievance sought such an interpretation, the dispute was arbitrable. Airline Pilots, 279 F.3d at 555. Likewise in Viets, a former AA employee filed suit against AA regarding a dispute over retirement benefits, a matter falling squarely within the AA Partnership Agreement. AA filed a

demand for arbitration and Viets sought to enjoin AA's efforts. In denying Viets' motion in favor

of arbitration, the district court concluded that Viets' "claims for breach of obligations to pay

early retirement benefits and basic retirement benefits arise under the agreement." Id. at *6.

Thus, because the parties' dispute fell squarely within the purview of the Partnership Agreement

- an agreement requiring disputes to be arbitrated - the district court transferred the matter in

favor of arbitration. While the Viets decision is inapposite, the district court's concern about

"bootstrapping" a party to arbitrate a matter it never agreed to is not only pertinent to the present

matter, but would seem to indicate that had Mr. Viets been seeking benefits outside of the

Partnership Agreement the district court would not have dismissed his claim in favor of

arbitration. Viets at *4. Here, unlike Viets and Airline Pilots, Mr. Hawkins' claims arise solely

out of the Termination Agreement, an agreement devoid of an arbitration provision. In this

respect, Viets and Airline Pilots actually support Mr. Hawkins' position. Mr. Hawkins' claims

are not subject to arbitration.

**B.    AA's Motion Should Be Denied For Failing to Establish the Proper Evidentiary Record.**

AA's entire argument is predicated on the scope and effect of the Partnership Agreement,

yet AA has elected not to attach the very document upon which it relies. Instead, AA's cites

only Article 39 of the Partnership Agreement – the purported arbitration provision – arguing that

the breadth of the Partnership Agreement, (e.g., "[Hawkins] agreed to the arbitration of *all*

*disputes* that arose out of his status as partner or the termination of that status," "agreement to

arbitrate *any disputes* with the firm")[3] require the pending dispute to be arbitrated. At a

minimum, AA overstates the content, scope and effect of the Partnership Agreement. Indeed,

insofar as Article 39, by its very language, limits the scope of arbitrable disputes to those matters

---

[3] See, AA's Motion, pg. 4 (emphasis added).

arising out of the Partnership Agreement, the meaning and effect of the quoted text can only be determined through an examination of the unquoted text. See, Dugan v. R.J. Corman Railroad Co., et al., 344 F.3d 662, 670 (7th Cir. 2003) (striking a parties' affidavit that quoted portions of a trust agreement upon which the party relied, but which failed to include the agreement itself, as being unreliable. In so doing, Judge Posner determined that citing selected portions of a document without producing the document itself was "bad practice" insofar as "[t]he meaning of quoted phrases often depends critically on the unquoted text").[4] Here, AA's attempt to wield an "exceedingly broad" interpretation of the Partnership Agreement to compel arbitration without creating the proper evidentiary record, runs afoul of the "best evidence" and "completeness" rules,[5] violates fundamental notions of fairness and equity and, in effect, now ask this Court to deprive the plaintiffs of their chosen forum on blind faith. See, Dugan, 344 F.3d at 670 (striking a parties' affidavit as being unreliable because the affidavit quoted portions of a trust agreement upon which the party relied, but failed to include the agreement itself); Viets, 2003 WL 21525062 (S.D. Ind. 2003) (rejecting former partners' affidavit insofar as the former partner had failed to come forward with actual evidence showing that the document identified as the partnership agreement had replaced the early version of the agreement). Here, in failing to include for consideration the very document upon which it relies, AA's motion to compel should be denied.

C.    **CAMICO, a Non-Signatory, Should Not be Compelled to Arbitrate Its Independent Claims.**

Again, AA overreaches in mischaracterizing the nature of CAMICO's claims in attempting to bind CAMICO to an arbitration provision that CAMICO is neither a signatory to,

---

[4] In striking the affidavit, Judge Posner also employed a hypothetical scenario that is particularly apt to the present situation, i.e., "[I]magine the trial of a breach of contract case in which the contract is not placed in evidence, but only a few snippets; that was what the trustees were trying to do." Dugan, 344 F.3d at 670.
[5] Fed.R. Evid. 1002 and Fed.R. Evid. 106.

