IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CAMICO MUTUAL INSURANCE COMPANY,   )
a California corporation, individually and as   )
subrogee of Richard L. Hawkins and RICHARD   )      Civil Action,
L. HAWKINS, individually,   )      File No. 07 C 6861
        Plaintiffs,   )
    )
      v.   )
    )
ARTHUR ANDERSEN, LLP, an Illinois limited   )      Hon. Ronald A. Guzman
liability partnership,   )
        Defendant.   )

## REPLY BRIEF OF ARTHUR ANDERSEN LLP IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND FOR STAY OF ACTION PENDING ARBITRATION

The opposition of Plaintiffs Camico Mutual Insurance Company ("Camico") and Richard L. Hawkins ("Hawkins") to the motion of Defendant Arthur Andersen LLP ("Andersen") to compel arbitration and stay these proceedings pending the arbitration lacks merit because 1) Hawkins is party to an arbitration clause (through his Partnership Agreement with Andersen) that directs disputes regarding the clause's scope to an arbitrator; 2) even if the arbitration clause's scope was not for the arbitrator to decide, it is hard to credit Hawkins's argument that the Partnership Agreement does not require arbitration here where the Agreement's provisions for termination of a partner led to the Termination Agreement (and its reference to the obligation to arbitrate) upon which Hawkins rests his cause of action in the first place; and 3) Camico, as a subrogee of Hawkins —one who stands in Hawkins's shoes— is required to proceed on the contract in the same fashion as the subroger and hence it must arbitrate. This Court should order arbitration.

## I.    Undisputed Facts on Motion to Compel

A number of key facts are <u>not</u> disputed in the resolution of this motion.

    1.  Hawkins was a partner of Andersen. He was a signatory to the Andersen Partnership Agreement. That Partnership Agreement contains an arbitration

clause. The arbitration clause requires arbitration of any dispute arising out of the Partnership Agreement, as well as any ancillary claims of a partner. It further provides for arbitration of any issue about the "scope" of the arbitration clause. The arbitration clause requires that arbitration take place in Chicago, Illinois and that Illinois law governs all disputes regarding the clause.

2. Hawkins left Andersen. When he did, Hawkins's partnership interest was terminated as reflected in the Termination Agreement. In that agreement, Hawkins released Andersen from all claims to the partnership assets and in return for that release Andersen agreed to provide a defense (but not indemnity)[1] to Hawkins provided certain conditions were met. Hawkins agreed in the Termination Agreement to comply with his continuing obligations as a partner of Andersen, with the sole exceptions laid out in a July 2001 letter mentioned in his Agreement and attached here as Exhibit A. The July 2001 letter specifically references the Partnership Agreement

3. Camico seeks declaratory relief and contractual and equitable subrogation to Hawkins's rights against Andersen.

4. The Andersen Partnership Agreement is a confidential document. *See* Parzen Affidavit attached as Exhibit B at ¶ 3. In the Northern District of Illinois and other courts, the Partnership Agreement has been filed under seal or provided to the Court in a redacted form. *Id.* In this case, prior to filing the motion to compel, Andersen made the entire Partnership Agreement available for review to counsel for plaintiffs, and was not thereafter requested to provide a copy of the Partnership Agreement to them. *Id.* at ¶ 5.

## II.   <u>Summary of Argument</u>

There is no dispute that there is a valid arbitration clause between Hawkins and Andersen. The only dispute is whether, as plaintiffs suggest, a dispute regarding termination of a partnership agreement is not subject to the arbitration clause of that partnership agreement. Such

---

[1] Whether there was an agreement to indemnify is disputed by the parties.

a dispute is about the scope of the arbitration clause, which is a dispute the parties agreed an arbitrator would decide, not a court.  That was the precise holding of *Viets v. Arthur Andersen*, 2003 WL 21525062 (S.D. Ind. 2003).  Because the arbitration clause that Hawkins agreed to "comply with [as one of his] continuing obligations under [Andersen's] organizational document(s)," see Exhibit 2 to Pls.' Compl.,[2] unequivocally assigns disputes over the clause's scope to arbitration, no other result could be possible.  The issue of arbitrability should be sent to arbitration.  If this Court disagrees and rules arbitrability is not for an arbitrator to decide, it should hold that the dispute is plainly arbitrable both because the dispute arises out of the Partnership Agreement and because it invokes an ancillary claim to the Partnership Agreement. That was the holding of *Autori v. Arthur Andersen LLP*, Case Number CV 03 0477909-S (Conn. Super. Ct. March 21, 2006), attached as Exhibit C, where there was a dispute with a former Andersen partner regarding his termination agreement.

Second, there is no dispute that Camico seeks subrogation, see Counts III and V of Pls.' Compl., and therefore stands in the shoes of Hawkins.  It is therefore bound by Andersen's arbitration agreement with Hawkins.  That is the precise holding of *Equistar Chems. v. Hartford Steam Boiler Inspection and Ins. Co. of Connecticut*, 2008 WL 613132, *1 (Ill. App. 4th Dist. March 8, 2008), which is binding here as the arbitration clause is governed by Illinois law.

Third, Plaintiffs' suggestion that Andersen's motion should be denied for failing to establish a proper evidentiary record is disingenuous.  The Court has before it the arbitration clause at issue (and Andersen files concurrently with its reply the affidavit of Stanley Parzen attesting to the arbitration clause.  Exhibit B at ¶¶ 4-5.)  As the arbitration clause makes clear that the scope of the agreement is also for an arbitrator to decide, the rest of the agreement is irrelevant to Andersen's motion to compel.  It is inappropriate to suggest that Andersen asks this Court to resolve this motion on blind faith where Plaintiffs cannot (and do not) challenge that Andersen accurately portrayed the relevant portions of the Partnership Agreement.  Plaintiffs do not challenge it because Andersen provided the Partnership Agreement to Plaintiffs' counsel to read.  Plaintiffs' counsel read the agreement and is therefore aware of its content and scope.  As

---

[2] Pls.' Compl. refers to the Complaint for Declaratory and Other Relief filed by Camico and Hawkins to initiate this matter.  Pls.' Br. refers to Plaintiffs' Brief in Opposition to Arthur Andersen's Motion to Compel Arbitration and For Stay of Action Pending Arbitration.  Andersen Motion to Compel refers to the Motion of Arthur Andersen LLP to Compel Arbitration and For Stay of Action Pending Arbitration.

argued below in Part C, Andersen does not believe it is necessary to provide a copy of the confidential agreement.  But if this Court finds it warranted, Andersen will file the Partnership Agreement under seal.

### III.    Argument

### A. Whether Plaintiffs' Claims Fall Within the Scope of the Arbitration Clause is a Question for the Arbitrator; in the Alternative, the Claims are Arbitrable.

