## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CAMICO MUTUAL INSURANCE COMPANY, )<br>a California corporation, individually and )<br>as subrogee of Richard L. Hawkins and )<br>RICHARD L. HAWKINS, individually, )<br><br>                Plaintiffs, )<br><br>       v. )<br><br>ARTHUR ANDERSEN, LLP, an Illinois limited )<br>liability partnership, )<br><br>                Defendant. )<br>_____ ) | Case No.: 07 C 6861<br><br><br>Hon. Ronald A. Guzman |

### PLAINTIFFS' SUR-REPLY MEMORANDUM IN RESPONSE TO
### ARTHUR ANDERSEN'S REPLY BRIEF

In its reply brief, AA employs a host of new assertions, insinuations and previously uncited, though available, authority in an attempt compel Mr. Hawkins and CAMICO, a non-signatory, to arbitrate their claims. While AA's new material neither establishes the arbitrability of the parties' dispute, nor cures AA's evidentiary deficiencies, Plaintiffs, nevertheless, were not given an opportunity to address this material in their opposition brief. Plaintiffs address AA's new material herein.

### A.    AA's Reliance on *Autuori v. Arthur* is Misplaced.

Despite characterizing *Autuori v. AA*, CV 03 0477909-S (Conn. Super. Ct., March 21, 2006) as being factually analogous and pertinent, Andersen cites the *Autuori* holding in its reply brief for the first time. Even a cursory analysis of *Autuori* reveals the case to be factually dissimilar to the pending dispute and actually supportive of Plaintiffs' position. Indeed, like all other authority relied upon by AA, the gravamen of the dispute between Mr. Autuori (former AA partner) and AA was whether AA would honor its contractual obligations under the Partnership

Agreement. Specifically, the dispute in *Autuori* centered on Mr. Autuori's share of capital and net income following his separation from AA. In evaluating whether the dispute was subject to arbitration, the court in *Autuori* concluded that the "payment" issues were contemplated by, and fell within, the purview of the Partnership Agreement. Notably, the court concluded,

> The "determination" of Mr. Autori's interest upon his resignation of the partnership as well as the Addendum providing for his salary and other issues during the course of being the subject of this investigation ***are clearly part of, and contemplated by the Partnership Agreement***.
>
> ***An examination of the relevant portions of the Partnership Agreement*** leads the Court to conclude that the ***claims arise out of or are connected with the Partnership Agreement.***

(*See,* Ex. C, AA's Reply Brief, pg. 6) (emphasis added)

In concluding that the issues involved were contemplated by the Partnership Agreement and thus subject to arbitration, the *Autuori* court conducted a painstaking analysis of the Partnership Agreement[1] to determine whether the issues in dispute fell within the agreement's confines. The court in *Autuori* did not "punt" the threshold issue of arbitrability to the arbitrator to determine (as AA now suggests), but rather examined the agreement to determine whether the payment issues were included therein, and whether a dispute over such was subject to arbitration.

Here, unlike *Autuori*, AA's obligation to defend (and eventually indemnify) Mr. Hawkins flows exclusively from the Termination Agreements; contracts separate and distinct from the Partnership Agreement. AA cannot, and has not, pointed to any provision in the Partnership Agreement which even mentions the defense of a former partner, let alone demonstrate that the defense of Mr. Hawkins was "contemplated by" the Partnership Agreement. *Id.* In predicating its decision on whether Mr. Autuori's separation agreement dispute was contemplated by the

---

[1] This suggests that the Partnership Agreement was produced in the *Autuori* matter.

Partnership Agreement, *Autuori* actually supports a conclusion that the present dispute is not subject to arbitration.

Apparently recognizing the independence of the contracts at issue, AA now posits that because the Partnership Agreement requires an arbitrator to determine whether disputes under the Partnership Agreement are in fact subject to arbitration, this Court should defer the issue of arbitrability to an arbitrator. This argument is a marked retreat from AA's earlier position and amounts to nothing more than asking this Court to simply ignore AA's later contractual obligations. Had AA wanted to arbitrate a defense cost dispute with Mr. Hawkins it should have included an arbitration clause in the Termination Agreements. In having failed to do so this Court should not re-write or simply ignore the language of the Termination Agreements merely because AA prefers a different forum.

Here, in failing to proffer any evidence that the Partnership Agreement encompasses the obligation to defend a former partner and in recognizing the limited scope of arbitration under the Partnership Agreement (applicable to matters arising out of the Partnership Agreement itself) this Court is not only charged with the task of determining arbitrability but should decide that the pending dispute is not arbitrable. This dispute arises singularly and wholly under the Termination Agreements, which does not require arbitration.

