IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMICO MUTUAL INSURANCE COMPANY, ) <br> a California corporation, individually and as ) <br> subrogee of Richard L. Hawkins and RICHARD ) <br> L. HAWKINS, individually, ) <br>            Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> ARTHUR ANDERSEN, LLP, an Illinois limited ) <br> liability partnership, ) <br>            Defendant. ) | Civil Action, <br> File No. 07 C 6861 <br><br><br> Hon. Ronald A. Guzman |

**RESPONSE BRIEF OF ARTHUR ANDERSEN LLP TO PLAINTIFFS' SUR-REPLY MEMORANDUM**

Pursuant to this Court's minute order of May 8, 2008, Doc. # 32, Arthur Andersen LLP ("Andersen") files this response brief to Plaintiffs' Sur-Reply Memorandum.

## Introduction

In its opening motion to compel and its reply brief, Andersen made two primary arguments for sending the present matter to arbitration. First, there is no dispute between the parties that a valid arbitration clause exists between the parties, and as a result, given the broad scope of the arbitration clause in question, the question of whether this matter is arbitrable is for the arbitrator as held in *Viets v. Arthur Andersen LLP*, 2003 WL 21525062 (S.D. Ind. 2003)). Doc. #15 at ¶ 10, Doc. #25 at 4-6. Second, the present dispute under the Termination Agreement arises under the Partnership Agreement or is an ancillary claim to the Partnership Agreement because the Termination Agreement is nothing more than the negotiated Determination of Hawkins' partnership interest precisely as the court found in *Autori v. Arthur Andersen*, CV 03 0477909-S (Conn. Super. Ct., March 21, 2006). Either of these arguments is sufficient for this Court to send the present matter to arbitration. The sur-reply of Camico Mutual Insurance Company and Richard L. Hawkins (collectively "Plaintiffs") challenges the second argument, but fails to address the first.

Plaintiffs' sur-reply challenges the "arises under" argument by asserting: 1) the present situation is factually distinct from *Autori*, 2) Andersen must provide the entire Partnership

Agreement to make its argument, and 3) the Hatchett letter does not support Andersen's argument that the Termination Agreement arises under the Partnership Agreement.  But contrary to Plaintiffs' arguments: 1) the situation here is exactly the same as in *Autori*, 2) the entire Partnership Agreement was not submitted in *Autori*, and 3) the Hatchett letter by its own text clearly references obligations under the Partnership Agreement.

This Court should order arbitration.

## **Argument**

### **1. As in *Autori*, the Additional Provision to the Determination Here Arises Under the Partnership Agreement.**

In *Autori v. Arthur Andersen*, CV 03 0477909-S (Conn. Super. Ct., March 21, 2006), which, as here, involved a departing partner of the firm, the Court focused on Andersen's "arises under" argument and held that the dispute under Autori's Termination Agreement had to be arbitrated because of "the broad and inclusive language of the arbitration clause of this agreement." *Id.*[1]  In so holding, the *Autori* Court squarely confronted the same argument made by Plaintiffs here: i.e., the Addendum relied upon by Autori was "a separate agreement."  *Id.* at 3.  The *Autori* Court rejected that argument, just as this Court should, holding instead that the Termination Agreement arose under the Partnership Agreement.

Plaintiffs argue that this case is different from *Autori* because the duty to defend obligation was not present in the Partnership Agreement, but instead was a separate agreement reached as part of the termination of the Partnership Interest.  In contrast, they contend everything at issue in *Autori* was set forth in the Partnership Agreement.  That simply is not the case.  In *Autori*, the Addendum in question not only included a resolution of Autori's interest in the partnership, the same as does Mr. Hawkins's Determination, but it also included a provision for payments on top of Mr. Autori's partnership share "during the investigation by the United States Attorney and if indicted, through the conclusion of the resulting trial."  *Id.* at 1.  The

---

[1]  Contrary to Plaintiffs' argument, the *Autori* Court did not reject the argument that the dispute was for the arbitrator.  Quite to the contrary, after holding that the dispute was arbitrable, the Court as an alterative holding recognized the validity of Andersen's "arbitrability is for the arbitrator" argument as well.  Upon concluding the dispute before it arose under the Partnership Agreement, the *Autori* Court found itself "obligated to conclude further that even if there is a dispute as to whether the issues presented are subject to arbitration, that dispute must be submitted to arbitration."  Doc. #25, Exhibit C at 6.  That is the precise holding that Andersen has urged here.

dispute centered on this additional provision that was separate from the payments provided for under the Partnership Agreement. Indeed, that was the Plaintiff's precise argument why the dispute was not arbitrable. *Id.* at 3. ("[P]laintiff contends that the Addendum is not provided for in the Partnership Agreement and that it addresses circumstances unique to plaintiff's termination.") Thus, the dispute did not, as Plaintiffs' suggest, center "on Mr. Autori's share of the capital and net income following his separation from AA." Pls.' Sur-Reply at 2.[2] The additional payments provided to Autori by the Addendum made his separation from Andersen "unique" because the payments were not part of the Partnership Agreement, but they did "not alter the fact that he was separating from the defendant, and did so pursuant to the terms of the Partnership Agreement." Doc. #25, Exhibit C at 4. The alleged duty to defend provided here may have made Hawkins's separation from Andersen also unique but, similarly, it did not alter the fact that Hawkins was separating from Andersen pursuant to the Partnership Agreement and, just as in *Autori*, received something that was not specifically provided for in the Partnership Agreement.

