IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMICO MUTUAL INSURANCE COMPANY, a California corporation, individually and as subrogee of Richard L. Hawkins and RICHARD L. HAWKINS, individually,<br><br>Plaintiffs,<br><br>v.<br><br>ARTHUR ANDERSEN, LLP, an Illinois limited liability partnership,<br><br>Defendant. | Case No.: 07 C 6861<br><br>Hon. Ronald A. Guzman |

## PLAINTIFFS' RESPONSE TO ARTHUR ANDERSEN'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY

Even a cursory review of the *Casablanca Trax, Inc. v. Trax Records, Inc.*, --- N.E.2d ---, 2008 WL 2346088 (1st Dist. June 6, 2008) holding warrants a denial of AA's motion to compel arbitration. Indeed, there in declining to order the parties to arbitrate certain claims, the appellate court not only recognized that an agreement with a broad arbitration clause will only require arbitration of disputes emanating from that particular agreement, but also that parties not agreeing to arbitrate their disputes will not be compelled to do so.[1] Here, the parties do not dispute their rights and obligations under the AA Partnership Agreement, the only agreement requiring arbitration. Rather, the pending dispute centers on AA's failure to defend (and potentially indemnify Richard Hawkins), an obligation that derives exclusively from the Termination Agreements. Thus, *Casablanca Trax* warrants denying AA's motion to compel arbitration.

Throughout its briefing, AA continues to ignore one salient and issue-dispositive fact, namely its agreement to defend and indemnify Mr. Hawkins emanates entirely from the Termination Agreements, agreements which do not contain arbitration provisions and thus do not require the parties to arbitrate their disputes. The court in *Casablanca Trax* was also confronted

with a dispute emanating from different agreements, except there the majority of the claims forming the parties' dispute derived from the one agreement requiring arbitration. Specifically, the parties' dispute in *Casablanca Trax* focused on the defendants' indebtedness to the plaintiffs arising out of advances under a Joint Venture Agreement ("JVA"), a document requiring the arbitration of disputes, and a loan under a separate Loan Agreement, which was not subject to an arbitration clause. Both the advances and the loan were secured by a third Security Agreement, which was also not subject to arbitration, but which memorialized that "the same collateral protects the loan under the loan agreement and the advances under the JVA." *Casablanca Trax*, at 7.

In first addressing whether the claim was arbitrable, the appellate court noted that the majority of the plaintiff's claim "arose almost entirely from the JVA."[2] Thus, it concluded that a dispute arising directly from an agreement subject to an arbitration clause was properly submitted to the arbitrator to determine the threshold issue of arbitrability. Recognizing that the parties had not agreed to arbitrate their disputes under the Loan and Security Agreements, the court stayed the claims relating to those agreements pending a determination of the arbitrability of the claims arising under the JVA. The court did so despite the "interlocking" and "interrelated"[3] nature of the Loan and Security agreements to the JVA. The court did not, as AA suggests, order the parties to arbitrate *all* of their disputes, nor did it defer to the arbitrator to determine the arbitrability of those claims arising out of the Loan and Security agreements. The predicate reasoning for the court's decision to stay proceedings as to the other agreements was because the parties had not agreed to arbitrate their disputes under the later agreements. In this respect, *Casablanca Trax* is indeed "germane" to the present dispute, because it holds that a dispute arising out of an agreement that is not subject to an arbitration provision will not be sent to arbitration whether for an initial determination as to arbitrability or otherwise.

Here, AA does not dispute that the Partnership Agreement does not provide for, let alone address, the defense of Mr. Hawkins or any other former AA partner. That obligation is found solely and exclusively in the Termination Agreements, agreements which do not contain arbitration clauses. Unlike the dispute in *Casablanca Trax*, the parties here are not disputing any

---

[1] While still not having produced a complete copy of the Partnership Agreement, it would appear that the Partnership Agreement does indicate that it is to be construed under Illinois law. The Termination Agreements do not possess a similar choice of law provision.