10

nor to which it ever agreed to submit. See, AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). Here, CAMICO is not proceeding merely in its capacity as a subrogee of Hawkins, but maintains causes of action for declaratory judgment and equitable contribution in its own right in an effort to recover AA's equitable share of defense costs and litigation expenses costs paid to defend Mr. Hawkins. (See, Compl., Count V, pgs. 12-13). Rather than being dependent on a claim of privity or on a party's derivative status, any party may maintain a claim for declaratory judgment so long as an actual controversy exists between parties having *adverse legal interests* of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. In the Matter of VMS Securities Litigation, et al., 103 F.3d 1317 (7th Cir. 1996), quoting, Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941); see also, Record-A-Hit v. Nat'l Fire Ins. Co., 377 Ill.App.3d 642, 645, 880 N.E.2d 205 (1st Dist. 2007).

Here, insofar as CAMICO is defending Hawkins in the face of allegations that also trigger AA's duty to defend (indemnity at present is unripe) and has paid more than its proportionate share of Hawkins' defense costs, CAMICO possesses the requisite interest to seek a declaration of AA's obligation. Likewise, a claim for equitable contribution is not derivative of another parties' rights, but may be maintained by an insurer who has paid an entire loss, or a disproportionate share, in its own right. See, Home Ins. Co. v. Cincinnati Ins. Co., 213 Ill.2d 307, 315-318, 821 N.E.2d 269 (Ill. 2004); Rhone-Poulec Inc. v. Int'l Ins. Co., et al., 71 F.3d 1299, 1305 (7th Cir. 1996) (a claim for contribution is not the insured's right but rather that of the insurer and is not founded on the insurer's third party beneficiary status but rather on notions of equity and unjust enrichment). Indeed, contribution "exists independently of subrogation and is meant to facilitate an equitable distribution of liability for the loss." Maritime Corp. v. Boston

11

Old Colony Ins. Co. et al., 158 Cal.App. 4th 1061, 1067, 70 Cal.Rptr.3d 605 (2008). CAMICO has paid a disproportionate share of Hawkins' defense costs, and thus, it is entitled to seek reimbursement and/or contribution from AA.

While some courts have concluded that insurers proceeding purely in a subrogee capacity must submit to arbitration where the subrogor was bound to arbitrate,[6] that is not the case here. Rather, those courts having confronted the issue of whether an insurer who is a non-signatory to an arbitration provision and who pursues equitable claims against a co-obligor have concluded that an insurer cannot be compelled to arbitrate. See, GlobalSantaFe Drilling Co. v. Ins. Co. of the State of Pa., et al., 2006 WL 13090 (N.D. Cal. 2006) (insurer's equitable subrogation and equitable contribution claims were not subject to arbitration and were permitted to proceed in the district court insofar as insurer was pursuing equitable claims in its own right was not a third party beneficiary of the arbitration agreement and was not seeking benefits under the policies subject to arbitration); Maritime Corp. v. Boston Old Colony Ins. Co. et al., 158 Cal.App. 4th 1061, 1071, 70 Cal.Rptr.3d 605 (2008) (rejecting claims that a non-signatory insurer seeking equitable contribution "stood in the shoes" of the insured and sought benefits payable under the agreement calling for arbitrate, and concluding that the insurer may pursue its equitable claims against co-obligors without being compelled to arbitrate). As with the insurers in Maritime Corp and GlobalSantaFe, CAMICO, as a non-signatory, should not be compelled to arbitrate its independent claims, AA's motion to compel CAMICO to arbitrate should be denied.

---

[6] Am. Bureau of Shipping v. Tencara Shipyard S.P.A, 170 F.3d 349 (2d Cir. 1999) (concluding that because the subrogor had received a benefit under a contract requiring arbitration it and its insurer [proceeding purely in a subrogation capacity] were bound to arbitrate). Though cited by AA as supportive of the proposition that a subrogee may be bound to arbitrate, the holding in Westchester Fire Ins. Co. v. General Star Indemn. Co., 183 F.3d 578 (7th Cir. 1999) is inapposite. That matter did not deal with whether a subrogee was bound to arbitrate, but rather addressed an excess insurer's right to be equitably subrogated to the rights of its insured to pursue the primary carrier who failed to settle and underlying claim within its policy limits.

**WHEREFORE,** Plaintiffs CAMICO Mutual Insurance Company and Richard L. Hawkins respectfully request that Arthur Andersen's Motion to Compel Arbitration and to Stay Action Pending Arbitration be denied, that the present stay of discovery and other proceedings be lifted, that this cause be allowed to proceed before this Court, and that this Court award Plaintiffs their costs and any and all other relief deemed just and equitable.

Dated: March 31, 2008

CAMICO Mutual Insurance Company and
Richard L. Hawkins

By: _____
One of their Attorneys

D.J. Sartorio
Donald E. Elder
Anthony N. Balice
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Dr.
Sears Tower, 22nd Floor
Chicago, Illinois 60606
(312) 627-4000