Plaintiffs' primary argument is that the arbitration agreement in the Partnership Agreement does not cover this dispute.  Pls.' Br. at 4-9.  But the arbitration agreement not only provides that any disputes arising out of the Partnership Agreement shall be decided by arbitration but also that any dispute about the "scope" of the clause shall be decided by the arbitrator and not by a court.  Whether the courts or an arbitrator should decide the scope of arbitrability is governed by the agreement's language.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995).  "[W]hen an arbitration clause is so broadly worded that it encompasses disputes over the scope or validity of the contract in which it is embedded, issues of the contract's scope or validity are for the arbitrators."  *Airline Pilots Ass'n v. Midwest Express Airlines, Inc.*, 279 F.3d 553, 556 (7th Cir. 2002).[3]  Accordingly, this dispute needs to be sent to arbitration.

*Viets v. Arthur Andersen LLP*, 2003 WL 21525062 (S.D. Ind. 2003), is right on point. Viets was a retired partner of Andersen.  When he retired, he signed a Determination agreement much like the Termination Agreement[4] here.  Viets was given retirement benefits and agreed to comply with his continuing obligations.  In *Viets*, the court analyzed the exact same arbitration clause that Hawkins signed.  Exhibit B at ¶ 3.  It found the arbitrator should determine the

---

[3]  Plaintiffs attempt to distinguish *Airline Pilots Ass'n* factually.  Pls.' Br. at 8–9.  They miss the point. *Airline Pilots Ass'n* stands for the proposition that with an arbitration clause as broad as the one here, the arbitrator decides arbitrability.

[4]  Plaintiffs previously referred to Termination Agreements, but now refer to the two agreements cited in their complaint as a singular Termination Agreement.  *Compare* Pls. Compl. ¶¶ 14, 32, 37, 39, 41, 45, 47, 49, 51, etc. *with* Pls.' Br. at 3 (citing both exhibits from complaint as "Termination Agreement").  They presumably characterize the Determination Statement provided in Exhibit 1 of their Complaint and the AA agreement provided in Exhibit 2 of their complaint as a singular contract now called the Termination Agreement to avoid suggesting the two might be separate independent agreements in the same way they argue that the Partnership Agreement and the Termination Agreement are separate agreements.

arbitrability of a dispute over retirement benefits subsequent to Viets' termination because, as here, there was no dispute that Viets had agreed to arbitrate under the Partnership Agreement and whether the dispute fell within the arbitration clause was for the arbitrator to decide under the language of the agreement. *Viets*, 2003 WL at *4. In reaching this conclusion, the Court first noted that no dispute existed regarding whether Viets had signed the Partnership Agreement, so there was no dispute about the making of the agreement to arbitrate and, therefore, no concern about bootstrapping Viets into arbitrating a dispute that he had not agreed to arbitrate. The court then concluded that Viets' arguments against enforcing the clause, i.e. arguments about the clause's scope, were for the arbitrator.

Plaintiffs call *Viets* "inapposite," claiming the *Viets* court found arbitration appropriate because "Viets' 'claims . . . arise under the agreement.'" Pls.' Br. at 9 (quoting *Viets*, 2003 WL at *6). Plaintiffs mischaracterize *Viets* by quoting out of context. The language quoted by plaintiffs was irrelevant to the court's holding. It was only offered to show Viets could not claim that Andersen was not a party to the Partnership Agreement if Viets wished to assert claims based on the Partnership Agreement. *Viets*, 2003 WL at *6. The quoted language was not the court's assertion of the scope, but its reiteration of what Viets was claiming. The court, in fact, never delineated the Agreement's scope because that question was outside the court's bailiwick due to the arbitration clause's express terms. As the court explained, Viets' arguments "affect at most only the validity, scope, and enforceability of an agreement to arbitrate that undoubtedly exists." *Id.* at *4. Since these issues of scope and validity were included in the broad Andersen arbitration clause, they were "for an arbitrator to decide." *Id.* The arbitration clause only left the court to determine whether the agreement to arbitrate existed, which is why "Viets . . . tried hard to frame the issue as whether an agreement to arbitrate exists, and not as anything concerning the 'validity, scope, and enforceability of that agreement.'" *Id.* at *8. Plaintiffs travel the same path here in arguing about whether the scope of the arbitration clause encompasses the Termination Agreement. *Viets* forecloses such an argument. Once the *Viets* court found "[t]here is no doubt that the agreement exists," all of Plaintiffs' arguments about scope were "issue[s] only for the arbitrator." *Id.*

Plaintiffs' cases are inapposite to this issue. Neither *Rosenblum v. Travelbus.com Ltd.*, 299 F.3d 657 (7th Cir. 2002) nor *Salsitz v. Kreiss*, 198 Ill.2d 1, 761 N.E.2d 724 (Ill. 2001), on

which *Rosenblum* relied, involved broad arbitration clauses where the question of arbitrability was designated to the arbitrator, as in this case and in *Viets*. The *Salsitz* court itself made clear that it would be an entirely different situation if such language were included in the arbitration clause. "There are, of course, instances where the parties agree to submit the question of arbitrability itself to arbitration." *Salsitz*, 198 Ill.2d at 15. But according to the *Salsitz* court, "[i]n the present case, nothing in the . . . agreements indicates that the parties intended to submit the question of arbitrability to arbitration." *Id.* Plaintiffs are correct to cite *Salsitz*'s language that "[t]he parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate," Pls.' Br. at 6 (quoting *Salsitz*, 198 Ill.d at 13), but in this case, unlike either *Salsitz* or *Rosenblum*, the parties agreed to arbitrate the "scope" of the arbitration clause. It is therefore not an issue for this Court whether this dispute falls within that clause.

Because the scope of arbitration is clearly within the language of the arbitration clause here, as the *Viets* court determined once before, Andersen need not demonstrate that Plaintiffs' claims arise from or are ancillary to Hawkins's departure from the firm or that his departure is covered by the Partnership Agreement. That argument is for the arbitrator. Nonetheless, it plainly is true that this disagreement is covered by the clause; not only does it arise from the Partnership Agreement but it certainly involves ancillary claims. Plaintiffs' argument that a dispute about an agreement terminating a partnership (i.e. the Termination Agreement) is not covered by the Partnership Agreement's arbitration clause makes no sense.

The facts are simple. There is a Partnership Agreement which requires arbitration of all disputes arising out of it, including any ancillary claims of the parties. There is an agreement by which 1) Hawkins terminated his partnership interest, 2) Andersen agreed to defend his prior actions while a partner with the firm so long as he complied with fiduciary obligations as a partner, and 3) Hawkins agreed to comply with continuing obligations under the Partnership Agreement, with the only exceptions provided by Terry Hatchett's July 2001 letter.[5] See Exhibit 2 to Pls.' Compl. Hatchett's letter provided a partial waiver of the Partnership Agreement's non-compete provisions in Article 26, but it did not exempt Hawkins from Article 39's arbitration

---

[5]  Plaintiffs did not attach Hatchett's letter to their complaint even though it was specifically mentioned in the Termination Agreement on which they rely. Exhibit 2 to Pls.' Compl. Plaintiffs' oversight hid that the letter references the Partnership Agreement directly, making it unequivocally clear the Termination Agreement is an agreement ancillary to the Partnership Agreement.

clause in any way. *See* Exhibit A. Not only does the Termination Agreement incorporate the Partnership Agreement (with the exception of the provisions explicitly waived by Hatchett's letter), but Hawkins's right to a defense depends upon his compliance with his fiduciary duties as a partner --- a matter certainly arising from and ancillary to the Partnership Agreement. The dispute between Hawkins and Andersen clearly arises from the Partnership Agreement and involves claims ancillary to that agreement.