**B.**     **AA's Attempt to Justify its Failure to Produce the Partnership Agreement is Improper and Misleading.**

Attempting to sidestep its evidentiary requirements, AA argues that the production of the Partnership Agreement is irrelevant, and insinuates that Plaintiffs – having allegedly failed to ask for a copy of the document - agree with AA's position. AA is wrong on both accounts. To support this new contention AA's submits the affidavit of Stanley J. Parzen, its lead counsel in this matter, as an exhibit to its reply brief. Submitting an affidavit for the first time in a party's

reply brief which presents new matter (particularly those attempting to impute negative inferences to opposing counsel) is improper and prejudicial insofar as it denies the opposing party the opportunity to address these materials in its response. *See, Decoria v. County of Jefferson*, 2007 WL 4287481 *5 (D. Idaho) (recognizing that "it is nevertheless improper to submit new arguments and new affidavits, with a reply brief without justification and without Court approval"); *Kastel v. Winnetka Board of Education, et al.*, 946 F.Supp. 1329, 1335 (N.D. Ill. 1996) (stating that "this Court will not consider new arguments raised for the first time in a reply brief" *citing, Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir. 1990)).  Counsel for the Plaintiffs asked for a complete copy of the Partnership Agreement on no less than three occasions. (*See* Exhibit A, ¶¶ 5,6,7).  In response, Mr. Parzen flatly rejected the production of the document. (*Id.* at ¶¶ 6,7).  Mr. Parzen did permit the inspection of the Partnership Agreement at his office, and Plaintiffs' counsel inspected the document on January 25, 2008. (*Id.* at ¶ 7).  At that time, counsel for Plaintiffs again asked for a copy of the Partnership Agreement.  AA's counsel made it clear that a complete copy of the document would not be produced to Plaintiffs. (*Id.* at ¶ 7).  Plaintiffs have at no time either withdrawn their request for the production of the Partnership Agreement or in any way represented that the production of the document to the Plaintiffs (or to this Court) is irrelevant.  Indeed, the only apparent irrelevancy would have been for Plaintiffs' counsel to continue to ask for a copy of the agreement, which, as was made clear, was not forthcoming.  Here, an examination of the Partnership Agreement is not only relevant, but also essential for defining the scope and applicability of the agreement's arbitration clause. That is precisely what the court did in *Autuori*.

The bigger issue for AA is that none of its new assertions cure its evidentiary deficiency in failing to produce a copy of the very document upon which it relies.[2] *See, Dugan v. R.J. Corman Railroad Co., et al.*, 344 F.3d 662, 670 (7th Cir. 2003) (striking a parties' affidavit that quoted portions of a trust agreement upon which the party relied, but which failed to include the agreement itself, as being unreliable). As such, AA's cavalier attempt to avoid it evidentiary requirements should not be countenanced by this Court, and its motion to compel should be denied.

### C.     AA's  Reliance on Exhibit A is Unfair and Misplaced

While AA attempts to attribute an insidious motive to Plaintiffs' in questioning why Plaintiffs failed to attach Terry Hatchett's July 3, 2001 letter[3] ("letter"), the simple fact is that counsel for Plaintiffs did not possess a copy of the letter until receiving AA's reply brief. (See, Exhibit A, ¶ 9). Perhaps a better question is why, if - as AA suggests - the letter validates its position, was the letter not included in AA's motion to compel arbitration?  Presumably, that answer lies in the content of the letter itself, which does nothing in the way of establishing: that AA's obligation to defend and indemnify a former partner is contained within or contemplated by the Partnership Agreement; that a dispute in connection with AA's failure to defend a former partner is subject to the Partnership Agreement's arbitration clause; or that the Partnership Agreement and the Termination Agreements are anything but to separate and independent agreements.  In fact, the letter does little more than waive certain portions of Article 26 and remind Hawkins' of his agreement not to solicit employees under the Partnership Agreement, an obligation Hawkins has never contested.  Here, the dispute does not involve the solicitation of employees, clients or any of the other conditions or obligations set forth under the Partnership

---

[2] It is also noteworthy that Mr. Parzen's affidavit fails to list any section of the AA Partnership Agreement that addresses AA's duties and obligation relating to the defense of a former partner in a lawsuit.
[3] *See,* AA's Reply Brief, pg. 6, fn. 5.

Agreement. The present dispute centers on AA's failure to honor its contractual obligation to defend Hawkins under the Termination Agreements, agreements independent of the Partnership Agreement and which do not require arbitration.

**WHEREFORE,** Plaintiffs CAMICO Mutual Insurance Company and Richard L. Hawkins respectfully request that Arthur Andersen's Motion to Compel Arbitration and to Stay Action Pending Arbitration be denied, that the present stay of discovery and other proceedings be lifted, that this cause be allowed to proceed before this Court, and that this Court award Plaintiffs their costs and any and all other relief deemed just and equitable.

Dated:  May 7, 2008

CAMICO Mutual Insurance Company and
Richard L. Hawkins

By: _____/s/ Donald E. Elder_____
One of their Attorneys

D.J. Sartorio
Donald E. Elder
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Dr.
Sears Tower, 22nd Floor
Chicago, Illinois 60606
(312) 627-4000
www.tsmp.com