      The duty-to-defend provision here is incorporated within the terms of the Determination Statement, just as the *Autori* court found the Addendum was incorporated as part of the Determination Statement in that case. *Id.* at 4  It is referenced in a document entitled "Determination." That document specifically refers to the Partnership Agreement via the Hatchett Letter and Hawkins's agreement to maintain his continuing obligations. The only difference between *Autori* and the present case is that the additional provision in *Autori* dealt with extra pay during an ongoing lawsuit while the additional provision here provides for Hawkins's defense in future litigation. That difference offers no relevant distinction. Just as the *Autori* Court recognized, a dispute over an agreement terminating the partnership interest and agreeing to comply with the continuing obligations under the Partnership Agreement, including arbitration, requires arbitration even where that dispute regards a provision not present in the Partnership Agreement.

---

[2] As the Court's factual summary explained, the document in question "contains, in part, a calculation of the plaintiff's share of capital of the defendant firm, his share of net income, *and an addendum providing that the plaintiff would be paid during the investigation by the United States Attorney*…" Doc. #25, Exhibit C at 1.

**2. Only the Arbitration Clause is Needed to Compel Arbitration Here; the Entire Partnership Agreement was not Provided in Autori.**

Any conflict between the Parzen affidavit and Plaintiffs' affidavit is irrelevant,[3] because the entire Partnership Agreement does not need to be provided to compel arbitration here. First, under *Viets v. Arthur Andersen LLP*, 2003 WL 21525062 (S.D. Ind. 2003), the existence of the arbitration agreement and its terms are sufficient for the Court to compel arbitration. Second, the remainder of the Partnership Agreement is not germane to this dispute even if the Court were to resolve the issue of arbitrability of the dispute in its entirety. Counsel for Plaintiffs has read and studied the remainder of the Partnership Agreement and references no clause that would be relevant here. There is no dispute that the Partnership Agreement does not contain a specific clause providing for a defense after a partner leaves, just like there was no specific clause in *Autori* for additional salary payments for years and years following the Determination. There is no other reason for the entire Partnership Agreement to be provided in what could well be a public forum.[4]

Plaintiffs are mistaken in assuming the entire Partnership Agreement was provided in *Autori*. Pls.' Sur-Reply at 2 n.1. Rather, in *Autori*, six articles or sub-articles of the Partnership Agreement were provided in addition to article 39, the arbitration clause that has already been provided here. While Andersen does not believe these articles (Articles 3(J), 5, 10, 23, 36, & 38) are relevant to determining arbitrability here,[5] it moves to file them under seal contemporaneously with this response motion to support its second argument that the Termination Agreement here arises under the Partnership Agreement, as it did in *Autori*. If the Court believes that the entire confidential Partnership Agreement should be submitted, Andersen

---

[3] Plaintiffs do not dispute that plaintiffs' counsel was given access to the Partnership Agreement. They only disagree whether a copy was requested after that time. Counsel for Arthur Andersen LLP will chalk up this difference to a misunderstanding, but stands by his statement that there was no request for the agreement thereafter. The Partnership Agreement will be made available in the context of arbitration, which is a confidential proceeding.

[4] It is hard to understand how the Parzen affidavit quotation of the arbitration clause can be considered unreliable by the Defendants when their counsel has had the opportunity to read and study the clause. Filing it under seal will negate any such concern.

[5] They were relevant to another issue involved in *Autori* that has not been raised here in part because there were additional partner defendants there.

4

has stated in its reply brief that it would provide that document under seal and has not done so only because of the generally public nature of court proceedings. See note 3.

### 3. The Termination Agreement is Predicated on Obligations Pursuant to the Partnership Agreement Laid Out by the Hatchett Letter.

The Hatchett letter reinforces specific obligations under the Partnership Agreement related to leaving the firm and waives some of those obligations for Hawkins. Doc. #25, Exhibit A. In particular, the Hatchett letter confirms as provided in the Partnership Agreement that Hawkins is not to engage clients that he previously serviced at the Firm and is not to solicit former employees to follow him. The Hatchett letter provides a list of prior clients, however, for whom Hawkins may continue to offer services without violating the Partnership Agreement. As the Hatchett letter establishes conditions upon which the Termination Agreement is predicated and those conditions are based on the Partnership Agreement, it defies logic to suggest that the Termination Agreement does not arise under the Partnership Agreement. For example, if Hawkins violated the terms of the Hatchett letter, there would be a violation of the Partnership Agreement which, in turn, would negate any obligation to defend. How can this dispute not arise under or out of the Partnership Agreement?

### Conclusion

**FOR THE FOREGOING REASONS**, Andersen asks this court to grant its Motion to Compel Arbitration and to Stay Action Pending Arbitration.

Dated May 23, 2008.　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　s/ Stanley J. Parzen _____
　　　　　　　　　　　　　　　　　　Stanley J. Parzen
　　　　　　　　　　　　　　　　　　Mayer Brown LLP
　　　　　　　　　　　　　　　　　　71 South Wacker Drive
　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606-8747
　　　　　　　　　　　　　　　　　　(312) 701-7326
　　　　　　　　　　　　　　　　　　Attorney for Arthur Andersen, LLP