[2] *See, Casablanca Trax*, at *5.

of the duties or obligations contained in the Partnership Agreement, the only agreement under which the parties are required to arbitrate. (*See,* Doc. No. 25, Ex. B., pg. 2, ¶ 5). Thus, *Casablanca Trax* instructs that AA's motion should be denied.

Despite recognizing the existence of separate agreements, AA attempts to bootstrap the plaintiffs into arbitration by virtue of the "broad language" of the Partnership Agreement's arbitration provision and the "continuing obligations" language in the Termination Agreements.[4] Both positions not only contravene the intentions of the contracting parties, but also run afoul of the holding in *Casablanca Trax*. Indeed, while plaintiffs do not disagree that the Partnership Agreement's arbitration language is broad, its application is limited to disputes emanating solely from the Partnership Agreement. As demonstrated, that is simply not the case here. Additionally, Mr. Hawkins commitment to his "continuing obligations" under the Partnership Agreement represents just that, an agreement to honor those pre-existing obligations contained in the Partnership Agreement. Had AA wanted to arbitrate a defense cost dispute with Mr. Hawkins it should have included an arbitration clause in the Termination Agreements. In having failed to this, the Court should not re-write or simply ignore the language of the Termination Agreements merely because AA prefers a different forum.

While purporting to limit its discussion to *Casablanca Trax*, AA cannot help itself but to also argue that the holding in *Nagle v. Nadelhoffer, Nagle, Kuhn, Mitchell, Moss & Saloga, P.C.*, 244 Ill.App.3d 920 (2nd Dist. 1993) supports its position. *Nagle*, as is the case with *Casablanca Trax*, does nothing of the sort. Indeed, not only does AA mischaracterize the decision as an "Illinois Supreme Court decision,"[5] which it is not, but it neglects to mention perhaps the most important qualification in the decision "[w]hen parties enter into an agreement which has a generic arbitration clause, that arbitration clause covers a dispute arising under a subsequent agreement between the same parties *as long as the original agreement and the subsequent one concern the same subject matter.*" Citing, *A.E. Staley Manufacturing Co. v. Robertson*, (1990), 200 Ill. App.3d 725, 730-31.) (Emphasis added). Undeniably, the Partnership Agreement does not encompass the obligation to defend (and potentially to indemnify) a former partner. Those obligations flow solely and independently from the Termination Agreements, and as such, by any objective measure, the agreements do not cover the same subject mater. Thus, *Casablanca*

---

[3] *See, Casablanca Trax,* *6.
[4] *See,* pg. 2, ¶ 4 and n. 1 of AA's motion.
[5] *See,* pg. 2, ¶ 4 of AA's motion.

3

*Trax*, *Nagle* and *A.E. Staley Manufacturing Co.* all support denying AA motion to compel arbitration.

Finally, AA appeals to this Court to compel arbitration on public policy grounds. Indeed, if the pending dispute arose out of the Partnership Agreement this argument might be compelling. Here, however, rather than support arbitration, public policy favors denying AA's motion insofar as public policy does not favor compelling a party to arbitrate a dispute it never agreed to do so, nor does it favor re-writing an agreement because one of the parties is unhappy with the terms.

**WHEREFORE,** Plaintiffs CAMICO Mutual Insurance Company and Richard L. Hawkins respectfully request that Arthur Andersen's Motion to Compel Arbitration and to Stay Action Pending Arbitration be denied, that the present stay of discovery and other proceedings be lifted, that this cause be allowed to proceed before this Court, and that this Court award Plaintiffs their costs and any and all other relief deemed just and equitable.

Dated: July 16, 2008

CAMICO Mutual Insurance Company and
Richard L. Hawkins

By: _____/s/ Donald E. Elder_____
One of their Attorneys

D.J. Sartorio
Donald E. Elder
Anthony Balice
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Dr.
Sears Tower, 22nd Floor
Chicago, Illinois 60606
(312) 627-4000
www.tsmp.com