This case is just like *Autori v. Arthur Andersen*, Number CV 03 0477909-S (Conn. Super. Ct. March 21, 2006). Autori was a partner in Andersen's Hartford, Connecticut office who upon leaving the firm signed a Determination Statement that required him "to comply with continuing obligations under [the] Firm's organizational document(s)," *see* Exhibit C at 1, just as Hawkins did. Autori argued, just as Hawkins and Camico now do, that the firm's Partnership Agreement and arbitration clause did not arise from the Partnership Agreement, but rather from a separate agreement addended to his Determination Statement. *Id.* at 3. Also similarly, Andersen took its present position that the Determination incorporated the Partnership Agreement and its arbitration clause by reference. *Id.* The Superior Court agreed with Andersen. It held "[t]he Determination Statement and the Addendum are contemplated by the Partnership Agreement, arise from the Partnership Agreement, reference the Partnership Agreement and are subject to the arbitration clause." *Id.* at 5. This Court should follow *Autori*.

The two cases that plaintiffs cite to this Court do not provide them any help because, in contrast to the cases cited by plaintiffs, there are not two independent contracts covering different subject matter here. In *Rosenblum* and *Salsitz*, the courts found two independent agreements that did not overlap. The parties in *Rosenblum* admitted that both contracts were part of the same deal, but the agreements were "self-contained" as they covered separate aspects of the deal. 299 F.3d at 663. One agreement dealt "exclusively with Mr. Rosenblum's employment" while the other agreement dealt with "the parties' rights and duties with respect to Mr. Rosenblum's sale" of his business. *Id.* There was no overlap between the two agreements' subject matter. Indeed, both agreements had merger clauses, which laid out that each agreement "constitute[d] the entire agreement between the Parties" on the subject matter that they covered. *Id.* at 660, 664–65. The same is true in *Salsitz* where the arbitration clause was included as part of stock defendants had given plaintiffs as a bonus for their involvement with the company, but

the dispute arose from a separate agreement where plaintiffs agreed to invest in the company. 198 Ill.2d at 16. In contrast, the agreements here clearly cover the same material, the termination of Hawkins's Partnership with Andersen, which is why the Termination Agreement even references Andersen's organizational documents and Hatchett's 2001 letter specifically references the Partnership Agreement. For that reason, this case is controlled by *A.E. Staley Mfg. Co. v. Robertson*, 200 Ill.App.3d 725, 558 N.E.2d 434 (Ill. App. 1st Dist. 1990).

Plaintiffs recognize the relevance of *A.E. Staley* in their footnote disputing whether the Termination Agreement is ancillary to the Partnership Agreement.[6] Pls.' Br. at 7 n.2. But in limiting *A.E. Staley*'s holding to a determination that attorney's fees were ancillary, plaintiffs must have only read the opinion's penultimate paragraph. The rest of the opinion dealt with two agreements covering the *A.E. Staley* plaintiff's retirement benefits and whether the second agreement was ancillary to the first. The first had an arbitration clause and the second did not. Plaintiff attempted to argue, just as plaintiffs do here, that the dispute arose under the second agreement and so the arbitration clause in the first agreement could not be used to compel arbitration. 200 Ill.App.3d at 731. The court disagreed. As it found "the subject matter of both of the agreements to be the same," i.e. plaintiff's retirement benefits, the court held the arbitration clause from the first agreement covered plaintiff's alleged dispute regarding the second agreement. *Id.* at 730–31.

Hence, even if this Court finds the question of arbitrability within its purview, it should find the present conflict governed by the Partnership Agreement's arbitration clause.

## B. Camico's Claims Derive From Hawkins's Claims and are Arbitrable.

Citing two <u>California</u> decisions, Plaintiff Camico argues that as a non-signatory to the Partnership Agreement, it should not be compelled to arbitrate even though it proceeds on a subrogation theory. Pls.' Br. at 12. But the arbitration clause provides that the arbitration is to take place in Chicago Illinois and provides the dispute is covered by Illinois law (see Exhibit B

---

[6] In their footnote, plaintiffs suggest Andersen "failed to characterize, let alone address, Hawkins' claims as 'ancillary.'" Pls.' Br. at 7 n.2. But as this reply brief makes clear, Andersen did not address the ancillary nature of the claims because it believes that issue was an issue of the arbitration clause's scope to be argued in front of the arbitrator, not here. Because plaintiffs have raised the issue, Andersen has replied, but still maintains the issue is properly one for the arbitrator.

at ¶ 5), Plaintiffs' brief predominantly cites Illinois law, and this Court sits in Illinois.  Under Illinois law, Camico as a subrogee of Hawkins is required to arbitrate.  That is the holding of *Equistar Chems. v. Hartford Steam Boiler Inspection and Ins. Co. of Connecticut*, 2008 WL 613132, *1 (Ill. App. 4th Dist. March 8, 2008), where the Illinois Appellate Court recently held that a non-signatory insurer subrogee like Camico is bound by an arbitration agreement signed by the subroger.

In *Equistar*, subroger Trigen had signed an arbitration agreement with Equistar. Hartford, an insurance company like Camico, was subrogated to Trigen's claims. Even though it was not a signatory to the arbitration agreement, Hartford sought to compel Equistar to arbitrate the dispute arising over the claims to which it was subrogee.  In allowing Hartford to compel arbitration, the Illinois Appellate Court explained that courts have recognized several theories where a non-signatory to an agreement may be bound by the arbitration agreements of others. *Id.* at *5.  In such cases, the court added, non-signatories should be allowed to invoke the arbitration agreement in kind.  *Id.*  To answer whether Hartford could compel arbitration, then, the Court had to determine whether Hartford as the subrogee insurer would have been bound by the arbitration agreement such that it should be allowed to invoke the arbitration clause.

The *Equistar* court determined that "case law and policy favor requiring a subrogee's claim against a third party to be tried within the limitations agreed to by the subroger and the third party."  *Id.* at *7.  In so concluding, the Illinois Court followed *Solomon v. Consolidated Resistance Co. of America*, 468 N.Y.S.2d 532, 533, 97 A.D.2d 791, 792 (N.Y. 1983), which held that a nonsignatory insurance company subrogee was bound to the arbitration agreement signed by the subroger, and rejected the California law cited by Camico here.  *See, e.g., id.* at 16 (rejecting *Valley Casework, Inc. v. Comfort Constr., Inc.*, 76 Cal. App. 4th 1013, 1023 (1999)). The *Equistar* court made clear that it agreed with *Solomon*: if the subroger was required to arbitrate, the subrogee should be similarly bound.  *Equistar*, 2008 WL at *7.  This result makes good sense because if a party seeks to enforce the terms of a contract, it should enforce the terms in the manner prescribed by the contract.  *See Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999); *Westchester Fire Ins. Co. v. General Star Indem. Co.*, 183 F.3d 578, 583 (7th Cir. 1999).  Therefore, under governing Illinois law, Camico is bound by the arbitration clause just as Hawkins is bound.

Camico also suggests that two of its claims are not really subrogation claims or derivative of Hawkins's claims, 1) its claim for declaratory judgment and 2) its claim for equitable contribution.

While Camico argues its claim for declaratory relief is an independent free-standing claim, Pls.' Br. at 11, declaratory relief is not a claim in itself. A declaratory judgment is merely a form of relief; it still must be based on an underlying claim. *Mack v. Plaza Dewitt Ltd. Partnership*, 137 Ill.App.3d 343, 349, 484 N.E.2d 900, 905 (1st Dist. 1985). "[Declaratory relief] is not deemed to create in itself substantive rights or duties, however, but instead merely affords an additional procedural method for their judicial determination. Because the remedy is strictly procedural, an action for such relief must state a claim based upon particular substantive legal theories." *Id.*

All of the substantive legal theories underlying Camico's claim for declaratory relief derive from Hawkins's claims. As Camico itself states, "Camico is defending Hawkins in the face of allegations that also trigger AA's duty to defend," and this provides a right to declaratory relief. Pls.' Br. at 11. Thus, the declaratory relief sought is contingent on Andersen having a duty to defend.

Camico begs the question when it suggests the declaratory relief sought here is not derivative because a declaratory judgment action only requires "adverse legal interests" and an actual controversy between the parties. Pls.' Br. at 11. Such analysis ignores that the "adverse legal interests" in question rely upon legal theories *derivative* of Hawkins' rights. To accept Camico's view of declaratory judgments is to accept that Hawkins himself could avoid his obligation to arbitrate simply by seeking a declaratory judgment. After all, he meets the criteria of 1) adverse legal interests to Andersen and 2) an actual controversy with Andersen. This is clearly not the law. Where parties have agreed to resolve disputes through arbitration, "a declaratory judgment should not be sought until after arbitration unless the dispute involves the question of whether a valid arbitration agreement exists and, if so, whether the disputed issue is arbitrable." *Elliott v. Inter-Insurance Exchange of Chicago Motor Club*, 169 Ill.App.3d 702, 707, 523 N.E.2d 1086, 1090 (1st Dist. 1988) (citing *Allstate Insurance Co. v. Elkins*, 63 Ill.App.3d 62, 381 N.E.2d 1 (1st Dist. 1978)). As explained already in Part A, even the latter

dispute of whether the disputed issue is arbitrable may not be ruled on by a court in this case, because that issue was left to an arbitrator.

Camico's claim for equitable contribution is also not independent of Hawkins's claims. It is telling that Camico does not rely on its equitable contribution claim in seeking declaratory relief, but rather on its derivative claims for indemnity. It presumably does so because indemnification and equitable contribution are "mutually exclusive" such that "contribution is prohibited where a party has a right to indemnity." *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill.2d 307, 316, 821 N.E. 2d 269 (Ill. 2004). Accordingly, it is only after the indemnity type claim is arbitrated that the contribution claim can be ripe. Moreover, there can be a right to contribution only if both Camico and Andersen had an obligation to defend against the Oregon litigation, and Andersen would have such an obligation only if the contract required it to so defend him. Absent such a duty, there is no contribution claim. Accordingly, because the right to contribution is contingent upon the contractual claim of Hawkins, Camico should arbitrate it under *Equistar*.[7] Furthermore, while Camico's equitable contribution claim should be arbitrated, the claim is largely an academic one as Camico has no claim for equitable contribution.[8]

Even if the contribution claim were not subject to arbitration, it would have to be stayed because 1) all of the other claims in this litigation are subject to arbitration, 2) Camico pleaded equitable contribution as an alternative claim to those claims to be decided by arbitration, and 3) Camico's claim for contribution cannot go forward if the arbitrator determines Camico has a right to indemnity.

Both Illinois and Federal law encapsulate a policy favoring arbitration as a means to resolving disputes. *International Broth. of Elec. Workers, Local 21 v. Illinois Bell*, 491 F.3d 685 (7th Cir. 2007) (explaining "liberal federal policy in favor of arbitration agreements [favors]

---

[7] We have found no cases dealing with the issue of whether a contribution claim must be arbitrated in this situation.

[8] The judge in the Oregon litigation ruled that the claims at issue were not covered by Oregon's comparative fault statute. As Oregon has no common law claim for contribution among joint tortfeasors, *Blackledge v. Harrington*, 291 Or. 691, 694 (Or. 1981), no claim for contribution remains under Oregon law. Moreover, even if Oregon's comparative fault statute did cover the matter here —in direct conflict with the Oregon judge's decision— Hawkins recently settled out of the Oregon litigation. As Hawkins settled without obtaining a release for Andersen, there would be no claim under the comparative fault statute anyway, because a settling party has no right of contribution "from another tortfeasor whose liability for the injury . . . is not extinguished by the settlement." Ore. Rev. Stat. § 31.800(03).

presumption of arbitrability" such that "[d]oubts should be resolved in favor of" arbitration) (internal citations and quotation marks omitted); *Jensen v. Quik Intern.*, 213 Ill.2d 119, 129, 820 N.E.2d 462, 468 (Ill. 2004) ("Illinois public policy favors arbitration as a means of resolving disputes."). As all of the other claims in this litigation are arbitrable, policy suggests if only one claim is not, it should be stayed pending arbitration of the other matters.

In *Equistar*, the defendant argued that it might have a claim for contribution against a third party that it could not compel to arbitration. 2008 WL at *7. It suggested the risk of a multi-forum action violated the policy against resolution of multiparty conflicts in a single forum. The *Equistar* court acknowledged that policy, but found when "a valid arbitration agreement exists, the court must compel arbitration." *Id.* It then explained that where the issues were not severable, the contribution claim could be stayed pending the arbitration. *Id.*

A stay of the contribution claim is appropriate here if it is the lone claim that is not subject to arbitration. Camico pleaded the equitable contribution claim as an alternative to relief on its other claims. Therefore, it makes sense that the other claims should be decided first to see if the alternative relief is necessary or even permitted. Because many of Plaintiffs' claims are based on suggestions that Andersen has a duty to indemnify Hawkins, a contribution claim may ultimately be precluded by the arbitrator's findings. "[C]ontribution and indemnity are mutually exclusive, and contribution is prohibited where a party has a right to indemnity." *Home Ins. Co.*, 213 Ill.2d at 316.

If the arbitrator finds indemnification warranted here, Camico will have its relief and the contribution claim will be moot. But if the arbitrator denies its claim for indemnification, then Camico may petition this court to lift the stay on its claim for contribution.

## C. Partnership Agreement Need Not Be Attached to Motion to Compel.

Plaintiffs do not dispute the existence or terms of the arbitration agreement between Hawkins and Andersen, nor do they claim some other provision of the Partnership Agreement is relevant to this arbitration dispute. Yet they claim the Court should not compel arbitration because the entire Partnership Agreement was not filed with the Court. Plaintiffs' entire argument is disingenuous. Prior to the filing of the motion to compel arbitration, the Partnership

Agreement was made available for Plaintiffs' counsel during the parties' attempt to resolve this dispute back in January. See Exhibit B at ¶ 6. At that time, Plaintiffs' counsel read the agreement in its entirety, but did not ask for a copy of the agreement. Plaintiffs disclose none of this to the Court. Counsel presumably did not seek a copy of the agreement in its entirety, because it is not relevant.

Andersen has litigated the arbitration clause here in federal courtrooms across the country, including the Northern District of Illinois. Exhibit B at ¶¶ 3-4. The courts have consistently allowed Andersen to provide redacted portions of the agreement, such as the arbitration clause itself, or file the entire agreement under seal. Andersen did not provide the entire agreement here, because it did not believe it was relevant given that federal courts are "instructed to order arbitration to proceed once . . . satisfied that the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue," *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967) (internal quotation marks omitted). Andersen is also concerned of the risk in this Circuit that filing the Partnership Agreement would mean the agreement would become public. *See generally Baxter Int'l v. Abbott Labs.*, 297 F.3d 544 (7th Cir. 2002). Such confidentiality concerns have led courts in the Circuit to limit exposure of confidential agreements to opposing counsel instead of disclosing them to the public where "the Agreement's relevance to the various legal issues" was in question. See *Solaia Tech. LLC v. Jefferson Smurfit Corp.*, 2002 WL 1964761, *2 (N.D. Ill. 2002). Andersen has already made the Partnership Agreement available to opposing counsel.

The cases cited by Plaintiffs do not suggest a different result. *Dugan v. R.J. Corman Railroad Co.*, 344 F.3d 662 (7th Cir. 2003), is unavailing on this matter. Unlike the snippets of a contract quoted in the affidavit stricken in *Dugan*, the arbitration clause here stands on its own with respect to whether the scope of arbitration is to be arbitrated. This is clear from the text of the arbitration clause. Unlike *Dugan*, there is no dispute the Partnership Agreement in its entirety would help resolve, nor would the rest of the Partnership Agreement give meaning to whether arbitrability is to be arbitrated. If there were such a dispute, Plaintiffs' counsel could easily have identified it after he read the Partnership Agreement. Once it is clear that an agreement to arbitrate exists and the agreement relegates the scope of the arbitration agreement to the arbitrator, there is nothing more for this court to do. As such, Andersen provided only

what was needed to establish the existence of the arbitration agreement and that arbitrability is included in that agreement's scope.

Part of the reason that Andersen's arbitration clause sends the scope of the clause to arbitration is that it allows Andersen to keep its Partnership Agreement, which includes proprietary information about the structure of the firm, confidential. *See, e.g., Union Oil Company of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) ("People who want secrecy should opt for arbitration."). In confidential arbitration, the arbitrator will certainly need to look at the agreement in its entirety to resolve the merits and Andersen will provide it. But unless Plaintiffs purport to dispute the existence of the arbitration agreement between Hawkins and Andersen or that Andersen has presented the text of the agreement to arbitrate accurately, there is no need for Andersen to produce the Partnership Agreement at this time.

If the Court disagrees and finds the rest of the Partnership Agreement relevant to the parties' dispute over whether this matter should be arbitrated, Andersen respectfully seeks leave to file the Partnership Agreement under seal.

## Conclusion

**FOR THE FOREGOING REASONS**, Andersen asks this court to grant its Motion to Compel Arbitration and to Stay Action Pending Arbitration.

Dated April 23, 2008.                    Respectfully submitted,


                                         s/ Stanley J. Parzen_____
                                         Stanley J. Parzen
                                         Mayer Brown LLP
                                         71 South Wacker Drive
                                         Chicago, Illinois 60606-8747
                                         (312) 701-7326
                                         Attorney for Arthur Andersen, LLP

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAMICO MUTUAL INSURANCE COMPANY, | ) | |
| a California corporation, individually and as | ) | |
| subrogee of Richard L. Hawkins and RICHARD | ) | Civil Action, |
| L. HAWKINS, individually, | ) | File No. 07 C 6861 |
|        Plaintiffs, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| ARTHUR ANDERSEN, LLP, an Illinois limited | ) | Hon. Ronald A. Guzman |
| liability partnership, | ) | |
|        Defendant. | ) | |

## <u>TABLE OF EXHIBITS ACCOMPANYING<br>REPLY BRIEF OF ARTHUR ANDERSEN LLP IN SUPPORT OF<br>MOTION TO COMPEL ARBITRATION AND STAY OF ACTION<br>PENDING ARBITRATION</u>

**EXHIBIT A — JULY 2001 LETTER OF TERRY HATCHETT**

**EXHIBIT B — AFFIDAVIT OF STANLEY PARZEN AND ATTACHMENTS**

**EXHIBIT C — MEMORANDUM OF DECISION IN *AUTORI V. ARTHUR ANDERSEN LLP*, CASE NUMBER CV 03 0477909-S (CONN. SUPER. CT. MARCH 21, 2006)**

# EXHIBIT A

ANDERSEN

Terry E Hatchett
Area Managing Partner
North America

terry.e.hatchett@us.andersen.com

Richard Lee Hawkins
3869 Southwest Jerald Court
Portland, Oregon 97221

**Arthur Andersen LLP**

Suite 1300
711 Louisiana Street
Houston TX 77002-2786

Tel 713 237 5101
Fax 713 237 5302
www.andersen.com

July 3, 2001

Dear Rick:

In connection with your retirement effective July 31, 2001, you have indicated an interest in continuing to provide tax services to certain clients of Arthur Andersen LLP (the "Firm") listed on Attachment A. You would be acting independently or affiliated with an accounting or financial consulting firm. You would make clear to the clients that you are a former partner; you are not acting on behalf of the Firm; and that you and/or the firm that you have become affiliated with are responsible for the assistance provided by you.

On the above basis, I am happy to confirm that the Firm waives the restrictions of Articles 26(A)(2) and 26(A)(3) of the Firm's Partnership Agreement in respect to the services described above for the clients listed on Attachment A. You must, though, respect the obligations of Article 26 of the Partnership Agreement, including but not limited to, not soliciting any employee of the Firm to determine their interest in employment with you and/or the firm with which you have become affiliated and maintaining the restrictions relating to non-disclosure of proprietary and confidential Firm and client information.

Please sign and return to Jack G. Wilborn the enclosed duplicate copy of this letter as your confirmation of the understandings expressed above.

Sincerely,

Terry E. Hatchett

Enclosure

Copy to:
Sharon A. McFadden, Chicago

Acknowledged by:

Richard Lee Hawkins

## ATTACHMENT A

Bean, Douglas B.
Campbell, Dr. John
Carr, Bernard
Columbia Consulting
Coonan, Jim
Elsen, Lura
Feldman, James
Flaherty, Robert
Griffith, Marshall
Hillman, Kathryn Trust
Hoffman, Jean
Kempf, Eugene
Korter, Bruce
MacKenzie Kesserling
Malarkey, Herbert Roofing
Moore, George
Riedel, Art
Runyan, Mavin
Servio Logic (SHUSA)
Soderberg, Pat
Thomas, Roger
United Pipe k& Supply – David Ramsey
Wanke-Cascade

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAMICO MUTUAL INSURANCE COMPANY, | ) | |
| a California corporation, individually and as | ) | |
| subrogee of Richard L. Hawkins and RICHARD | ) | Civil Action, |
| L. HAWKINS, individually, | ) | File No. 07 C 6861 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARTHUR ANDERSEN, LLP, an Illinois limited | ) | Hon. Ronald A. Guzman |
| liability partnership, | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF STANLEY PARZEN

I, Stanley Parzen, pursuant to penalty of perjury under 28 U.S.C. § 1746(1), state as follows:

1.      My name is Stanley Parzen.  I am a partner at the law firm of Mayer Brown LLP representing Arthur Andersen LLP, in the above-captioned matter.

2.      I have personal knowledge of the matters set forth in this affidavit, and the matters stated herein are true and correct.

3.      I am familiar with the Partnership Agreement for Arthur Andersen LLP and the arbitration clause contained in Paragraph 39.   The Partnership Agreement is a confidential document.  I have represented Arthur Andersen LLP in numerous cases regarding the Partnership Agreement and its arbitration clause.   The arbitration clause at issue in this case is the same clause as referenced in the *Viets* and *Autori* cases cited in the reply brief here.

4.      In cases where the Partnership Agreement needed to be filed, the courts have consistently recognized Andersen's interest in protecting its confidential information by allowing the Agreement or excerpts from it to be filed under seal.  I have attached orders from several of

those cases to this affidavit. Order, *Connolly v. Arthur Andersen LLP*, No. 1:04-CV-07458 (N.D. Ill. December 22, 2004) (granting leave to file Partnership Agreement under seal); Order, *Viets v. Arthur Andersen, LLP*, No. 1:03-CV-0682-DFH-VSS (S.D. Ind. June 12, 2003) (overruling plaintiff's objection and granting Andersen leave to file the Partnership Agreement (and other confidential materials) under seal and to file portions of a brief quoting the Partnership Agreement under seal); Order, *Federal Ins. Co. v. Arthur Andersen LLP*, No. 03 C 1174 (N.D. Ill. Sept. 9, 2003) (granting Andersen's motion for leave to file responsive pleading and attachments under seal); Order, *Parkhill v. Arthur Andersen LLP*, No. 04-K-0999 (D. Colo. Aug. 12, 2004) (granting motion to file Partnership Agreement under seal); Order, *Imonti v. Arthur Andersen LLP*, No. 04-K-1000 (D. Colo. Aug. 12, 2004) (same).

     5.    The Partnership Agreement's arbitration clause reads in full:

**ARTICLE 39**

**ARBITRATION**

**Any and all disputes which cannot be settled amicably, including any ancillary claims of any partner, arising out of or in connection with this agreement (including the validity, scope and enforceability of this arbitration provision) shall be finally settled by arbitration, conducted by a single arbitrator in Chicago, Illinois. The proceedings shall be conducted pursuant to the then-existing Commercial Arbitration Rules of the American Arbitration Association. If the parties to the dispute fail to agree on the selection of an arbitrator within thirty (30) days of the request for arbitration, any party may apply to the American Arbitration Association to make the appointment. The parties hereby express their wish that the decision of the arbitrator be rendered as promptly as possible.**

**The arbitrator shall be a lawyer and shall conduct the proceedings in the English language. The arbitrator shall decide in accordance with terms of this agreement and the Member Firm Interfirm Agreement attached hereto as Appendix A. In interpreting the provisions of this agreement, the arbitrator shall apply the substantive law of the State of Illinois and the United States of America.**

**Each partner (or other person entitled to payments under Article 19) specifically agrees to renounce all recourse to litigation to the extent not inconsistent with applicable law and further agrees that the award of the arbitrator including without limitation, an injunctive order of specific performance or other similar equitable relief, shall be final and that**

neither the procedures followed by the arbitrator nor the award shall be subject to review by the courts, except as may otherwise be required by applicable law.   Judgment with respect to any award may be entered in any court having jurisdiction over the partners or their assets.

Performance under this agreement shall continue if reasonably possible during any disagreement or arbitration proceedings and no amounts payable to any party hereunder shall be withheld on account of such disagreement or proceedings, provided that if the payment of such amounts is the subject of disagreement or arbitration, the parties may discharge their obligations hereunder by making payment into an interest-bearing escrow account to be established for such purpose.   Upon the resolution of the dispute hereunder, such escrowed amounts, plus the applicable proportionate amount of accrued interest, shall be disbursed in accordance with the decision of the arbitrator.

6.     On January 25, 2008, I made the Partnership Agreement (including the above arbitration provision) available to Donald Elder, counsel for Plaintiffs Camico Mutual Insurance Company and Richard Hawkins.  He read the Partnership Agreement, but did not ask thereafter for a copy.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 22, 2008.

By:     _____

        STANLEY RARZEN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Michael W. Dobbins
      CLERK                                                    Office of the Clerk


            Edward H. Williams
            Mayer, Brown, Rowe & Maw LLP
            190 South LaSalle Street
            Chicago, IL  60603



- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
            Case Number:  1:04-cv-07458


            Title:  Connolly v. Arthur Andersen LLP

Assigned Judge: Honorable Charles P. Kocoras



MINUTE ORDER of 12/22/04 by Hon. Charles P. Kocoras :
Defendant's motion for leave to file partnership agreement
under seal [11-1] is granted. Defendant's alternative
motion to designate it a restricted document [11-2] is
r  t. Mailed notice


This docket entry was made by the Clerk on December 23, 2004


ATTENTION:  This notice is being sent pursuant to Rule 77(d) of the
            Federal Rules of Civil Procedure or Rule 49(c) of the Federal
            Rules of Criminal Procedure.  It was generated by ICMS,
            the automated docketing system used to maintain the civil and
            criminal dockets of this District.  If a minute order or
            other document is enclosed, please refer to it for
            additional information.

For scheduled events, motion practices, recent opinions and other information,
visit our web site at www.ilnd.uscourts.gov

Check our web site for CourtWeb--a concise listing of rulings by judges.
Check for rulings on noticed motions.  Also, subscribe to CourtWatch--a free
service--to receive e-mail notification of CourtWeb postings.

To apply for a PACER account, call 1.800.676.6856

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

*ENTERED*

*JUN 1 2 2003*

*U.S. CLERK'S OFFICE*
*INDIANAPOLIS, INDIANA*

GILBERT VIETS, a citizen of Indiana,    )
                                        )
              Plaintiff,                )
                                        )
       v.                               )        Case No. 1:03-CV-0682-DFH-VSS
                                        )
ARTHUR ANDERSEN, LLP, an Illinois       )
limited partnership,                    )
                                        )
              Defendant.                )

## ORDER

Defendant, Arthur Andersen, LLP ("Andersen"), having filed its Motion for Leave to File Materials Under Seal,

And the Court having reviewed the same and being duly advised in the premises, finds that good cause exists and said Motion should be, and hereby is, GRANTED.

IT IS, THEREFORE, ORDERED that Defendant be, and hereby is, granted Leave to file certain unredacted pages 11, 13, 14, 18, 20, 21, 22 and 23 of its Consolidated Memorandum and Appendices 1, 3, 17 and 18 thereto under seal.

Date: _6/12/03_

_____
Judge, U.S. District Court
Southern District of Indiana
Indianapolis Division

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1174 | **DATE** | 9/9/2003 |
| **CASE TITLE** | FIC vs. Arthur Andersen | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Defendants' Arthur Andersen LLP's and Larry J. Gorrell's motion for leave to file responsive pleading and its attachments under seal is granted.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | |
|---|---|
| No notices required, advised in open court. | |
| No notices required. | number of notices |
| Notices mailed by judge's staff. | |
| Notified counsel by telephone. | SEP 1 0 2003 |
| ✓ Docketing to mail notices. | date docketed |
| Mail AO 450 form. | docketing deputy initials |
| Copy to judge/magistrate judge. | |
| TH ✓ | courtroom deputy's initials |

Document Number

25

U.S. DISTRICT COURT
CLERK
03 SEP -9 PM 4:05

Date/time received in central Clerk's Office

date mailed notice

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 1 2 2004

GREGORY C. LANGHAM
CLERK

Civil Action No. **04-K-999**

**DAVID E. PARKHILL,**

        Plaintiff,

v.

**ARTHUR ANDERSEN, LLP,**

        Defendants.

---

## MINUTE ORDER

---

Judge John L. Kane **ORDERS**

        The Unopposed Motion for Leave to File Documents Under Seal, filed July 15, 2004, is **GRANTED.** The Exhibits to Plaintiff's Response to Defendants' Motion to Stay Judicial Proceedings Pending Arbitration Filed Under Seal are accepted for filing Under Seal.

---

Copies of this Minute Order were mailed to the following:

John R. Jacus, Esq.
Brett C. Painter, Esq.
Jennifer M. Ross-Amato, Esq.
Elizabeth J. McNamee, Esq.
Davis Graham & Stubbs, LLP
**D.C. Box 3**

Tim Atkeson, Esq.
Arnold & Porter
370 17ᵗʰ Street #4500
Denver, CO 80202

August /2 , 2004

GREGORY C. LANGHAM, CLERK

Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 1 2 2004

GREGORY C. LANGHAM
CLERK

Civil Action No. **04-K-1000**

**LINDA IMONTI,**

        Plaintiff,

v.

**ARTHUR ANDERSEN, LLP,**

        Defendant.

---

## MINUTE ORDER

---

Judge John L. Kane **ORDERS**

        The Unopposed Motion for Leave to File Documents Under Seal, filed July 15, 2004, is **GRANTED.** The Exhibits to Plaintiff's Response to Defendants' Motion to Stay Judicial Proceedings Pending Arbitration Filed Under Seal are accepted for filing Under Seal.

---

Copies of this Minute Order were mailed to the following:

John R. Jacus, Esq.
Brett C. Painter, Esq.
Jennifer M. Ross-Amato, Esq.
Elizabeth J. McNamee, Esq.
Davis Graham & Stubbs, LLP
**D.C. Box 3**

Tim Atkeson, Esq.
Arnold & Porter
370 17th Street #4500
Denver, CO 80202

August 12, 2004

GREGORY C. LANGHAM, CLERK

Deputy Clerk

# EXHIBIT C

JUDICIAL DISTRICT OF NEW HAVEN
**SUPERIOR COURT**
**FILED**

MAR 21 2006

**CHIEF CLERK'S OFFICE**

DOCKET NO.      CV 03 0477909-S           :           SUPERIOR COURT

EDMUND AUTUORI         JUDICIAL DISTRICT OF NEW HAVEN J.D. OF NEW HAVEN
                       **SUPERIOR COURT**
                       **FILED**

VS.                          :          MAR 21 2006          At NEW HAVEN

ARTHUR ANDERSEN, LLP, **CHIEF CLERK'S OFFICE** MARCH 16, 2006

<u>**MEMORANDUM OF DECISION**</u>

<u>**MOTION TO STAY PROCEEDINGS PENDING ARBITRATION**</u>

The facts alleged in the Complaint in this case are that the plaintiff, Edmund Autuori,

was an accountant who began working for the defendant, Arthur Andersen, LLP, an

accounting firm, on or about 1980.   On September 1, 1990, the plaintiff became a "tax

partner" in the defendant's Hartford, Connecticut office.   The plaintiff worked as a partner in

the defendant firm until February of 1996.   At that time, the defendant came under

investigation by the United States Attorney for the District of Connecticut.

As a result of the investigation, the plaintiff and defendant reached a mutual accord to

separate, which was embodied in the document entitled "Determination of Edmund M.

Autuori's Interest Upon the Effective Date of His Resignation February 29, 1996".   That

document contains, in part, a calculation of the plaintiff's share of capital of the defendant

firm, his share of net income, and an addendum providing that the plaintiff would be paid

during the investigation by the United States Attorney and if indicted, through the conclusion

of the resulting trial. The document also contains a clause stating that "I reaffirm my

intention to comply with continuing obligations under my Member Firm's organizational

document(s), as presently in effect, binding on former partners, including restrictions on

future activities." That document was signed on February 22, 1996 by the plaintiff, and February 26, 1996 by the defendant's managing partner.

The plaintiff was paid pursuant to the terms of the agreement until March, 1998 at which time the plaintiff's trial in Federal Court came to a conclusion. The result of the trial was that the defendant was found guilty on all counts. The judge then presiding set aside those convictions in August of 1998. At that time, the court entered judgments of acquittal on all counts, and in the alternative, ordered new trials on all charges. An appeal followed, which was resolved by decision of the United States Court of Appeals for the Second Circuit, dated May, 2000. The Second Circuit Court of Appeals affirmed the judgments of acquittal in part and vacated judgments of acquittal remanding the case for a new trial on some of the charges. There was no new trial. Ultimately, the charges against the plaintiff were dismissed on November, 2002, bringing his case in the United States District Court to a conclusion.

The gravamen of the plaintiff's complaint is that the defendant should pay the plaintiff pursuant to the terms of the agreement from March of 1998 until November, 2002, because the result of the decisions in the District Court and the Second Circuit made the plaintiff's trial a nullity.

The allegations of that complaint are in twenty counts. Aside from the claim against Arthur Andersen, LLP, the remaining counts are addressed to individual defendants, all of whom are alleged to be equity partners of Arthur Andersen and, therefore, personally liable for the damages and actions of the defendant, Arthur Andersen, LLP (hereinafter, Andersen).

-2-

The defendant Andersen has filed a Motion to Stay these proceedings pending arbitration.   In support of that motion, the defendants allege that the relationship between Mr. Autuori and the partnership is defined and controlled by a Partnership Agreement.  The defendants claim that the agreement includes an arbitration clause which reads in part that "any and all disputes which cannot be settled amicably, including any ancillary claims of any partner, arising out of or in connection with this agreement (including the validity, scope and enforceability of this arbitration provision) shall be finally settled by arbitration, conducted by a single arbitrator in Chicago, Illinois."   The agreement states further "each partner…specifically agrees to renounce all recourse to litigation to the extent not inconsistent with applicable law and further agrees that the award of the arbitrator…shall be final and that neither the procedures followed by the arbitrator nor the award shall be subject to review by the court, except as may otherwise be required by applicable law."

The defendants contend that the document signed by the plaintiff and the defendant upon the plaintiff's separation from the partnership incorporates the Partnership Agreement by reference and as such, incorporates the arbitration clause as well.

By contrast, plaintiff contends that his claims do not arise from the Partnership Agreement but from a separate agreement, that is, the "Addendum" to his Determination Statement.  The plaintiff contends that the Addendum is not provided for in the Partnership Agreement and that it addresses circumstances unique to plaintiff's termination.  The plaintiff claims that those circumstances, and thus these claims, do not arise from the Partnership

-3-

Agreement. The plaintiff states that there was never an agreement to arbitrate his claim for compensation pursuant to the Addendum.

Those claims are contradicted by the specific terms of the Determination Statement as well as the fact that the Addendum is incorporated within the terms of the Determination Statement. That the plaintiff's circumstances upon his termination or separation from the defendant were unique, does not alter the fact that he was separating from the defendant, and did so pursuant to the terms of the Partnership Agreement.

The document signed by the parties upon the plaintiff's separation from the defendant is contemplated within the body of the Partnership Agreement. Specifically Article 23 of the Partnership Agreement is entitled "Finality of Determination of Partner's Interest". That provision of the Partnership Agreement allows for the "Administrator" to determine the amount of interest of a "resigned, removed, retired or deceased partner". It further provides for a determination of the net income to which any such partner may be entitled. The document signed by the plaintiff, Mr. Autuori, upon his separation from the partnership is entitled in part "Determination of Edmund M. Autuori's Interest". That document refers specifically to the Partnership Agreement. The Addendum which is attached which contains the provisions relative to the plaintiff's salary while he is under investigation and during trial is referenced in the "Determination" document. The document specifically provides that "the two page Addendum attached hereto providing for certain continuing obligations is incorporated herein in its entirety."

-4-

The Determination Statement and the Addendum are contemplated by the Partnership Agreement, arise from the Partnership Agreement, reference the Partnership Agreement and are subject to the arbitration clause.

It is appropriate to grant a stay of proceedings pending arbitration when there is a pending action brought by a party to a written agreement, the matter is referable to arbitration and the party making the application for stay is ready and willing to proceed with the arbitration, Connecticut General Statute Sec. 52-408, 52-409.

The court concludes that under the circumstances presented, the plaintiff and the defendants are parties to a written agreement which compels them to subject disputes to arbitration.    Specifically, the court finds that the plaintiff and the defendants are parties to a Partnership Agreement.    The terms of the Partnership Agreement specifically obligate the parties to submit "any and all disputes which cannot be settled amicably, including any ancillary claims of any partner...." to arbitration.

"This court has long followed the rule that the arbitrability of a dispute is a legal question for the court unless the parties have clearly agreed to submit that question to arbitration.   The intention to have arbitrability determined by an arbitrator can be manifested by an expressed provision or through the use of broad terms to describe the scope of arbitration, such as 'all questions in dispute and all claims arising out of' the contract or 'any dispute that cannot be adjudicated' " *Board of Education v. Frey,* 174 Conn. 578, 580-81, 392 A. 2nd 466 (1978).    See also *City of Bridgeport v. Bridgeport Police Local 1159,* 183 Conn. 102, 104 (1981).   In applying that same standard, the Supreme Court concluded that "all

-5-

inclusive language" included in an agreement to arbitrate requires a determination that the parties intend the question of arbitrability to be determined by arbitration.    See *City of Bridgeport*, supra at 105.    That same analysis has been applied by the United States Court of Appeals for the Second Circuit in *Abell v. Cendant Corporation*, 293 Fed. 3rd (2002).

In *Abell*, the court examined language in an arbitration agreement that provided for arbitration of "any controversy arising in connection with or relating to this agreement… or any other matter or thing".    The *Abell* court observed "this clause is as broad an arbitration provision as one can imagine", and accordingly reached conclusion that the parties' intention under the terms of the agreement was to have the arbitrator determine the scope of the agreement.    The same observation can be made with respect to the broad and inclusive language of the arbitration clause of this agreement.    The "determination" of Mr. Autuori's interest upon his resignation of the partnership as well as the Addendum providing for his salary and other issues during the course of his being the subject of this investigation are clearly part of, and contemplated by the Partnership Agreement.    As such, they are subject to the arbitration clause contained therein.

The court finds that the issue involved in this action is subject to arbitration, and as such should be referred to arbitration.    An examination of the relevant portions of the Partnership Agreement leads the court to conclude that the claims arise out of or are connected with the Partnership Agreement.    Having reached that conclusion, the court is obligated to conclude further that even if there is a dispute as to whether the issues presented are subject to arbitration, that dispute must be submitted to arbitration.

The final issue to be examined is whether the party making the application for stay is ready and willing to proceed with arbitration.    The defendant has repeatedly made that representation, and there is no evidence or statement to the contrary.    The court thus finds that the defendant is ready and willing to participate in the arbitration process as dictated by the Partnership Agreement.

The court extends its apology to counsel and their clients for its delay in issuing a decision in this matter.

The defendants' Motion to Stay Proceedings Pending Arbitration is hereby granted.

Robaina, J.